No. 23-50593

# United States Court of Appeals for the Fifth Circuit

———————

In Re: Joeylynn Mesaros; Robert Mesaros,

*Petitioners*

———————

On Motion to Recall the Mandate to the United States District Court for the Western District of Texas, Austin Division (No. 1:21-cv-565-RP)

———————

## BRIEF OF RESPONDENTS ERIC CERVINI, WENDY DAVIS, DAVID GINS, AND TIMOTHY HOLLOWAY IN OPPOSITION TO THE MESAROS PETITIONERS' MOTION TO RECALL THE MANDATE AND RENEW PETITION FOR MANDAMUS

———————

Cameron O. Kistler
Cerin Lindgrensavage
JoAnna B. Suriani
The Protect Democracy
    Project, Inc.
2020 Pennsylvania Ave NW
Washington, DC 20006
(202) 579-4582

John Paredes
Orion Danjuma
The Protect Democracy
    Project, Inc.
82 Nassau Street #601
New York, NY 10038
(202) 579-4582

Michael J. Gottlieb
Samuel Hall
Aaron E. Nathan
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000

Christina M. Beeler
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073

Benjamin L. Berwick
The Protect Democracy
    Project, Inc.
15 Main Street
Watertown, MA 02472
(202) 579-4582

## <u>Certificate of Interested Persons</u>

No. 23-50593

IN RE: JOEYLYNN MESAROS; ROBERT MESAROS,

Petitioners

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Christina M. Beeler, *Counsel for Respondents-Plaintiffs below*;

2. Benjamin Berwick, *Counsel for Respondents-Plaintiffs below*;

3. Francisco R. Canseco, *Counsel for Respondent-Defendant below*;

4. John P. Catalanotto, *Counsel for Respondents-Plaintiffs below*;

5. Randi Ceh, *Respondent-Defendant below*;

6. Steve Ceh, *Respondent-Defendant below*;

7. Eric Cervini, *Respondent-Plaintiff below*;

8. Eliazar Cisneros, *Respondent-Defendant below*;

9. Sarah Xiyi Chen, *Counsel for Respondents-Plaintiffs below*;

10.   Orion Danjuma, *Counsel for Respondents-Plaintiffs below*;

i

11.    Jared Fletcher Davidson, *Counsel for Respondents-Plaintiffs below*;

12.    Wendy Davis, *Respondent-Plaintiff below*;

13.    Ashley Fernandez Dorsaneo, *Counsel for Respondents-Plaintiffs below*;

14.    David Gins, *Respondent-Plaintiff below*;

15.    Michael J. Gottlieb, *Counsel for Respondents-Plaintiffs below*;

16.    Meryl Conant Governski, *Counsel for Respondents-Plaintiffs below*;

17.    Samuel Hall, *Counsel for Respondents-Plaintiffs below*;

18.    Rebecca Heath, *Counsel for Respondents-Plaintiffs below*;

19.    Timothy Holloway, *Respondent-Plaintiff below*;

20.    Cameron O. Kistler, *Counsel for Respondents-Plaintiffs below*;

21.    Cerin Lindgrensavage, *Counsel for Respondents-Plaintiffs below*;

22.    Erin Elizabeth Mersino, *Counsel for Petitioner-Defendant below*;

23.    Joeylynn Mesaros, *Respondent-Defendant below*;

24.    Robert Mesaros, *Respondent-Defendant below*;

25.    Robert J. Meyer, *Counsel for Respondents-Plaintiffs below*;

26.      Aaron E. Nathan, *Counsel for Respondents-Plaintiffs below*;

27.      Jerad W. Najvar, *Counsel for Respondent-Defendant below*;

28.      Amy R. Orlov *Counsel for Respondents-Plaintiffs below*;

29.      John Paredes, *Counsel for Respondents-Plaintiffs below*;

30.      Dolores Park, *Petitioner-Defendant below*;

31.      Christina Adele Peck, *Counsel for Respondents-Plaintiffs below*;

32.      JoAnna Barbara Suriani, *Counsel for Respondents-Plaintiffs below*;

33.      Madeleine Tayer, *Counsel for Respondents-Plaintiffs below*;

34.      Anne Harden Tindall, *Counsel for Respondents-Plaintiffs below*;

35.      The Protect Democracy Project, Inc.;

36.      The Honorable Robert L. Pitman, U.S. District Judge, Western District of Texas, Austin Division;

37.      Texas Civil Rights Project;

38.      Richard Thompson, *Counsel for Petitioner-Defendant below*;

39.      Veronica Rhea Warms, *Counsel for Respondents-Plaintiffs below*;

40.      Austin Whatley, *Counsel for Respondent-Defendant below*;

41.      Willkie Farr & Gallagher LLP;

42.     Jamielah Yancey, *Counsel for Respondents-Plaintiffs below*.

This the 30th day of October, 2023.

Respectfully submitted,

s/ John Paredes

*Attorney of Record for Plaintiffs-
Respondents Eric Cervini, Wendy
Davis, David Gins, and Timothy
Holloway*

# **Table of Contents**

Certificate of Interested Persons ........................................ i

Table of Contents ................................................. v

Table of Authorities......................................................... vii

Introduction.................................................................... 1

Argument....................................................................... 4

   I.   Petitioners fail to establish a clear and indisputable
      right to relief................................................................... 5

      A. Petitioners Have Forfeited Any Argument that the
         Third § 1292(b) Factor Is Met. ............................... 6

      B. Petitioners Cannot Show a Clear and Indisputable
         Right to Certification Under § 1292(b)................................ 8

  II.  Petitioners have an adequate means to obtain relief............. 13

  III. Mandamus is never appropriate to compel certification
      under 28 U.S.C. § 1292(b) and certainly not
      appropriate here..................................................... 14

  IV. The law of the case doctrine did not bind the district
      court and does not bind this panel......................... 21

Conclusion ................................................................... 26

Certificate of Compliance............................................... 27

## **Supplemental Appendix**

District Court Docket Entries....................................... SA1

Dolores Park's Emergency Motion Requesting Certification
   of Interlocutory Appeal
   (Dated March 29, 2022) ........................................ SA35

Mesaros Defendants' Motion to Reconsider or Amend Order
Denying Motion to Dismiss
(Dated April 1, 2022) ............................................................ SA53

Mesaros Defendants' Motion to Dismiss First Amended
Complaint
(Dated February 8, 2023)....................................................... SA62

Defendant Dolores Park's Motion for Reconsideration and
Certification of Interlocutory Appeal
(Dated September 14, 2023) .................................................. SA73

Plaintiffs' Consolidated Opposition to Mesaros and Park
Defendants' Motion to Stay Discovery
(Dated September 29, 2023) .................................................. SA83

Plaintiffs' Notice of Supplemental Authority
(Dated October 3, 2023) ...................................................... SA129

Order Denying Motions to Certify Interlocutory Appeal
(Dated October 18, 2023) ..................................................... SA135

Defendant Dolores Park's Response to Plaintiffs' Notice of
Supplemental Authority
(Dated October 10, 2023) ..................................................... SA150

# Table of Authorities

**Page(s)**

## Cases

*In re Air Crash Near New Orleans*,
821 F.2d 1147 (5th Cir. 1987) ........................................................ 18, 19

*In re Am. Lebanese Syrian Associated Charities*,
815 F.3d 204 (5th Cir. 2016) ............................................................ 5, 8

*Andrews v. D'Souza*,
No. 22-4259, 2023 WL 6456517 (N.D. Ga. 2023) ............................... 20

*Arthur Young & Co. v. U.S. Dist. Ct.*,
549 F.2d 686 (9th Cir. 1977) .............................................................. 15

*Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*,
554 F.3d 595 (5th Cir. 2009) .............................................................. 10

*Browning v. Navarro*,
887 F.2d 553 (5th Cir. 1989) .............................................................. 24

*Bull HN Info. Sys., Inc. v. Hutson*,
229 F.3d 321 (1st Cir. 2000) .............................................................. 23

*Calderon v. Thompson*,
523 U.S. 538 (1998) ........................................................................ 4, 5

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
556 U.S. 635 (2009) ............................................................................ 9

*Castanho v. Jackson Marine, Inc.*,
650 F.2d 546 (5th Cir. Unit A 1981) ................................................... 19

*Cheney v. U.S. Dist. Ct.*,
542 U.S. 367 (2004) ............................................................... 1, 13, 14

*D'Ippolito v. Cities Serv. Co.*,
374 F.2d 643 (2d Cir. 1967) ............................................................... 15

*In re D.C.*,
   No. 99-5273, 1999 WL 825415 (D.C. Cir. 1999) ................................ 15

*Ernst & Ernst v. U.S. Dist. Ct.*,
   439 F.2d 1288 (5th Cir. 1971) ........................................................ 19

*Fernandez-Roque v. Smith*,
   539 F. Supp. 925 (N.D. Ga. 1982) ................................................. 18

*Fernandez-Roque v. Smith*,
   671 F.2d 426 (11th Cir. 1982) ................................................. 17, 20

*In re Ford*,
   344 F.3d 648 (7th Cir. 2003) ................................................ 3, 15, 16

*Green v. Occidental Petroleum Corp.*,
   541 F.2d 1335 (9th Cir. 1976) ............................................... 15, 17

*In re JPMorgan Chase & Co.*,
   916 F.3d 494 (5th Cir. 2019) ........................................................ 24

*Kerr v. U.S. Dist. Ct.*,
   426 U.S. 394 (1976) ...................................................................... 14

*League of United Latin Am. Citizens-Richmond Region
   Council 4614 v. Pub. Int. Legal Found.*,
   No. 18-423, 2018 WL 3848404 (E.D. Va. 2018) ............................... 20

*Leasco Data Processing Equip. Corp. v. Maxwell*,
   468 F.2d 1326 (2d Cir. 1972) .................................................... 4, 16

*In re Mar. Serv. Corp.*,
   515 F.2d 91 (1st Cir. 1975) ........................................................... 16

*McClelland Eng'rs, Inc. v. Munusamy*,
   784 F.2d 1313 (5th Cir. 1986) ............................................ 2, 21, 22

*Mendoza v. Murphy*,
   532 F.3d 342 (5th Cir. 2008) .......................................................... 9

*Messenger v. Anderson*,
   225 U.S. 436 (1912) ........................................................................ 1

*Nat'l Coal. on Black Civic Participation v. Wohl*,
  498 F. Supp. 3d 457 (S.D.N.Y. 2020) .................................................. 20

*Parcel Tankers, Inc. v. Formosa Plastics Corp.*,
  764 F.2d 1153 (5th Cir. 1985) ............................................................ 10

*In re Parish*,
  81 F.4th 403 (5th Cir. 2023) ............................................ 2, 5, 10, 23

*Pegues v. Morehouse Par. Sch. Bd.*,
  706 F.2d 735 (5th Cir. 1983) .............................................................. 23

*Pfizer, Inc. v. Lord*,
  522 F.2d 612 (8th Cir. 1975) ....................................................... 15, 21

*In re Phillips Petroleum Co.*,
  943 F.2d 63 (Temp. Emer. Ct. App. 1991) ........................................ 15

*Plum Tree, Inc. v. Stockment*,
  488 F.2d 754 (3d Cir. 1973) ............................................................... 15

*Roche v. Evaporated Milk Ass'n*,
  319 U.S. 21 (1943) ............................................................................... 14

*Spagnol-Bastos v. Garland*,
  19 F.4th 802 (5th Cir. 2021) ................................................................ 6

*State Indus., Inc. v. Mor-Flo Indus., Inc*,
  948 F.2d 1573 (Fed. Cir. 1991) .......................................................... 22

*Ex Parte Tokio Marine & Fire Ins. Co.*,
  322 F.2d 113 (5th Cir. 1963) ............................................................... 19

*Trump v. D.C.*,
  141 S. Ct. 1262 (2021) ......................................................................... 17

*In re Trump*,
  928 F.3d 360 (4th Cir. 2019) ....................................................... 17, 20

*In re Trump*,
  958 F.3d 274 (4th Cir. 2019) ....................................................... 17, 20

*United States v. 687.30 Acres of Land*,
    451 F.2d 667 (8th Cir. 1971)........................................... 16

*United States v. Denson*,
    603 F.2d 1143 (5th Cir. 1979)...........................................5

*United States v. Dunkel*,
    927 F.2d 955 (7th Cir. 1991)............................................8

*United States v. Goldman*,
    25 F. Cas. 1350 (C.C.D. La. 1878) .................................... 20

*United States v. Pineiro*,
    470 F.3d 200 (5th Cir. 2006)........................................... 22

*United States v. Scroggins*,
    599 F.3d 433 (5th Cir. 2010) ............................................7

*United States v. Tsarnaev*,
    595 U.S. 302 (2022)................................................... 25

*United States v. Watson*,
    189 F.3d 496 (7th Cir. 1999)........................................... 22

*In re Wilson Indus., Inc.*,
    886 F.2d 93 (5th Cir. 1989)............................................ 19

## Statutes and Rules

28 U.S.C. § 1292(b) ............................................... *passim*

28 U.S.C. § 1367 ................................................ 2, 3, 6

28 U.S.C. § 1367(c)(1) ............................................. 10

28 U.S.C. § 1651(a) ................................................ 14

28 U.S.C. § 2106 .................................................. 24

42 U.S.C. § 1985(3) ............................................... 12

Tex. Penal Code § 22.02(a)(2)...................................... 12

5th Cir. R. 41.2 ....................................................................................... 4

**Miscellaneous**

Eugene Volokh, *Private Employees' Speech and Political
    Activity: Statutory Protection Against Employer
    Retaliation,*
    16 Tex. Rev. L. & Pol. 295, 324-25 (2012) ......................................... 21

16 Wright & Miller, Fed. Prac. & Proc. § 3929 (3d ed. 2023) ................ 14

# Introduction[1]

Petitioners' motions to renew their previously denied mandamus petition ask this Court to take a step it has *never* taken before: ordering a district court to certify an appeal pursuant to 28 U.S.C. § 1292(b) notwithstanding the district court's discretionary determination that certification was not warranted. One would expect that a request for such an extraordinary and unprecedented remedy would be accompanied by a showing of extraordinary and unprecedented circumstances. But Petitioners' motions do not come close to substantiating any abuse of discretion below, much less the sort of egregious abuse of discretion sufficient to justify mandamus relief, and still less an extra-extraordinary circumstance that would justify this Court's first-ever order compelling a district court to exercise its § 1292(b) discretion in a particular way.

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380

---

[1] Because Petitioners in Nos. 23-50585 and 23-50593 raise related issues and this Court has previously disposed of their mandamus petitions in substantially identical opinions, Respondents are filing a single brief responding to both motions on each docket.

(2004) (cleaned up). "To merit relief," a mandamus petitioner "must demonstrate that there has been a usurpation of judicial power or a clear abuse of discretion." *In re Parish*, 81 F.4th 403, 409 (5th Cir. 2023) (cleaned up). Petitioners have not demonstrated any abuse of discretion, much less a clear one, in the District Court's determination that interlocutory appeal would not materially advance termination of the litigation considering Respondents' parallel state law claims. SA141–148. Nothing in this Court's prior opinion even considered, much less prejudged, that discretionary determination. Among other problems, concluding otherwise would contravene this Court's statement in *McClelland Engineers, Inc. v. Munusamy* that, even when an appellate panel requests certification of an order for an interlocutory appeal under Section 1292(b), the district court nonetheless retains "discretion to refuse to certify an appeal." 784 F.2d 1313, 1316 n.1 (5th Cir. 1986) (Jolly, J.), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987).

Far from abusing its discretion, the district court reasonably concluded that, regardless of how this Court disposed of Respondents' federal claims in a hypothetical interlocutory appeal, it would still

exercise supplemental jurisdiction under § 1367 over Plaintiffs' state law claims considering the "significant resources and time that this Court has devoted to this case" in the "over two years" it "has been pending before this Court." SA146. That determination *also* lies within a well-established zone of district court discretion. Therefore, to grant mandamus relief here, this Court would need to blast through two layers of district court discretionary authority: the discretion to decline (or not) supplemental jurisdiction under § 1367, and the *never-before-disturbed* discretion to decline to certify an interlocutory appeal under § 1292(b).

Indeed, Petitioners have not established it would *ever* be appropriate for this Court to order 1292(b) certification. Respondents have identified *no precedent* where a court of appeals has mandated certification under 1292(b) after a district court concluded that the statutory elements were not met. That should be unsurprising, because Section 1292(b) creates "dual gatekeeper system for interlocutory appeals: both the district court and the court of appeals must agree ... before the normal rule requiring a final judgment will be overridden." *In re Ford,* 344 F.3d 648, 654 (7th Cir. 2003) (collecting cases). Accordingly, numerous courts of appeal have rightly concluded that it is *never*

appropriate to issue an order compelling certification because "[i]t would wholly frustrate this scheme if the court of appeals could coerce [a] decision by the district judge." *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1344 (2d Cir. 1972) (Friendly, J.), *abrogated on other grounds*, *Morrison v. Nat'l Austrl. Bank Ltd.*, 561 U.S. 247 (2010). Because mandamus cannot issue, the motions to recall the mandate and renew the mandamus petitions should be denied.

## Argument

Petitioners seek renewal of their mandamus petitions through motions to recall the mandate, a "power [that] can be exercised only in extraordinary circumstances," as "one of last resort, to be held in reserve against grave, unforeseen contingencies." *Calderon v. Thompson*, 523 U.S. 538, 550 (1998); *see* 5th Cir. R. 41.2 ("Once issued a mandate will not be recalled except to prevent injustice."). But Petitioners never even attempt to show they have satisfied that extraordinarily demanding standard. Instead, they presume that, rather than file new mandamus petitions if appropriate, Petitioners are entitled to re-open their previously denied petitions. Nothing in this Court's prior opinion entitles them to a recall of the mandate, and because Petitioners have not

demonstrated any "extraordinary circumstances" in the form of "grave, unforeseen contingencies," this Court lacks power to grant such relief. *Calderon*, 523 U.S. at 550.

And even if the Court were to treat the motions as new petitions for mandamus, Petitioners cannot come close to the required showing.

## I.    Petitioners fail to establish a clear and indisputable right to relief.

Petitioners have not shown a "clear and indisputable" right to relief, as they must to obtain mandamus relief. *In re Am. Lebanese Syrian Associated Charities*, 815 F.3d 204, 206 (5th Cir. 2016). Even if this Court would have reached a different conclusion in the district court's shoes, mandamus would still be unavailable: "[B]ecause the standard is a *clear* abuse of discretion, the merits of [a petitioner's] claims must also be clear: 'the writ will not issue to correct a duty that is to any degree debatable.'" *In re Parish*, 81 F.4th at 409 (quoting *United States v. Denson*, 603 F.2d 1143, 1147 n.2 (5th Cir. 1979) (en banc)).

In denying interlocutory review of its order, the District Court agreed with this Court that the first two 1292(b) factors were satisfied.[2]

---

[2] To narrow the issues in light of the expedited posture of these proceedings, Respondents assume for the purposes of this brief (and nothing else) that the first two 1292(b) factors are satisfied.

But, as the District Court noted, that is not enough to permit, let alone require, certification. And as to the third factor, the District Court reasonably concluded that interlocutory review of Plaintiffs' Klan Act claim would not "materially advance the ultimate termination of the litigation." SA142, 144–148. In the District Court's judgment, it would be reasonable to exercise supplemental jurisdiction over Plaintiffs' state-law conspiracy and civil assault claims even if the Klan Act claim were dismissed. SA146; *see* 28 U.S.C. § 1367. And because those state-law claims would necessitate substantially similar proceedings, including trial, on substantially similar evidence, the District Court was "not convinced" appellate review of the federal claim would advance the "ultimate termination" of this litigation. SA148.

## A. Petitioners Have Forfeited Any Argument that the Third § 1292(b) Factor Is Met.

As a threshold matter, Park and the Mesaroses repeatedly forfeited any right to an interlocutory appeal by either failing to address 1292(b)'s third prong altogether or offering mere conclusory assertions that the factor is satisfied. An "argument is forfeited" where a party "fail[s] to analyze [his] theory in a meaningful way in his opening brief." *See Spagnol-Bastos v. Garland*, 19 F.4th 802, 808 (5th Cir. 2021).

Park's initial mandamus petition never referenced the "materially advancing" factor, and her renewed petition offers no argument whatsoever, merely gesturing at her district court reply brief. No. 23-50585 2-1; 40. Meanwhile, the Mesaroses' analysis of the third factor in their initial mandamus petition was confined to a single conclusory sentence asserting–without any case support–that "[t]he first and third requirements are obviously satisfied: if the Mesaroses are correct on the law, then Plaintiffs' entire federal claim is bogus and may not proceed." No. 23-50593, Dkt. 2-1 at 46. "It is not enough to merely mention or allude to a legal theory" to preserve an argument on appeal. *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010).

Nor did Defendants develop any argument on this required element below. After this Court invited reconsideration of 1292(b) certification, the Mesaros Defendants' moving papers failed to reference the third factor at all. Meanwhile, Park offered a single sentence of analysis asserting that "if Plaintiffs have failed to plead a federal cause of action under the Support-or-Advocacy Clause, their case fails for want of federal court jurisdiction"—ignoring supplemental jurisdiction and failing to evaluate how its exercise would impact the statutory requirement. SA80.

The Mesaroses contend that the District Court should have combed through Defendants' motions filed 18 months prior to identify their position on this requirement. But "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). And such a search would only uncover a "skeletal 'argument.'" *Id. See* SA48–49, 60, 69 (relying exclusively on inapposite, out-of-district case where party opposing certification did not contest 1292(b)'s third factor).

Defendants' forfeiture would foreclose their arguments in any ordinary appeal. Even less reason to disregard it here, given the extraordinary and unprecedented relief Defendants seek.

### B. Petitioners Cannot Show a Clear and Indisputable Right to Certification Under § 1292(b).

Even if Petitioners had properly raised an argument for relief, they would still need to show that the District Court committed not just one, but *two* "clear and indisputable" abuses of discretion when it determined that (1) it would be appropriate to retain supplemental jurisdiction over Plaintiffs' state-law claims upon dismissal of their federal claims, and (2) dismissal of the federal claims would not materially advance the ultimate termination of the litigation. *In re Am. Lebanese Syrian Associated*

*Charities*, 815 F.3d at 206. Petitioners cannot demonstrate even an ordinary abuse of discretion on either factor, much less a "clear" one on both.

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Retaining supplemental jurisdiction here fits squarely within the established zone of judicial discretion: the district court has "substantial familiarity with the merits of the case," and it would be "reasonable to conclude that further proceedings in the district court would prevent redundancy and conserve scarce judicial resources." *Mendoza v. Murphy*, 532 F.3d 342, 347 (5th Cir. 2008) (cleaned up). As the District Court implied, it could potentially constitute an abuse of discretion were the District Court *not* to retain supplemental jurisdiction over Plaintiffs' state-law claims at this advanced stage of the proceedings. *See* SA145–146.

Indeed, given the advanced stage of discovery and the significant judicial resources the Court has already expended on discovery disputes, *id*. 83–130, declining supplemental jurisdiction after dismissal of

Plaintiffs' federal claims could cause a waste of judicial resources subject to reversal. This Court's "case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation . . . , that court has abused its discretion." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Nor do Plaintiffs' Texas-law civil conspiracy and assault claims involve remotely novel or complex issues of state law that would militate against retaining supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1). The District Court cannot have committed an abuse of discretion by avoiding a result that this Court has warned could, itself, constitute one. And to the extent there is any disagreement about the correctness of the District Court's determination that supplemental jurisdiction would be appropriate in these circumstances, its determination is at *least* "debatable," which is all the law requires. *In re Parish*, 81 F.4th at 409.

Interlocutory review of an order denying a motion to dismiss generally cannot "materially advance the ultimate termination of the litigation" where it "would not result in dismissal of the suit." *Parcel*

*Tankers, Inc. v. Formosa Plastics Corp.*, 764 F.2d 1153, 1155 n.1 (5th Cir. 1985). Because the District Court acted well within its discretion in determining that it would be reasonable to exercise supplemental jurisdiction were the Klan Act claims dismissed, Defendants cannot possibly show a "clear and indisputable" right to relief on their mandamus petitions.

Further, the Court did not abuse its discretion in concluding that "an interlocutory appeal would not eliminate complex issues so as to simplify the trial," SA146, and that "an interlocutory appeal at this stage in the litigation would . . . not eliminate issues to make discovery easier and less costly," *id.* 147. The Mesaroses tout how "novel and highly complex" Respondents' Klan Act claims purportedly are, and how the case would purportedly be simplified were they dismissed. No. 23-50593, Dkt. 28 at 15. But those assertions are empty. As the District Court noted, "Plaintiffs' Klan Act claims are factually interrelated and involve the same underlying events as Plaintiffs' state law claims," and their elements—if not perfectly coextensive—"overlap substantially." SA146. True, to prove their state conspiracy and assault claims, Plaintiffs will not have to prove that the specific object of Defendants' conspiracy was

11

either to (i) "prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy" in a federal election, or to (ii) "injure any citizen in person or property on account of such support or advocacy." 42 U.S.C. § 1985(3). But they will still have to prove the existence of a conspiracy to "threaten[] [Plaintiffs] with imminent bodily injury." SA146; Tex. Penal Code § 22.02(a)(2). They will have to prove the existence of an agreement among the conspirators, and show motive, opportunity, and absence of coincidence or mistake—and that proof will involve *the same evidence* Plaintiffs would present to prove the specific object required by the Klan Act. And as the District Court concluded, given discovery is nearly over and all Defendants have been deposed, the bulk of that evidence has already been collected. *See* SA147–148. Dismissal of Plaintiffs' Klan Act claim would thus lead to substantially the same proceedings, covering substantially similar evidence, to adjudicate Plaintiffs' state-law civil conspiracy and assault claims, as the district court correctly concluded.[3]

---

[3] Furthermore, Petitioners have no explanation why this litigation would not continue in state court under Texas' savings statute.

12

Finally, the Mesaroses urge that "interlocutory resolution of what would otherwise be a post-trial appeal," alone, is "sufficient to satisfy" the third criterion of section 1292(b). No. 23-50593, Dkt. 28 at 14. That cannot be right. Otherwise *all* denials of motions to dismiss would satisfy that statutory criterion, rendering it superfluous.

## II.    Petitioners have an adequate means to obtain relief.

A party seeking mandamus must "have no other adequate means to attain the relief he desires." *Cheney*, 542 U.S. at 380. This Court's prior orders declined to resolve this issue in their favor, No. 23-50593 24-1 at 9; No. 23-50585 37-2 at 10 (together, "Ops."[4]) ("It is unclear that this is an extraordinary case."); nevertheless, neither of the pending motions advance any additional argument why an ordinary appeal would be inadequate. Nor do they explain why their inexplicable year-long delay in seeking mandamus should not bar their petitions now, either as a matter of laches or because the delay undermines the credibility of any claim of irreparable harm absent interlocutory review. Accordingly, although Respondents will not repeat their prior arguments, this prong of the mandamus analysis independently bars relief.

---

[4] Citations to "Ops." refer to Docket 24-1 in No. 23-50593.

## III. Mandamus is never appropriate to compel certification under 28 U.S.C. § 1292(b) and certainly not appropriate here.

Even when "the first two prerequisites" for mandamus "have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. Here, "[i]t has been Congress' determination since the Judiciary Act of 1789 that as a general rule appellate review should be postponed until after final judgment[.]" *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 403 (1976) (cleaned up). Accordingly, mandamus "may not appropriately be used merely as a substitute for the appeal procedure prescribed by [] statute," *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 27-28 (1943), as doing so would serve to "defeat[] the very policies sought to be furthered by that judgment of Congress," *Kerr*, 426 U.S. at 403. Thus, "[a]lthough a court of appeals may be tempted to assert mandamus power to compel certification, the temptation should be resisted." 16 Wright & Miller, Fed. Prac. & Proc. § 3929 (3d ed. 2023).

*First*, as jurisdictional matter, this Court's power to issue mandamus relief is limited by the All Writs Act to "writs necessary or appropriate in aid of [its] . . . jurisdiction[]." 28 U.S.C. § 1651(a). Mandamus is not an inherent power to direct outcomes in the district

court; it is a statutory writ that depends upon some other jurisdictional authority that the writ exists to protect. Here, mandamus cannot "aid" this Court's § 1291 jurisdiction because nothing about the district court proceedings can affect—in any way—this Court's jurisdiction to review the legal sufficiency of Plaintiffs' Klan Act claims on appeal from a final decision below, whether after final judgment or via the collateral order doctrine. And mandamus cannot "aid" this Court's § 1292(b) jurisdiction either, because that is jurisdiction *this Court does not have* until the district court has certified an order and the appellant has filed an application within the statutory deadline. *Id.* § 1292(b).

*Second*, even if § 1651 conferred jurisdiction to compel § 1292(b) certification via mandamus, mandamus in those circumstances would never be "appropriate" under the *Cheney* factors. "Most courts have held that mandamus is not appropriate to compel a district court to certify under § 1292(b)." *In re Ford*, 344 F.3d at 654.[5] As Judge Friendly has

---

[5] *E.g.*, *In re Phillips Petroleum Co.*, 943 F.2d 63, 67 (Temp. Emer. Ct. App. 1991); *Arthur Young & Co. v. U.S. Dist. Ct.*, 549 F.2d 686, 698 (9th Cir. 1977); *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1338 (9th Cir. 1976); *Pfizer, Inc. v. Lord*, 522 F.2d 612, 614 n.4 (8th Cir. 1975); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754 (3d Cir. 1973); *D'Ippolito v. Cities Serv. Co.*, 374 F.2d 643, 649 (2d Cir. 1967); *see also In re D.C.*, No. 99-5273, 1999 WL 825415, at *1 (D.C. Cir. 1999) (unpublished).

explained, "Congress plainly intended that an appeal under § 1292(b) should lie only when the district court and the court of appeals agreed on its propriety. It would wholly frustrate this scheme if the court of appeals could coerce [a] decision by the district judge." *Leasco*, 468 F.2d at 1344. In other words, if "someone disappointed in the district court's refusal to certify . . . has only to go to the court of appeals for a writ of mandamus," "there will be only one gatekeeper, and the statutory system will not operate as designed." *In re Ford,* 344 F.3d at 654.

That follows from the statutory text: Section 1292(b) provides that that a district court judge "shall . . . state in writing" that an appeal should be certified only when the judge is "*of the opinion*" that the criteria for an interlocutory appeal are met. 28 U.S.C. § 1292(b) (emphasis added). Thus, "Section 1292(b) by its unambiguous language makes certification by the trial court a condition precedent to our right to exercise our discretion on the question of whether an interlocutory appeal will be allowed," *United States v. 687.30 Acres of Land*, 451 F.2d 667, 670 (8th Cir. 1971), and it should be "wholly inappropriate" for courts to use their mandamus authority as an end run around those limitations, *In re Mar. Serv. Corp.*, 515 F.2d 91, 92 (1st Cir. 1975). Rather, the requirement

that the "district judge be 'of the opinion' that the criteria for section 1292(b) appeal are met" means that a court of appeals is "without power to assume unilaterally an appeal under section 1292(b)." *Green*, 541 F.2d at 1338.

By contrast, Respondents are aware of only one court of appeals—the Eleventh Circuit—that has actually ordered a district court to certify an issue for appeal. *See Fernandez-Roque v. Smith*, 671 F.2d 426, 431 (11th Cir. 1982).[6] That was in unusual circumstances; there the district court entered a TRO without concluding it had jurisdiction. *Id.* at 428. The government then consented to the TRO, *id.* at 430, only to later attempt to appeal the consented-to TRO under 28 U.S.C. § 1292 on the theory that it had become a preliminary injunction, *id.* at 428. The government did not petition for mandamus; rather, the court "decided to treat the . . . appeal as a petition for . . . mandamus," *id.* at 430-31, to "prevent the defeat of appellate review," *id.* at 431. Because of the strange procedural posture, *Fernandez-Roque* involved no review of a district

---

[6] A Fourth Circuit panel ordered certification in *In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019), but that decision was vacated *en banc*, 958 F.3d 274 (4th Cir. 2020), which then was vacated under *Munsingwear*, *Trump v. D.C.*, 141 S. Ct. 1262 (Mem.) (2021).

court's denial of 1292(b) certification and, on remand, the district court concluded that the Section 1292(b) factors were met. *See* 539 F. Supp. 925, 948 (N.D. Ga. 1982). As far as respondents can tell, no court of appeals has *ever* ordered a district court to certify an interlocutory appeal after the district court determined that the 1292(b) factors were not met.

This Court does not appear to have decided in a precedential opinion whether it is "never ever" or "hardly ever" appropriate to compel 1292(b) certification. To be sure, this Court's prior order observed that this Court had said in *Air Crash* that "it will compel certification in 'very rare' circumstances." Ops. 10. But Respondents respectfully suggest that is not the right reading of *Air Crash*.

In particular, the "very rare" language from *Air Crash* does not appear to be specifically referring to writs of mandamus to compel certification of an interlocutory appeal under Section 1292(b). *See Air Crash*, 821 F.2d at 1167 (en banc), *cert. granted, judgment vacated sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *reinstated with exception*, 883 F.2d 17 (5th Cir. 1989) (en banc). Instead, *Air Crash* appears to have been engaging in a discussion of writs of mandamus to compel *forum non conveniens dismissals*; that explains

why the Court cited *Castanho v. Jackson Marine, Inc.*, 650 F.2d 546, 550 (5th Cir. Unit A 1981)—a case about the standard for mandamus for forum non conveniens dismissals—for support on the "very rare" proposition. *Air Crash*, 821 F.2d at 1167. That also explains why *Air Crash* observed in the immediately preceding sentence that "[t]he decision to certify an interlocutory appeal pursuant to section 1292(b) is within the discretion of the trial court and unappealable." *Id.*

But even if this Court concludes that *Air Crash* was referring to 1292(b) certifications, that language would still be dicta. Indeed, the *en banc* Court was expressly not considering whether to grant mandamus, *see id.* at 1152 n.4.[7]

In any event, this Court need not confront whether it is ever permissible to compel 1292(b) certification, because this case is far from the "very rare" circumstances that could justify such an order. The district court did not deny certification on "a ground not authorized by statute," *In re Wilson Indus., Inc.*, 886 F.2d 93, 95 (5th Cir. 1989), nor "on its belief that it was unquestionably correct and therefore that there

---

[7] The same is true of *Ex Parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 116 (5th Cir. 1963) and *Ernst & Ernst v. U.S. Dist. Ct.*, 439 F.2d 1288, 1293 (5th Cir. 1971).

existed no substantial ground for difference of opinion," *In re Trump*, 928 F.3d at 369, nor "on nothing more than caprice," or "manifest bad faith," *In re Trump*, 958 F.3d at 285. Nor has the District Court done anything to "defeat[] appellate review," *Fernandez-Roque*, 671 F.2d at 431, under the final judgment rule.

The District Court instead promptly addressed the certification requests (issuing a decision two weeks from completion of briefing), and concluded "that its previous orders do involve a (1) 'controlling question of law' and (2) that there is 'substantial ground for difference of opinion' about the question of law in the orders." SA143. It nonetheless reasonably denied certification on the discretionary determination that certification would not "materially advance the ultimate termination of the litigation." Its legal determination that the support-or-advocacy clauses create an independent substantive right—a conclusion that accords with multiple other courts[8] as well as independent

---

[8] *See Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 486 n.30 (S.D.N.Y. 2020); *Andrews v. D'Souza*, No. 22-4259, 2023 WL 6456517, at *7 (N.D. Ga. 2023); *League of United Latin Am. Citizens-Richmond Region Council 4614 v. Pub. Int. Legal Found.*, No. 18-423, 2018 WL 3848404, at *6 (E.D. Va. 2018); *see also United States v. Goldman*, 25 F. Cas. 1350, 1352 (C.C.D. La. 1878).

commentators[9]—will remain fully reviewable by this Court after a final

judgment.

## IV. The law of the case doctrine did not bind the district court and does not bind this panel.

Finally, the Mesaros Petitioners invoke the law of the case doctrine, which is inapplicable in the present posture. This Court has previously observed that it "was not acting beyond its jurisdiction when it requested the district court to certify an appeal," because "the district court retains its discretion to refuse to certify an appeal." *McClelland Eng'rs*, 784 F.2d at 1316 n.1. So for this Court to conclude that such a request in fact bound the District Court as the law of the case would pose questions whether the prior order was jurisdictionally valid. *Cf. Pfizer, Inc.*, 522 F.2d at 614 n.4 (highlighting jurisdictional problems for appellate court compelling certification). And, regardless, the law of the case doctrine is prudential and not "a limit to the[] power" of this Court. *Messenger v. Anderson*, 225 U.S. 436, 444 (1912). It is inappropriate to use the law of the case doctrine

---

[9] Professor Volokh, for example, has observed that the Eighth Circuit cases to the contrary are mistaken and that the clauses create "a free-standing federal statutory protection." Eugene Volokh, *Private Employees' Speech and Political Activity: Statutory Protection Against Employer Retaliation*, 16 Tex. Rev. L. & Pol. 295, 324-25 (2012).

to indirectly force certification just as it is inappropriate to order it directly via mandamus. *Supra* Part III.

Moreover, even if the law of the case doctrine *could* apply in the present posture, it would not apply as the Mesaros Petitioners suggest.

First, the doctrine does not apply to issues "resubmitted to the trial court on remand." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006). Appellate orders to reconsider an issue do not generally bind a district court to an outcome and instead give a district court discretion over its methodology and conclusions absent contrary instructions, *e.g.*, *State Indus., Inc. v. Mor-Flo Indus., Inc*, 948 F.2d 1573, 1577 (Fed. Cir. 1991); appellate courts do not order reconsideration as "a purely academic exercise," *United States v. Watson*, 189 F.3d 496, 500 (7th Cir. 1999).

Here, both circuit practice, *see McClelland Eng'rs*, 784 F.2d at 1316 n.1, and this Court's order contemplated the District Court exercising independent discretion to reconsider its order on remand. Thus, this Court noted (1) a district court's "substantial role" in certification and (2) that the question here "is not what we would have done if we sat in the district court." Ops. 9. This Court concluded that the record only

"suggest[ed]" that reconsideration was an adequate remedy at law and held open that Petitioners could "again lose." Ops. 10.

Second, "the law of the case doctrine does not apply to dicta," *Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 326 n.3 (1st Cir. 2000), and the discussions that the Mesaroses rely on are dicta. In the prior mandamus proceedings, the Mesaroses had the burden of establishing an entitlement to mandamus, and this Court *denied* mandamus because it was "unclear that this is an extraordinary case." Ops. 9. The only conclusion necessary to deny the petitions was that Petitioners had not established that this was an extraordinary case; rendering this Court's additional statements dicta.

Third, "the law of the case doctrine does not encompass issues presented for decision but left unanswered by the appellate court." *Pegues v. Morehouse Par. Sch. Bd.*, 706 F.2d 735, 738 (5th Cir. 1983). The question before this Court is not what it would have done had it been the district court, but whether the district court committed a "clear abuse of discretion" reaching the opposite conclusion. *In re Parish*, 81 F.4th at 409. Thus, the law-of-the-case doctrine cannot bar Respondents from "revisit[ing]" the Section 1292(b) factors "here," No. 23-50593, Dkt. 28 at

10, because the conclusion that the district court *should* have reached the opposite conclusion does not decide either explicitly or "by necessary implication," *Browning v. Navarro*, 887 F.2d 553, 556 (5th Cir. 1989), that the district court had committed a mandamus-worthy clear abuse of discretion.

Finally, a court of appeals has no power to bind the district court—through a mandate or otherwise—via a *denial* of mandamus relief. By definition, this Court lacked statutory appellate jurisdiction over the district court at that stage of the proceedings. And the prior panel opinion held that an exercise of All Writs Act authority was improper as well. While this Court has power to remand with instructions, 28 U.S.C. § 2106, that power only exists over an order "lawfully brought before it for review," *id.*—which is not what occurred here.

To be sure, this Court has previously held that it has the power to issue binding precedential holdings notwithstanding the unavailability of mandamus or any other statutory grant of appellate jurisdiction, "in part under [its] supervisory authority to correct errant caselaw from district courts under [its] jurisdiction." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 & n.24 (5th Cir. 2019). But that practice has not survived

24

*United States v. Tsarnaev*, where the Supreme Court held that a federal court's supervisory authority "cannot conflict with or circumvent a constitutional provision or federal statute." 595 U.S. 302, 315 (2022); *see id.* at 325 (Barrett, J., concurring) (noting skepticism that courts of appeals possess any "supervisory power in the first place"). This Court has no freestanding "supervisory authority" to "correct errant caselaw" and bind lower courts through advisory opinions—to hold otherwise would "conflict with" and "circumvent" both Article III and the statutory grants of jurisdiction that define, and limit, the power of this Court to say what the law is. Because no statutory grant of appellate power—whether §§ 1651, 1291, or 1292—conferred jurisdiction on the prior panel over the district court's order denying the motions to dismiss, the Court similarly lacked power to issue a mandate or an opinion with law-of-the-case effect.

## Conclusion

The motions should be denied.

Respectfully submitted.

s/ John Paredes

Cameron O. Kistler
Cerin Lindgrensavage
JoAnna B. Suriani
THE PROTECT DEMOCRACY
    PROJECT, INC.
2020 Pennsylvania Ave NW
Washington, DC 20006
(202) 579-4582

John Paredes
Orion Danjuma
THE PROTECT DEMOCRACY
    PROJECT, INC.
82 Nassau Street #601
New York, NY 10038
(202) 579-4582

Michael J. Gottlieb
Samuel Hall
Aaron E. Nathan
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000

Christina M. Beeler
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073

Benjamin L. Berwick
THE PROTECT DEMOCRACY
    PROJECT, INC.
15 Main Street
Watertown, MA 02472
(202) 579-4582

October 30, 2023

## **Certificate Of Service**

I hereby certify that on October 30, 2023, a true and correct copy of the foregoing brief was served via electronic filing with the Clerk of Court and all registered ECF users.

## **Certificate of Compliance**

I certify that the foregoing brief complies with Fifth Circuit Rule 27.4 because it contains 5,187 words, as measured by the word-count function of Microsoft Word and was prepared in a 14-point proportionally spaced font.

Respectfully submitted.

s/ John Paredes
John Paredes

# SUPPLEMENTAL APPENDIX

MOTION_REFERRED

**U.S. District Court [LIVE]**
**Western District of Texas (Austin)**
**CIVIL DOCKET FOR CASE #: 1:21-cv-00565-RP**

Cervini et al v. Cisneros et al
Assigned to: Judge Robert Pitman
Related Case: 1:21-cv-00568-RP
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 06/24/2021
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Eric Cervini**                                    represented by    **Aaron E. Nathan**
                                                                    Willkie Farr & Gallagher LLP
                                                                    1875 K Street, NW
                                                                    Washington, DC 20006
                                                                    202-303-1172
                                                                    Email: anathan@willkie.com
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Amy R. Orlov**
                                                                    Willkie Farr & Gallagher LLP
                                                                    1875 K Street Nw
                                                                    Washington, DC 20006
                                                                    202-303-1051
                                                                    Email: aorlov@willkie.com
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Anne H. Tindall**
                                                                    The Protect Democracy Project
                                                                    2020 Pennsylvania Avenue Suite #163
                                                                    Washington, DC 20006
                                                                    (240) 357-1602
                                                                    Fax: (929) 777-8428
                                                                    Email: Anne.Tindall@Protectdemocracy.org
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Ashley Fernandez Dorsaneo**
                                                                    Texas Civil Rights Project
                                                                    1405 Montopolis Dr.
                                                                    Austin, TX 78741
                                                                    (512) 474-5073
                                                                    Fax: (512) 474-0726
                                                                    Email: ashley@texascivilrightsproject.org
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Benjamin L. Berwick**
                                                                    The Protect Democracy Project
                                                                    15 Main St., Suite 312
                                                                    Watertown, MA 02472
                                                                    (202) 579-4582
                                                                    Fax: (929) 777-8428
                                                                    Email: ben.berwick@protectdemocracy.org
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

**SUPP.APP.001**

**Cameron O. Kistler**
The Protect Democracy Project
2020 Pennsylvania Ave. Nw, Suite #163
Washington, DC 20006
(202) 579-4582
Fax: (929) 777-8428
Email: cameron.kistler@protectdemocracy.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cerin Lindgrensavage**
The Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite #163
Washington, DC 20006
(202) 579-3854
Fax: (929) 777-8428
Email: cerin.lindgrensavage@protectdemocracy.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Adele Peck**
Willkie Farr & Gallagher LLP
787 7th Ave.
New York, NY 10019
212-728-3891
Email: cpeck@willkie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacek Pruski**
The Protect Democracy Project
2020 Pennsylvania Ave. Nw, Suite #163
Washington, DC 20006
(202) 579-4582
Fax: (929) 777-8428
Email: jacek.pruski@protectdemocracy.org
*TERMINATED: 05/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamielah I. Yancey**
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
202-303-1196
Email: jyancey@willkie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jared Fletcher Davidson**
The Protect Democracy Project
3014 Dauhine Street Suite J
New Orleans, LA 70117
(202) 579-4582
Fax: (929) 777-8428
Email: jared.davidson@protectdemocracy.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JoAnna Barbara Suriani**
Protect Democracy
2020 Pennsylvania Avenue, NW #163
Washington, DC 20006
202-579-4582

Email: joanna.suriani@protectdemocracy.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John P. Catalanotto**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
212-728-3400
Email: jcatalanotto@willkie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Paredes**
Protect Democracy Project
82 Nassau Street, #601
New York, NY 10038
202-579-4582
Email: john.paredes@protectdemocracy.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Madeleine Tayer**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8914
Fax: (212) 728-9914
Email: mtayer@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Meryl Conant Governski**
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1016
Fax: (202) 303-2000
Email: mgovernski@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Gottlieb**
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1442
Fax: (202) 303-2442
Email: mgottlieb@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mimi M.D. Marziani**
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 x108
Fax: 512-474-0726
Email: mimi@texascivilrightsproject.org
*TERMINATED: 11/21/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca N. Heath**
Willkie Farr & Gallagher LLP
1875 K Street Nw
Washington, DC 20006
202-303-1113
Email: rheath@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert J. Meyer**
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1123
Fax: (202) 303-2123
Email: rmeyer@willkie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rodkangyil Orion Danjuma**
The Protect Democracy Project
115 Broadway, 5th Floor
New York, NY 10006
(917) 364-0484
Fax: (917) 777-8428
Email: orion.danjuma@protectdemocracy.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Gilbert Hall**
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1443
Fax: (202) 303-2443
Email: shall@willkie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Xiyi Chen**
Texas Civil Rights Project
1405 Montopolis Dr
Austin, TX 78741
512-474-5073
Email: schen@texascivilrightsproject.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Veronikah Rhea Warms**
Texas Civil Rights Project
1405 Montopolis Dr
Austin, TX 78741
512-474-5073
Email: veronikah@texascivilrightsproject.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Marie Beeler**
Texas Civil Rights Project
2100 Travis Street
Suite 360
Houston, TX 77002
512-914-1249
Email: christinab@texascivilrightsproject.org

*ATTORNEY TO BE NOTICED*

**Emma Eileen Hilbert**
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741
512-474-5073
Fax: 512-474-0726
Email: emma@texascivilrightsproject.org
*TERMINATED: 10/13/2022*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wendy Davis**                    represented by    **Aaron E. Nathan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy R. Orlov**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne H. Tindall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Fernandez Dorsaneo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin L. Berwick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cameron O. Kistler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cerin Lindgrensavage**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Adele Peck**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacek Pruski**
(See above for address)
*TERMINATED: 05/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamielah I. Yancey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jared Fletcher Davidson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JoAnna Barbara Suriani**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John P. Catalanotto**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Paredes**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Madeleine Tayer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Meryl Conant Governski**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Gottlieb**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mimi M.D. Marziani**
(See above for address)
*TERMINATED: 11/21/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca N. Heath**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert J. Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rodkangyil Orion Danjuma**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Gilbert Hall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Xiyi Chen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Veronikah Rhea Warms**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Marie Beeler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emma Eileen Hilbert**
(See above for address)
*TERMINATED: 10/13/2022*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Gins**                represented by   **Aaron E. Nathan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy R. Orlov**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne H. Tindall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Fernandez Dorsaneo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin L. Berwick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cameron 0. Kistler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cerin Lindgrensavage**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Adele Peck**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacek Pruski**
(See above for address)
*TERMINATED: 05/01/2023*

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamielah I. Yancey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jared Fletcher Davidson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JoAnna Barbara Suriani**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John P. Catalanotto**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Paredes**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Madeleine Tayer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Meryl Conant Governski**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Gottlieb**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mimi M.D. Marziani**
(See above for address)
*TERMINATED: 11/21/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca N. Heath**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert J. Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rodkangyil Orion Danjuma**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Gilbert Hall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Xiyi Chen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Veronikah Rhea Warms**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Marie Beeler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emma Eileen Hilbert**
(See above for address)
*TERMINATED: 10/13/2022*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Timothy Holloway**                    represented by    **Aaron E. Nathan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy R. Orlov**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne H. Tindall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Fernandez Dorsaneo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin L. Berwick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cameron 0. Kistler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cerin Lindgrensavage**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Adele Peck**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacek Pruski**
(See above for address)
*TERMINATED: 05/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamielah I. Yancey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jared Fletcher Davidson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JoAnna Barbara Suriani**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John P. Catalanotto**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Paredes**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Madeleine Tayer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Meryl Conant Governski**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Gottlieb**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mimi M.D. Marziani**
(See above for address)
*TERMINATED: 11/21/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca N. Heath**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Robert J. Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rodkangyil Orion Danjuma**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Gilbert Hall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Xiyi Chen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Veronikah Rhea Warms**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Marie Beeler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emma Eileen Hilbert**
(See above for address)
*TERMINATED: 10/13/2022*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Eliazar Cisneros**
    represented by   **Francisco R. Canseco**
Francisco R. Canseco, Attorney at Law
19 Jackson Court
San Antonio, TX 78230
(210) 901-4279
Email: frcanseco@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hannah Ceh**
*TERMINATED: 04/28/2023*
    represented by   **Hannah Ceh**
PMB 145
1659 State Highway 46 W Ste 115
New Braunfels, TX 78132
830-743-1443
PRO SE

**Defendant**

**Joeylynn Mesaros**
    represented by   **Jerad W. Najvar**
Najvar Law Firm PLLC
2180 North Loop West
Suite 255
Houston, TX 77018
281-404-4696
Fax: 281-582-4138
Email: jerad@najvarlaw.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Austin Whatley**
Najvar Law Firm
2180 N. Loop W., Ste 255
Houston, TX 77018
281-404-4696
Fax: 281-582-4138
Email: austin@najvarlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**Robert Mesaros**                               represented by **Jerad W. Najvar**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Austin Whatley**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Defendant**
**John Does**
*TERMINATED: 01/18/2023*

**Defendant**
**Jane Does**
*TERMINATED: 01/18/2023*

**Defendant**
**Dolores Park**                                 represented by **Erin Elizabeth Mersino**
                                                 Thomas More Law Center
                                                 24 Frank Lloyd Wright Drive, Suite J-3200
                                                 Ann Arbor, MI 48106
                                                 734-827-2001
                                                 Fax: 734-930-7160
                                                 Email: emersino@thomasmore.org
                                                 *LEAD ATTORNEY*
                                                 *PRO HAC VICE*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Richard Thompson**
                                                 Thomas More Law Center
                                                 24 Frank Lloyd Wright Drive, Suite J-3200
                                                 Ann Arbor, MI 48106
                                                 (734) 827-2001
                                                 Fax: (734) 930-7160
                                                 Email: rthompson@thomasmore.org
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Defendant**
**Randi Ceh**

**Defendant**
**Steve Ceh**

**Defendant**
**Kyle Kruger**                                  represented by **Kyle Kruger**
*TERMINATED: 04/28/2023*                         645 Herbelin Rd.
                                                 New Braunfels, TX 78132
                                                 PRO SE

**Amicus**

**Campaign Legal Center Action**

represented by **Hayden S. Johnson**
Campaign Legal Center Action
1101 14th St., Nw, Suite 400
Washington, DC 20005
(202) 736-2200
Fax: (202) 736-2222
Email: hjohnson@campaignlegalcenter.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Diaz**
Campaign Legal Center Action
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
Fax: (202) 736-2222
Email: jdiaz@campaignlegalcenter.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Alan Grigg**
Law Offices of Dicky Grigg, PC
4407 Bee Caves Road
Building 1, Suite 111
Austin, TX 78746
(512) 474-6061
Fax: 512/582-8560
Email: dicky@grigg-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Mark Griffin**

represented by **Shawn C. Brown**
Law Office of Shawn C. Brown, P.C.
540 S. St. Mary's St.
San Antonio, TX 78205
(210) 224-8200
Fax: (210) 224-8214
Email: shawn@shawnbrownlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Neutral**

**Naomi Narvaiz**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/24/2021 | 1 | COMPLAINT ( Filing fee $ 402 receipt number 0542-14948485), filed by David Gins, Wendy Davis, Eric Cervini, Timothy Holloway. (Attachments: # 1 Civil Cover Sheet)(Marziani, Mimi) (Attachment 1 replaced on 6/24/2021 to flatten image) (dl). (Entered: 06/24/2021) |
| 06/24/2021 | 2 | REQUEST FOR ISSUANCE OF SUMMONS by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Marziani, Mimi) (Entered: 06/24/2021) |
| 06/24/2021 | | Case assigned to Judge Robert Pitman. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (dl) (Entered: 06/24/2021) |
| 06/24/2021 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Lane. (dl) (Entered: 06/24/2021) |
| 06/24/2021 | | DEMAND for Trial by Jury by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (dl) (Entered: 06/24/2021) |

| 06/24/2021 | 3 | Pro Hac Vice Letters mailed to Michael Gottlieb, Samuel Hall, Meryl Conant Governski, John Paredes, Cameron O. Kistler and Benjamin L. Berwick.. (Attachments: # 1 PHV Letters for Protect Democracy Project)(dl) (Entered: 06/24/2021) |
|---|---|---|
| 06/24/2021 | 4 | DEFICIENCY NOTICE: re 2 Request for Issuance of Summons (dl) (Entered: 06/24/2021) |
| 06/24/2021 | 5 | REQUEST FOR ISSUANCE OF SUMMONS by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. *CORRECTED* (Marziani, Mimi) (Entered: 06/24/2021) |
| 06/25/2021 | 6 | Summons Issued as to Hannah Ceh, Eliazar Cisneros, Joeylynn Mesaros, Robert Mesaros, Dolores Park. (dm) (Entered: 06/25/2021) |
| 07/07/2021 | 7 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Benjamin Berwick* ( Filing fee $ 100 receipt number 0542-14986542) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Marziani, Mimi) (Entered: 07/07/2021) |
| 07/07/2021 | 8 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Cameron Kistler* ( Filing fee $ 100 receipt number 0542-14986564) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Marziani, Mimi) (Entered: 07/07/2021) |
| 07/07/2021 | 9 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for John Paredes* ( Filing fee $ 100 receipt number 0542-14986571) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Marziani, Mimi) (Entered: 07/07/2021) |
| 07/08/2021 | 10 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Michael Gottlieb* ( Filing fee $ 100 receipt number 0542-14991584) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Marziani, Mimi) (Entered: 07/08/2021) |
| 07/08/2021 | 11 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Meryl Governski* ( Filing fee $ 100 receipt number 0542-14991615) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Marziani, Mimi) (Entered: 07/08/2021) |
| 07/08/2021 | 12 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Samuel Hall* ( Filing fee $ 100 receipt number 0542-14991624) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Marziani, Mimi) (Entered: 07/08/2021) |
| 07/08/2021 | 13 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for JoAnna Suriani* ( Filing fee $ 100 receipt number 0542-14991638) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Marziani, Mimi) (Entered: 07/08/2021) |
| 07/08/2021 | 14 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Madeleine Tayer* ( Filing fee $ 100 receipt number 0542-14991650) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Marziani, Mimi) (Entered: 07/08/2021) |
| 07/13/2021 | | Text Order GRANTING 7 Motion to Appear Pro Hac Vice by attorney Benjamin Berwick. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/13/2021) |
| 07/13/2021 | | Text Order GRANTING 8 Motion to Appear Pro Hac Vice by attorney Cameron Kistler. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/13/2021) |
| 07/13/2021 | | Text Order GRANTING 9 Motion to Appear Pro Hac Vice by attorney John Paredes. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/13/2021) |
| 07/13/2021 | | Text Order GRANTING 10 Motion to Appear Pro Hac Vice by attorney Michael Gottlieb. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/13/2021) |
| 07/13/2021 | | Text Order GRANTING 11 Motion to Appear Pro Hac Vice by attorney Meryl Governski. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert |

| | | |
|---|---|---|
| | | Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/13/2021) |
| 07/13/2021 | | Text Order GRANTING 12 Motion to Appear Pro Hac Vice by attorney Samuel Hall. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/13/2021) |
| 07/13/2021 | | Text Order GRANTING 13 Motion to Appear Pro Hac Vice by attorney JoAnna Suriani. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/13/2021) |
| 07/13/2021 | | Text Order GRANTING 14 Motion to Appear Pro Hac Vice by attorney Madeleine Tayer. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/13/2021) |
| 07/20/2021 | 15 | MOTION to Appear Pro Hac Vice by Richard Thompson ( Filing fee $ 100 receipt number 100040184) for Dolores Park. (dm) (Entered: 07/21/2021) |
| 07/23/2021 | | Text Order GRANTING 15 Motion to Appear Pro Hac Vice attorney Richard Thompson. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/23/2021) |
| 07/26/2021 | 16 | STIPULATION/MOTION *AND PROPOSED ORDER FOR EXTENSION OF TIME* by Dolores Park. (Thompson, Richard) Modified on 7/26/2021 to create motion (dm). (Entered: 07/26/2021) |
| 07/26/2021 | | Text Order GRANTING 16 Motion for Extension of Time to Answer entered by Judge Robert Pitman. IT IS ORDERED that Defendant Dolores Park shall answer or otherwise respond to Plaintiffs' complaint on or before August 30, 2021. (This is a text-only entry generated by the court. There is no document associated with this entry.) (aa2) (Entered: 07/26/2021) |
| 07/29/2021 | 17 | MOTION to Appear Pro Hac Vice ( Filing fee $ 100 receipt number 100040202) by Francisco R. Canseco for Eliazar Cisneros. (dm) (Entered: 07/30/2021) |
| 07/29/2021 | 18 | ANSWER to 1 Complaint, by Eliazar Cisneros.(dm) (Entered: 07/30/2021) |
| 07/30/2021 | 19 | DEFICIENCY NOTICE: re 18 Answer to Complaint (dm) (Entered: 07/30/2021) |
| 08/06/2021 | | Text Order GRANTING 17 Motion to Appear Pro Hac Vice by attorney Francisco R. Canseco. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 08/06/2021) |
| 08/06/2021 | 20 | MOTION to Admit Responsive Pleadings Pro Se by Hannah Ceh. (dm) (Entered: 08/06/2021) |
| 08/06/2021 | 21 | ANSWER to 1 Complaint, by Hannah Ceh.(dm) (Entered: 08/06/2021) |
| 08/06/2021 | 22 | MOTION to Dismiss for Lack of Jurisdiction, Motion to Dismiss for Failure to State a Claim by Hannah Ceh. (dm) (Entered: 08/06/2021) |
| 08/09/2021 | | Text Order GRANTING 20 Motion entered by Judge Robert Pitman. IT IS ORDERED that Defendant Hannah Ceh's answer and motion to dismiss, (Dkts. 21, 22), will be considered timely filed. (This is a text-only entry generated by the court. There is no document associated with this entry.) (aa2) (Entered: 08/09/2021) |
| 08/09/2021 | 23 | NOTICE of Attorney Appearance by Austin Whatley on behalf of Joeylynn Mesaros, Robert Mesaros. Attorney Austin Whatley added to party Joeylynn Mesaros(pty:dft), Attorney Austin Whatley added to party Robert Mesaros(pty:dft) (Whatley, Austin) (Entered: 08/09/2021) |
| 08/09/2021 | 24 | MOTION to Dismiss by Joeylynn Mesaros, Robert Mesaros. (Attachments: # 1 Proposed Order Proposed Order) (Whatley, Austin) (Entered: 08/09/2021) |
| 08/10/2021 | 25 | Defensive Motions by Eliazar Cisneros. (dm) (Entered: 08/10/2021) |
| 08/10/2021 | 26 | SUMMONS Returned Executed by David Gins, Wendy Davis, Eric Cervini, Timothy Holloway. Dolores Park served on 7/6/2021, answer due 7/27/2021. (Hilbert, Emma) (Entered: 08/10/2021) |

| 08/10/2021 | 27 | SUMMONS Returned Executed by David Gins, Wendy Davis, Eric Cervini, Timothy Holloway. Eliazar Cisneros served on 7/8/2021, answer due 7/29/2021. (Hilbert, Emma) (Entered: 08/10/2021) |
|---|---|---|
| 08/10/2021 | 28 | SUMMONS Returned Executed by David Gins, Wendy Davis, Eric Cervini, Timothy Holloway. Joeylynn Mesaros served on 7/17/2021, answer due 8/9/2021. (Hilbert, Emma) (Entered: 08/10/2021) |
| 08/10/2021 | 29 | SUMMONS Returned Executed by David Gins, Wendy Davis, Eric Cervini, Timothy Holloway. Robert Mesaros served on 7/17/2021, answer due 8/9/2021. (Hilbert, Emma) (Entered: 08/10/2021) |
| 08/10/2021 | 30 | SUMMONS Returned Executed by David Gins, Wendy Davis, Eric Cervini, Timothy Holloway. Hannah Ceh served on 7/19/2021, answer due 8/9/2021. (Hilbert, Emma) (Entered: 08/10/2021) |
| 08/12/2021 | 31 | MOTION for Extension of Time to File Response/Reply *to Motions to Dismiss*, MOTION for Leave to Exceed Page Limitation *for Consolidated Opposition Brief* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Paredes, John) (Entered: 08/12/2021) |
| 08/20/2021 | 32 | MOTION to Appear Pro Hac Vice by Emma Eileen Hilbert *for Robert Meyer* ( Filing fee $ 100 receipt number 0542-15139755) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Hilbert, Emma) (Entered: 08/20/2021) |
| 08/23/2021 | | Text Order GRANTING 31 Motion for Extension of Time to File Response/Reply; GRANTING 31 Motion for Leave to File Excess Pages entered by Judge Robert Pitman. IT IS ORDERED that Plaintiffs shall file a consolidated brief inresponse to all of Defendants' motions to dismiss by September 13, 2021, and that Plaintiffs'consolidated brief may exceed by 15 pages the page limits set forth in Local Civil Rule 7(d)(3). (This is a text-only entry generated by the court. There is no document associated with this entry.) (aa2) (Entered: 08/23/2021) |
| 08/23/2021 | | Text Order GRANTING 32 Motion to Appear Pro Hac Vice by attorney Robert J. Meyer. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 08/23/2021) |
| 08/30/2021 | 33 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)* by Dolores Park. (Thompson, Richard) (Entered: 08/30/2021) |
| 09/13/2021 | 34 | Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 24 MOTION to Dismiss filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros, 22 MOTION to Dismiss for Lack of Jurisdiction Motion to Dismiss for Failure to State a Claim filed by Defendant Hannah Ceh, 33 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)* filed by Defendant Dolores Park, 25 MOTION to Dismiss for Lack of Jurisdiction Motion to Dismiss for Failure to State a Claim filed by Defendant Eliazar Cisneros (Paredes, John) (Entered: 09/13/2021) |
| 09/13/2021 | 35 | MOTION to Appear Pro Hac Vice by Richard Alan Grigg *of Hayden S. Johnson for Campaign Legal Center Action* ( Filing fee $ 100 receipt number 0542-15218692) by on behalf of Campaign Legal Center Action. (Attachments: # 1 Proposed Order)(Grigg, Richard) (Entered: 09/13/2021) |
| 09/13/2021 | 36 | MOTION to Appear Pro Hac Vice by Richard Alan Grigg *of Jonathan Diaz for Campaign Legal Action Center* ( Filing fee $ 100 receipt number 0542-15218864) by on behalf of Campaign Legal Center Action. (Attachments: # 1 Proposed Order)(Grigg, Richard) (Entered: 09/13/2021) |
| 09/13/2021 | 37 | MOTION for Leave to File Amicus Brief*in Support of Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss* by Dicky Grigg. by Campaign Legal Center Action. (Attachments: # 1 Brief Proposed Amicus Curie Brief, # 2 Exhibit Legislative History, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Proposed Order)(Grigg, Richard) (Entered: 09/13/2021) |
| 09/17/2021 | 38 | MOTION to Appear Pro Hac Vice by Emma Eileen Hilbert *for Jared Davidson* ( Filing fee $ 100 receipt number 0542-15238470) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Hilbert, Emma) (Entered: 09/17/2021) |
| 09/18/2021 | 39 | Unopposed MOTION for Extension of Time to File Response/Reply by Hannah Ceh, Eliazar Cisneros, Joeylynn Mesaros, Robert Mesaros, Dolores Park. (Attachments: # 1 Proposed Order Proposed Order)(Whatley, Austin) (Entered: 09/18/2021) |
| 09/20/2021 | | Text Order GRANTING 39 Unopposed Motion for Extension of Time to File Response/Reply entered by Judge Robert Pitman. IT IS ORDERED that Defendants shall reply in support of the Motions to Dismiss on or before October 4, 2021. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 09/20/2021) |
| 10/04/2021 | 40 | REPLY to Response to Motion, filed by Dolores Park, re 33 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)* filed by Defendant Dolores Park (Thompson, Richard) (Entered: 10/04/2021) |

| | | |
|---|---|---|
| 10/04/2021 | 41 | REPLY to Response to Motion, filed by Joeylynn Mesaros, Robert Mesaros, re 24 MOTION to Dismiss filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros (Whatley, Austin) (Entered: 10/04/2021) |
| 10/07/2021 | | Text Order GRANTING 37 Motion for Leave to File Amicus Brief entered by Judge Robert Pitman. In light of the lack of opposition, IT IS ORDERED that the Clerk of the Court shall file Campaign Legal Center Action's Amicus Curiae Brief, (Dkt. 37-1), and the attached exhibits, (Dkt. 37-2, 37-3, 37-4, 37-5).(This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 10/07/2021) |
| 10/07/2021 | 42 | AMICUS BRIEF by Campaign Legal Center Action. (dm) (Entered: 10/08/2021) |
| 10/12/2021 | | Text Order GRANTING 35 Motion to Appear Pro Hac Vice by attorney Hayden S. Johnson. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 10/12/2021) |
| 10/12/2021 | | Text Order GRANTING 36 Motion to Appear Pro Hac Vice by attorney Jonathan Diaz. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 10/12/2021) |
| 10/12/2021 | | Text Order GRANTING 38 Motion to Appear Pro Hac Vice by attorney Jared Davidson. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 10/12/2021) |
| 12/30/2021 | 43 | Proposed Scheduling Order by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Davidson, Jared) (Entered: 12/30/2021) |
| 12/30/2021 | 44 | Rule 26(f) Discovery Report/Case Management Plan *by Defendants Eliazar Cisneros, Hannah Ceh, Joeylynn Mesaros, Robert Mesaros, and Dolores Park and* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Davidson, Jared) (Entered: 12/30/2021) |
| 12/31/2021 | 45 | Opposed MOTION to Stay *discovery pending resolution of motions to dismiss* by Eliazar Cisneros, Joeylynn Mesaros, Robert Mesaros, Dolores Park. (Attachments: # 1 Proposed Order granting stay)(Najvar, Jerad) (Entered: 12/31/2021) |
| 01/07/2022 | 46 | Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 45 Opposed MOTION to Stay *discovery pending resolution of motions to dismiss* filed by Defendant Dolores Park, Defendant Robert Mesaros, Defendant Joeylynn Mesaros, Defendant Eliazar Cisneros (Hilbert, Emma) (Entered: 01/07/2022) |
| 01/14/2022 | 47 | REPLY to Response to Motion, filed by Eliazar Cisneros, Joeylynn Mesaros, Robert Mesaros, Dolores Park, re 45 Opposed MOTION to Stay *discovery pending resolution of motions to dismiss* filed by Defendant Dolores Park, Defendant Robert Mesaros, Defendant Joeylynn Mesaros, Defendant Eliazar Cisneros (Whatley, Austin) (Entered: 01/14/2022) |
| 01/19/2022 | | Text Order REFERRING 45 Motion to Stay entered by Judge Robert Pitman. IT IS ORDERED that Defendants' Motion to Stay Discovery, (Dkt. 45), is REFERRED to United States Magistrate Judge Mark Lane for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 01/19/2022) |
| 01/19/2022 | | MOTION REFERRED: referred 45 Opposed MOTION to Stay *discovery pending resolution of motions to dismiss*. Referral Judge: Mark Lane. (dm) (Entered: 01/19/2022) |
| 01/26/2022 | 48 | Opposed MOTION for Protective Order by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Declaration of JoAnna Barbara Suriani in Support of Plaintiffs Opposed Motion For A Protective Order, # 2 Exhibit Exhibits A-D, # 3 Proposed Order)(Paredes, John) (Additional attachment(s) added on 2/14/2022: # 4 Exhibit) (dm). (Entered: 01/26/2022) |
| 02/01/2022 | 49 | MOTION to Appear Pro Hac Vice by Emma Eileen Hilbert *Lindgrensavage, Cerin* ( Filing fee $ 100 receipt number 0542-15669870) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Hilbert, Emma) (Entered: 02/01/2022) |
| 02/01/2022 | 50 | MOTION to Appear Pro Hac Vice by Emma Eileen Hilbert *for Orion Danjuma* ( Filing fee $ 100 receipt number 0542-15669911) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Hilbert, Emma) (Entered: 02/01/2022) |

| 02/02/2022 | 51 | MOTION for Extension of Time to File Response/Reply by Eliazar Cisneros. (Attachments: # 1 Proposed Order) (Canseco, Francisco) (Entered: 02/02/2022) |
|---|---|---|
| 02/03/2022 | | Text Order GRANTING 51 Motion for Extension of Time to File Response/Reply entered by Judge Robert Pitman. In light of the lack of opposition, IT IS ORDERED that Defendants shall respond to the motion for protective order on or before February 9, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 02/03/2022) |
| 02/04/2022 | | Text Order GRANTING 49 Motion to Appear Pro Hac Vice by attorney Lindgrensavage, Cerin. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 02/04/2022) |
| 02/04/2022 | | Text Order GRANTING 50 Motion to Appear Pro Hac Vice by attorney Rodkangyil Orion Danjuma. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 02/04/2022) |
| 02/09/2022 | 52 | Response in Opposition to Motion, filed by Dolores Park, re 48 Opposed MOTION for Protective Order filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Attachments: # 1 Exhibit Kera News Article, # 2 Exhibit AP News Article, # 3 Exhibit San Marcos News Article)(Thompson, Richard) (Entered: 02/09/2022) |
| 02/09/2022 | 53 | Response in Opposition to Motion, filed by Joeylynn Mesaros, Robert Mesaros, re 48 Opposed MOTION for Protective Order filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Attachments: # 1 Proposed Order Proposed Order, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Exhibit Exhibit D, # 6 Exhibit Exhibit E, # 7 Exhibit Exhibit F, # 8 Exhibit Exhibit G, # 9 Exhibit Exhibit H)(Whatley, Austin) (Entered: 02/09/2022) |
| 02/10/2022 | 54 | MOTION for Leave to File by Eliazar Cisneros. (Attachments: # 1 Exhibit Exhibit A to Motion for Leave, # 2 Proposed Order)(Canseco, Francisco) (Entered: 02/10/2022) |
| 02/10/2022 | 55 | Unopposed MOTION for Leave to File Exhibit I by Joeylynn Mesaros, Robert Mesaros. (Attachments: # 1 Proposed Order Proposed Order, # 2 Exhibit Exhibit I)(Whatley, Austin) (Entered: 02/10/2022) |
| 02/11/2022 | 56 | MOTION for Leave to File by Hannah Ceh. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Canseco, Francisco) (Entered: 02/11/2022) |
| 02/14/2022 | | Text Order GRANTING 54 Motion for Leave to File entered by Judge Robert Pitman. In light of the lack of opposition, IT IS ORDERED that the Clerk of the Court shall file Defendant Eliazar Cisneros's Response in Opposition to Motion for a Protective Order, (Dkt. 54-1). (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 02/14/2022) |
| 02/14/2022 | | Text Order GRANTING 56 Motion for Leave to File entered by Judge Robert Pitman. In light of the lack of opposition, IT IS ORDERED that the Clerk of the Court shall file Defendant Hannah Ceh's Response in Opposition to Motion for Protective Order, (Dkt. 56-1). (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 02/14/2022) |
| 02/14/2022 | | Text Order GRANTING 55 Motion for Leave to File entered by Judge Robert Pitman. In light of the lack of opposition, IT IS ORDERED that the Clerk of the Court shall file the additional exhibit, (Dkt. 55-2), to the motion for protective order, (Dkt. 48). (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 02/14/2022) |
| 02/14/2022 | 57 | Response in Opposition to Motion, filed by Eliazar Cisneros, re 48 Opposed MOTION for Protective Order filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (dm) (Entered: 02/14/2022) |
| 02/14/2022 | 58 | Response in Opposition to Motion, filed by Hannah Ceh, re 48 Opposed MOTION for Protective Order filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (dm) (Entered: 02/14/2022) |
| 02/15/2022 | 59 | ORDER, (Telephone Conference set for 2/23/2022 09:30 AM before Judge Robert Pitman). Signed by Judge Robert Pitman. (bot2) (Entered: 02/15/2022) |
| 02/16/2022 | 60 | Unopposed MOTION for Leave to File Proposed Order as an Additional Exhibit *to her Response in Opposition [Dkt 52]* by Dolores Park. (Attachments: # 1 Proposed Order Granting Unopposed Motion for Leave to File Prop Order as an Additional Exhibit to [Dkt 52], # 2 Exhibit Proposed Order Denying Plaintiffs' Opposed Motion for Protective Order)(Thompson, Richard) (Entered: 02/16/2022) |

| | | |
|---|---|---|
| 02/16/2022 | 61 | REPLY to Response to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 48 Opposed MOTION for Protective Order filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Davidson, Jared) (Entered: 02/16/2022) |
| 02/22/2022 | 62 | ORDER, (Telephone Conference set for 2/23/2022 09:30 AM before Judge Robert Pitman). Signed by Judge Robert Pitman. (bot1) (Entered: 02/22/2022) |
| 02/23/2022 | 63 | Minute Entry for proceedings held before Judge Robert Pitman: Telephone Conference held on 2/23/2022 (Minute entry documents are not available electronically.). (Court Reporter Lily Reznik.)(dm) (Entered: 02/23/2022) |
| 03/23/2022 | 64 | ORDER DENYING 22 Motion to Dismiss for Lack of Jurisdiction ; DENYING 22 Motion to Dismiss for Failure to State a Claim; DENYING 24 Motion to Dismiss ; DENYING 25 Motion to Dismiss for Lack of Jurisdiction ; DENYING 25 Motion to Dismiss for Failure to State a Claim; DENYING 33 Motion to Dismiss. Signed by Judge Robert Pitman. (dm) (Entered: 03/23/2022) |
| 03/29/2022 | 65 | Opposed MOTION to Expedite *on Emergency Basis*, Opposed MOTION for Certificate of Appealability *Pursuant to 28 U.S.C. § 1292* by Dolores Park. (Thompson, Richard) (Entered: 03/29/2022) |
| 03/29/2022 | 66 | CORRECTED MOTION to Expedite *on Emergency Basis*, Opposed MOTION for Certificate of Appealability *Pursuant to 28 U.S.C. § 1292* by Dolores Park. (Thompson, Richard) (Entered: 03/29/2022) |
| 03/30/2022 | 67 | MOTION to Appear Pro Hac Vice by Richard Thompson *of Erin Elizabeth Mersino* ( Filing fee $ 100 receipt number 0542-15870334) by on behalf of Dolores Park. (Attachments: # 1 Proposed Order)(Thompson, Richard) (Entered: 03/30/2022) |
| 04/01/2022 | 68 | MOTION for Extension of Time to File Response/Reply as to 66 CORRECTED MOTION to Expedite *on Emergency Basis*Opposed MOTION for Certificate of Appealability *Pursuant to 28 U.S.C. § 1292* , MOTION for Leave to Exceed Page Limitation *for Consolidated Opposition Brief* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Hilbert, Emma) (Entered: 04/01/2022) |
| 04/01/2022 | 69 | Opposed MOTION to Amend/Correct 64 Order on Motion to Dismiss/Lack of Jurisdiction,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,, by Joeylynn Mesaros, Robert Mesaros. (Najvar, Jerad) (Entered: 04/01/2022) |
| 04/01/2022 | 70 | Opposed MOTION for Leave to Appeal by Eliazar Cisneros. (Canseco, Francisco) (Entered: 04/01/2022) |
| 04/04/2022 | | Text Order GRANTING 67 Motion to Appear Pro Hac Vice by attorney Erin Elizabeth Mersino. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 04/04/2022) |
| 04/05/2022 | | Text Order VACATING Text Order issued on 1/19/2022 referring motion to stay, (Dkt. 45), to Magistrate Judge Mark Lane and MOOTING 45 Motion to Stay entered by Judge Robert Pitman. In light of the Court's ruling on Defendants' motions to dismiss, (Dkt. 64), IT IS ORDERED that the motion to stay, (Dkt. 45), is MOOT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 04/05/2022) |
| 04/05/2022 | | Text Order MOOTING 60 Motion for Leave to File entered by Judge Robert Pitman. In light of the Court's order on Defendants' motions to dismiss, (Dkt. 64), IT IS ORDERED that the motion for leave to file, (Dkt. 60), is MOOT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 04/05/2022) |
| 04/06/2022 | 71 | ANSWER to 1 Complaint, by Joeylynn Mesaros, Robert Mesaros.(Najvar, Jerad) (Entered: 04/06/2022) |
| 04/08/2022 | 72 | MOTION to Appear Pro Hac Vice by Emma Eileen Hilbert *for Jacek Pruski* ( Filing fee $ 100 receipt number 0542-15903852) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Hilbert, Emma) (Entered: 04/08/2022) |
| 04/08/2022 | 73 | DEFICIENCY NOTICE to Emma Eileen Hilbert: re 72 MOTION to Appear Pro Hac Vice by Emma Eileen Hilbert *for Jacek Pruski* ( Filing fee $ 100 receipt number 0542-15903852). *Your document is deficient because the signature page is not in compliance. Please refile your motion as an AMENDED Motion to Appear Pro Hac Vice and attach a signature page in compliance with the rules.* (klw) (Entered: 04/08/2022) |
| 04/11/2022 | | Text Order GRANTING 68 Motion for Extension of Time to File Response/Reply; GRANTING 68 Motion for Leave to File Excess Pages entered by Judge Robert Pitman. In light of Defendants' lack of filing in opposition to the motions, IT IS ORDERED that Plaintiffs shall file their consolidated response to the motions for leave to appeal on or before April 15, 2022 and that the brief shall not exceed 20 pages in length. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 04/11/2022) |
| 04/12/2022 | 74 | CORRECTED MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Jacek Pruski* ( Filing fee $ 100 receipt number 0542-15913054) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. |

| | | (Attachments: # 1 Proposed Order)(Marziani, Mimi) (Entered: 04/12/2022) |
|---|---|---|
| 04/12/2022 | | Text Order GRANTING 74 Motion to Appear Pro Hac Vice by attorney Jacek Pruski. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 04/12/2022) |
| 04/12/2022 | 75 | Memorandum in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 66 CORRECTED MOTION to Expedite *on Emergency Basis*Opposed MOTION for Certificate of Appealability *Pursuant to 28 U.S.C. § 1292* filed by Defendant Dolores Park, 69 Opposed MOTION to Amend/Correct 64 Order on Motion to Dismiss/Lack of Jurisdiction,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,, filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros, 70 Opposed MOTION for Leave to Appeal filed by Defendant Eliazar Cisneros (Paredes, John) (Entered: 04/12/2022) |
| 04/18/2022 | 76 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Ashley Dorsaneo* ( Filing fee $ 100 receipt number 0542-15934437) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Marziani, Mimi) (Entered: 04/18/2022) |
| 04/19/2022 | 77 | REPLY to Response to Motion, filed by Dolores Park, re 66 CORRECTED MOTION to Expedite *on Emergency Basis*Opposed MOTION for Certificate of Appealability *Pursuant to 28 U.S.C. § 1292* filed by Defendant Dolores Park (Thompson, Richard) (Entered: 04/19/2022) |
| 04/20/2022 | | Text Order GRANTING 76 Motion to Appear Pro Hac Vice by attorney Ashley Dorsaneo. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 04/20/2022) |
| 04/25/2022 | 78 | Unopposed MOTION for Leave to File Answer to Plaintiffs' Complaint by Dolores Park. (Attachments: # 1 Exhibit A)(Thompson, Richard) (Entered: 04/25/2022) |
| 04/26/2022 | | Text Order GRANTING 78 Motion for Leave to File entered by Judge Robert Pitman. In light of the lack of opposition, IT IS ORDERED that the Clerk of the Court shall file Defendant Park's answer, (Dkt. 78-1). (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 04/26/2022) |
| 04/26/2022 | 79 | ANSWER to 1 Complaint, with Jury Demand by Dolores Park.(dm) (Entered: 04/26/2022) |
| 05/26/2022 | 80 | MOTION to Quash by Naomi Narvaiz. (Byrd, J.) (Entered: 05/26/2022) |
| 06/02/2022 | 81 | Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 80 MOTION to Quash filed by Neutral Naomi Narvaiz (Attachments: # 1 Affidavit Declaration of Jacek Pruski in Support of Plaintiffs Opposition to Non-Party Naomi Narvaizs Objections And Motion To Quash Plaintiffs Subpoena For Production Of Documents And For Protective Order, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Exhibit Exhibit D)(Pruski, Jacek) (Entered: 06/02/2022) |
| 06/03/2022 | | Text Order GRANTING 48 Motion for Protective Order entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that the motion for entry of protective order is GRANTED. The Court will enter the protective order shortly.(This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 06/03/2022) |
| 06/03/2022 | | Text Order REFERRING 80 Motion to Quash entered by Judge Robert Pitman. IT IS ORDERED that the Motion to Quash, (Dkt. 80), is REFERRED to United States Magistrate Judge Mark Lane for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 06/03/2022) |
| 06/03/2022 | | MOTION REFERRED: referred 80 MOTION to Quash . Referral Judge: Mark Lane. (dm) (Entered: 06/06/2022) |
| 06/08/2022 | 82 | PROTECTIVE ORDER. Signed by Judge Robert Pitman. (dm) (Entered: 06/08/2022) |
| 06/09/2022 | 83 | MOTION to Quash *Plaintiffs' Subpoena for Production of Documents and for Protective Order* by Shana Evans. (Byrd, J.) (Entered: 06/09/2022) |
| 06/13/2022 | | Text Order REFERRING 83 Motion to Quash entered by Judge Robert Pitman. IT IS ORDERED that the Motion to Quash, (Dkt. 83), is REFERRED to United States Magistrate Judge Mark Lane for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 06/13/2022) |

| 06/14/2022 | | MOTION REFERRED: referred 83 MOTION to Quash *Plaintiffs' Subpoena for Production of Documents and for Protective Order*. Referral Judge: Mark Lane. (klw) (Entered: 06/14/2022) |
|---|---|---|
| 06/14/2022 | 84 | ORDER SETTING HEARING re: 83 MOTION to Quash *Plaintiffs' Subpoena for Production of Documents and for Protective Order*, and 80 MOTION to Quash : set for 6/27/2022 at 10:00 AM before Judge Mark Lane. Signed by Judge Mark Lane. (cc3) (Entered: 06/14/2022) |
| 06/16/2022 | 85 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Anne Tindall* ( Filing fee $ 100 receipt number 0542-16153065) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Marziani, Mimi) (Entered: 06/16/2022) |
| 06/16/2022 | 86 | Memorandum in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 83 MOTION to Quash *Plaintiffs' Subpoena for Production of Documents and for Protective Order* filed by Other Shana Evans (Attachments: # 1 Affidavit Declaration of Anne Harden Tindall, # 2 Exhibit A-D)(Paredes, John) (Entered: 06/16/2022) |
| 06/21/2022 | 87 | ORDER GRANTING 85 Motion to Appear Pro Hac Vice as to Anne Tindall. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 06/21/2022) |
| 06/22/2022 | 88 | Opposed MOTION to Amend/Correct 43 Scheduling Recommendations/Proposed Scheduling Order by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 [Plaintiffs' Amended Proposed] Scheduling Order)(Meyer, Robert) (Entered: 06/22/2022) |
| 06/23/2022 | 89 | NOTICE *JOINT NOTICE OF NON-PARTIES NAOMI NARVAIZ AND SHANA EVANS, AND OF PLAINTIFFS, IN RESPONSE TO THE COURTS ORDER SETTING HEARING* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway re 84 Order Setting Hearing on Motion, (Pruski, Jacek) (Entered: 06/23/2022) |
| 06/23/2022 | 90 | ORDER Cancelling Hearing. Signed by Judge Mark Lane. (dm) (Entered: 06/23/2022) |
| 06/27/2022 | 91 | MOTION to Withdraw 83 MOTION to Quash *Plaintiffs' Subpoena for Production of Documents and for Protective Order* by Shana Evans. (Byrd, J.) (Entered: 06/27/2022) |
| 06/27/2022 | 92 | MOTION to Withdraw 80 MOTION to Quash *Plaintiffs' Subpoena for Production of Documents and for Protective Order* by Naomi Narvaiz. (Byrd, J.) (Entered: 06/27/2022) |
| 06/28/2022 | | Text Order GRANTING 91 Motion to Withdraw entered by Judge Mark Lane. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ah) (Entered: 06/28/2022) |
| 06/28/2022 | | Text Order GRANTING 92 Motion to Withdraw entered by Judge Mark Lane. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ah) (Entered: 06/28/2022) |
| 06/28/2022 | | Text Order DISMISSING 83 Motion to Quash as WITHDRAWN per 91 entered by Judge Mark Lane. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ah) (Entered: 06/28/2022) |
| 06/28/2022 | | Text Order DISMISSING 80 Motion to Quash as WITHDRAWN per 92 entered by Judge Mark Lane. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ah) (Entered: 06/28/2022) |
| 06/28/2022 | | Motions No Longer Referred: 80 MOTION to Quash , 83 MOTION to Quash *Plaintiffs' Subpoena for Production of Documents and for Protective Order* (dm) (Entered: 06/28/2022) |
| 06/29/2022 | 93 | Response in Opposition to Motion, filed by Dolores Park, re 88 Opposed MOTION to Amend/Correct 43 Scheduling Recommendations/Proposed Scheduling Order filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Attachments: # 1 Proposed Order)(Thompson, Richard) (Entered: 06/29/2022) |
| 07/06/2022 | 94 | Unopposed MOTION for Extension of Time to File Response/Reply as to 88 Opposed MOTION to Amend/Correct 43 Scheduling Recommendations/Proposed Scheduling Order by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order Granting Extension of Time)(Paredes, John) (Entered: 07/06/2022) |
| 07/07/2022 | | Text Order GRANTING 94 Motion for Extension of Time to File Response/Reply entered by Judge Robert Pitman. In light of the lack of opposition, IT IS ORDERED that Plaintiffs' reply in support of their motion to amend is due on or before July 13, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 07/07/2022) |
| 07/13/2022 | 95 | REPLY to Response to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 88 Opposed MOTION to Amend/Correct 43 Scheduling Recommendations/Proposed Scheduling Order filed by |

| | | Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Paredes, John) (Entered: 07/13/2022) |
|---|---|---|
| 08/08/2022 | 96 | Opposed MOTION to Quash *Plaintiffs Subpoena to Meta Platforms* by Joeylynn Mesaros, Robert Mesaros. (Attachments: # 1 Exhibit A - Subpoena to Meta, # 2 Proposed Order)(Najvar, Jerad) (Entered: 08/08/2022) |
| 08/09/2022 | | Text Order REFERRING 96 Motion to Quash entered by Judge Robert Pitman. IT IS ORDERED that the Motion to Quash, (Dkt. 96), is REFERRED to United States Magistrate Judge Mark Lane for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jalc) (Entered: 08/09/2022) |
| 08/09/2022 | | MOTION REFERRED: referred 96 Opposed MOTION to Quash *Plaintiffs Subpoena to Meta Platforms*. Referral Judge: Mark Lane. (dm) (Entered: 08/09/2022) |
| 08/15/2022 | 97 | Memorandum in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 96 Opposed MOTION to Quash *Plaintiffs Subpoena to Meta Platforms* filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros (Paredes, John) (Entered: 08/15/2022) |
| 08/16/2022 | 99 | ORDER SETTING HEARING re: 96 Opposed MOTION to Quash *Plaintiffs Subpoena to Meta Platforms* : for 8/30/2022 at 02:00 PM before Judge Mark Lane. Signed by Judge Mark Lane. (cc3) (Entered: 08/16/2022) |
| 08/19/2022 | 100 | IT IS ORDERED that Parks Emergency Motion Requesting Authorization for Interlocutory Appeal, (Dkt. 66); the Mesaros Defendants Motion to Reconsider or, in the Alternative, Authorize Interlocutory Appeal, (Dkt. 69); and Cisneros Motion for Leave to Appeal, (Dkt. 70), are DENIED. Signed by Judge Robert Pitman. (dm) (Entered: 08/19/2022) |
| 08/19/2022 | 101 | ORDER GRANTING 88 Motion to Amend/Correct the Scheduling Order. Signed by Judge Robert Pitman. (dm) (Entered: 08/19/2022) |
| 08/19/2022 | | Reset Deadlines: Proposed Scheduling Order due by 9/16/2022. (dm) (Entered: 08/19/2022) |
| 08/26/2022 | 102 | NOTICE *JOINT NOTICE BY THE MESAROS DEFENDANTS AND PLAINTIFFS IN RESPONSE TO THE COURTS ORDER SETTING HEARING* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway re 99 Order Setting Hearing on Motion (Pruski, Jacek) (Entered: 08/26/2022) |
| 08/26/2022 | 104 | ORDER RESETTING MOTION HEARING on 96 Opposed MOTION to Quash *Plaintiffs Subpoena to Meta Platforms* filed by Robert Mesaros, Joeylynn Mesaros 9/8/2022 09:30 AM before Judge Mark Lane. Signed by Judge Mark Lane. (klw) (Entered: 08/26/2022) |
| 09/06/2022 | 105 | NOTICE *JOINT NOTICE BY THE MESAROS DEFENDANTS AND PLAINTIFFS IN RESPONSE TO THE COURTS ORDER SETTING HEARING* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway re 104 Order, Set Motion Hearings (Pruski, Jacek) (Entered: 09/06/2022) |
| 09/07/2022 | 106 | NOTICE of Attorney Appearance by Christina Marie Beeler on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. Attorney Christina Marie Beeler added to party Eric Cervini(pty:pla), Attorney Christina Marie Beeler added to party Wendy Davis(pty:pla), Attorney Christina Marie Beeler added to party David Gins(pty:pla), Attorney Christina Marie Beeler added to party Timothy Holloway(pty:pla) (Beeler, Christina) (Entered: 09/07/2022) |
| 09/08/2022 | 107 | Minute Entry for proceedings held before Judge Mark Lane: Motion Hearing held on 9/8/2022 re 96 Opposed MOTION to Quash *Plaintiffs Subpoena to Meta Platforms* filed by Robert Mesaros, Joeylynn Mesaros (Minute entry documents are not available electronically.). (Court Reporter FTR Gold - ERO.)(dm) (Entered: 09/08/2022) |
| 09/08/2022 | 108 | ORDER DENYING 96 Motion to Modify and for Protection as to Plaintiffs Third-Party Subpoena. Signed by Judge Mark Lane. (dm) (Entered: 09/08/2022) |
| 09/13/2022 | 109 | Opposed MOTION to Compel *Defendant Eliazar Cisneros to Produce his Mobile Phone and Documents Related to Potential Spoliation of Evidence* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Affidavit Declaration of JoAnna Barbara Suriani, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Proposed Order)(Paredes, John) (Entered: 09/13/2022) |
| 09/16/2022 | 111 | STATUS REPORT *and Joint Proposed Scheduling Order* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order Proposed Scheduling Order)(Paredes, John) (Entered: 09/16/2022) |
| 09/19/2022 | | Text Order REFERRING 109 Motion to Compel entered by Judge Robert Pitman. IT IS ORDERED that Plaintiff's Motion to Compel, (Dkt. 109), is REFERRED to United States Magistrate Judge Mark Lane for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 09/19/2022) |

| | | |
|---|---|---|
| 09/19/2022 | | MOTION REFERRED: referred 109 Opposed MOTION to Compel *Defendant Eliazar Cisneros to Produce his Mobile Phone and Documents Related to Potential Spoliation of Evidence*. Referral Judge: Mark Lane. (dm) (Entered: 09/19/2022) |
| 09/22/2022 | 112 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Aaron Nathan* ( Filing fee $ 100 receipt number ATXWDC-16555504) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Marziani, Mimi) (Entered: 09/22/2022) |
| 09/22/2022 | 113 | MOTION to Appear Pro Hac Vice by Mimi M.D. Marziani *for Sarah Xiyi Chen* ( Filing fee $ 100 receipt number ATXWDC-16555527) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Marziani, Mimi) (Entered: 09/22/2022) |
| 09/22/2022 | 114 | RESPONSE in Support, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 109 Opposed MOTION to Compel *Defendant Eliazar Cisneros to Produce his Mobile Phone and Documents Related to Potential Spoliation of Evidence* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini *(NOTICE of Failure to Oppose)* (Paredes, John) (Entered: 09/22/2022) |
| 09/22/2022 | 115 | REPLY to Response to Motion, filed by Eliazar Cisneros, re 109 Opposed MOTION to Compel *Defendant Eliazar Cisneros to Produce his Mobile Phone and Documents Related to Potential Spoliation of Evidence* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Attachments: # 1 Affidavit)(Canseco, Francisco) (Entered: 09/22/2022) |
| 09/23/2022 | 116 | ORDER GRANTING 112 Motion to Appear Pro Hac Vice as to Aaron E. Nathan. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (dm) (Entered: 09/23/2022) |
| 09/23/2022 | 117 | ORDER GRANTING 113 Motion to Appear Pro Hac Vice as to Sarah Xiyi Chen. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (dm) (Entered: 09/23/2022) |
| 09/23/2022 | 118 | ORDER GRANTING 113 Motion to Appear Pro Hac Vice as to Sarah Xiyi Chen. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (dm) (Entered: 09/23/2022) |
| 09/28/2022 | 119 | REPLY to Response to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 109 Opposed MOTION to Compel *Defendant Eliazar Cisneros to Produce his Mobile Phone and Documents Related to Potential Spoliation of Evidence* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Attachments: # 1 Proposed Order (Revised))(Paredes, John) (Entered: 09/28/2022) |
| 09/29/2022 | 121 | ORDER Setting Telephone Conference for 10/12/2022 02:30 PM before Judge Robert Pitman. Signed by Judge Robert Pitman. (bot2) (Entered: 09/29/2022) |
| 10/03/2022 | 122 | ORDER re Opposed MOTION to Compel *Defendant Eliazar Cisneros to Produce his Mobile Phone and Documents Related to Potential Spoliation of Evidence* ( Motion Hearing set for 10/18/2022 at 02:30 PM before Judge Mark Lane,). Signed by Judge Mark Lane. (dm) (Entered: 10/03/2022) |
| 10/06/2022 | 123 | Unopposed MOTION to Withdraw as Attorney *filed on behalf of Emma Hilbert* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Beeler, Christina) (Entered: 10/06/2022) |
| 10/11/2022 | 124 | Joint MOTION to Continue *and Notice* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Beeler, Christina) (Entered: 10/11/2022) |
| 10/12/2022 | 125 | Minute Entry for proceedings held before Judge Robert Pitman: Initial Pretrial Conference held on 10/12/2022 (Minute entry documents are not available electronically.). (Court Reporter Lily Reznik.)(dm) (Entered: 10/13/2022) |
| 10/13/2022 | 126 | SCHEDULING ORDER: Consent to Trial by Magistrate due by 11/18/2022, Jury Trial set for 12/11/2023 at 09:00 AM before Judge Robert Pitman, ADR Report Deadline due by 1/13/2023, Amended Pleadings due by 1/13/2023, Discovery due by 6/23/2023, Joinder of Parties due by 1/13/2023, Motions due by 8/18/2023. Signed by Judge Robert Pitman. (dm) (Entered: 10/13/2022) |
| 10/13/2022 | | Text Order GRANTING 123 Motion to Withdraw as Attorney entered by Judge Robert Pitman. In light of the lack of opposition, IT IS ORDERED that Emma Hilbert is withdrawn as attorney of record for Plaintiffs. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 10/13/2022) |
| 10/14/2022 | 127 | ORDER GRANTING 124 Motion to Continue ( Motion Hearing reset for 10/27/2022 at 10:00 AM before Judge |

| | | Mark Lane,). Signed by Judge Mark Lane. (dm) (Entered: 10/14/2022) |
|---|---|---|
| 10/14/2022 | 128 | ORDER REGARDING DISCOVERY DISPUTES. Signed by Judge Mark Lane. (dm) (Entered: 10/14/2022) |
| 10/18/2022 | 129 | Joint NOTICE BY PLAINTIFFS AND DEFENDANT ELIAZAR CISNEROS IN RESPONSE TO THE COURTS ORDER RESETTING HEARING by Plaintiffs and Defendant Cisneros by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway re 127 Order, Set Motion Hearings, Terminate Motions (Beeler, Christina) Modified on 10/19/2022 to add filer and modify text (klw). (Entered: 10/18/2022) |
| 10/24/2022 | 131 | SUPPLEMENT to 129 Notice (Other), *Ex 1 - Affidavit of Cisneros* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Beeler, Christina) (Entered: 10/24/2022) |
| 10/24/2022 | 132 | DEFICIENCY NOTICE: re 131 Supplement (dm) (Entered: 10/24/2022) |
| 10/25/2022 | 133 | SUPPLEMENT to 129 Notice (Other), *CORRECTED* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Exhibit)(Beeler, Christina) (Entered: 10/25/2022) |
| 10/27/2022 | 134 | Minute Entry for proceedings held before Judge Mark Lane: Motion Hearing held on 10/27/2022 re 109 Opposed MOTION to Compel *Defendant Eliazar Cisneros to Produce his Mobile Phone and Documents Related to Potential Spoliation of Evidence* filed by David Gins, Wendy Davis, Timothy Holloway, Eric Cervini (Minute entry documents are not available electronically.). (Court Reporter FTR Gold - ERO.)(dm) (Entered: 10/27/2022) |
| 10/27/2022 | 135 | Witness List by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (dm) (Entered: 10/27/2022) |
| 10/27/2022 | 136 | ORDER GRANTING 109 Motion to Compel. Signed by Judge Mark Lane. (dm) (Entered: 10/27/2022) |
| 10/27/2022 | | Motions No Longer Referred: 109 Opposed MOTION to Compel *Defendant Eliazar Cisneros to Produce his Mobile Phone and Documents Related to Potential Spoliation of Evidence* (dm) (Entered: 10/27/2022) |
| 10/28/2022 | 137 | Opposed MOTION to Amend Complaint by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Exhibit A - Proposed First Amended Complaint, # 2 Proposed Order )(Paredes, John) (Entered: 10/28/2022) |
| 10/28/2022 | 138 | REQUEST FOR ISSUANCE OF SUMMONS by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Paredes, John) (Entered: 10/28/2022) |
| 11/11/2022 | 139 | Memorandum in Opposition to Motion, filed by Dolores Park, re 137 Opposed MOTION to Amend Complaint filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Attachments: # 1 Exhibit 1)(Mersino, Erin) (Entered: 11/11/2022) |
| 11/18/2022 | 140 | MOTION to Withdraw as Attorney *Mimi Marziani* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Beeler, Christina) (Entered: 11/18/2022) |
| 11/18/2022 | 141 | CONSENT to Trial by US Magistrate Judge by Dolores Park. (Mersino, Erin) (Entered: 11/18/2022) |
| 11/18/2022 | 142 | REPLY to Response to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 137 Opposed MOTION to Amend Complaint filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Attachments: # 1 Exhibit 1)(Paredes, John) (Entered: 11/18/2022) |
| 11/18/2022 | 143 | NOTICE *Concerning Reference to U.S. Magistrate Judge* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway (Paredes, John) (Entered: 11/18/2022) |
| 11/21/2022 | | Text Order GRANTING 140 Motion to Withdraw as Attorney entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that Mimi Marziani is WITHDRAWN as counsel for plaintiffs. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 11/21/2022) |
| 12/02/2022 | 144 | MOTION to Appear Pro Hac Vice by Christina Marie Beeler *for Veronikah Warms* ( Filing fee $ 100 receipt number ATXWDC-16813107) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Beeler, Christina) (Entered: 12/02/2022) |
| 12/06/2022 | 145 | ORDER GRANTING 144 Motion to Appear Pro Hac Vice as to Veronikah Rhea Warms. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (dm) (Entered: 12/06/2022) |
| 01/04/2023 | 146 | Opposed MOTION for Discovery *for Leave to Take Additional Depositions* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Proposed Order)(Paredes, John) (Entered: 01/04/2023) |
| 01/11/2023 | 147 | Response in Opposition to Motion, filed by Dolores Park, re 146 Opposed MOTION for Discovery *for Leave to Take Additional Depositions* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Thompson, Richard) (Entered: 01/11/2023) |

| | | |
|---|---|---|
| 01/12/2023 | | Text Order REFERRING 146 Motion for Leave to Take Additional Depositions entered by Judge Robert Pitman. IT IS ORDERED that Plaintiff's Motion for Leave to Take Additional Depositions, (Dkt. 146), is REFERRED to United States Magistrate Judge Mark Lane for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 01/12/2023) |
| 01/12/2023 | | MOTION referred 146 Opposed MOTION for Discovery *for Leave to Take Additional Depositions*. Referral Judge: Mark Lane. (dm) (Entered: 01/12/2023) |
| 01/12/2023 | 148 | ORDER re 146 Opposed MOTION for Discovery *for Leave to Take Additional Depositions* filed by David Gins, Wendy Davis, Timothy Holloway, Eric Cervini. ( Motion Hearing set for 1/25/2023 at 09:00 AM before Judge Mark Lane,). Signed by Judge Mark Lane. (dm) (Entered: 01/12/2023) |
| 01/13/2023 | 149 | ADR Report Filed - *Joint Report on ADR* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway(Paredes, John) (Entered: 01/13/2023) |
| 01/18/2023 | 150 | ORDER GRANTING 137 Motion to Amend Complaint. Signed by Judge Robert Pitman. (dm) (Entered: 01/18/2023) |
| 01/18/2023 | 151 | FIRST AMENDED COMPLAINT against Hannah Ceh, Eliazar Cisneros, Joeylynn Mesaros, Robert Mesaros, Dolores Park, Randi Ceh, Steve Ceh, Kyle Kruger amending 1 Complaint, filed by David Gins, Wendy Davis, Eric Cervini, Timothy Holloway.(dm) (Entered: 01/18/2023) |
| 01/18/2023 | 152 | Summons Issued as to Steve Ceh, Randi Ceh, Kyle Kruger. (dm) (Entered: 01/18/2023) |
| 01/18/2023 | 153 | REPLY to Response to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 146 Opposed MOTION for Discovery *for Leave to Take Additional Depositions* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Attachments: # 1 Affidavit Declaration of John Paredes, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9)(Paredes, John) (Entered: 01/18/2023) |
| 01/19/2023 | | Text Order REFERRING 146 Motion for Discovery entered by Judge Robert Pitman. IT IS ORDERED that Defendant's Motion for Discovery, (Dkt. 146), is REFERRED to United States Magistrate Judge Mark Lane for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 01/19/2023) |
| 01/19/2023 | | MOTION REFERRED: referred 146 Opposed MOTION for Discovery *for Leave to Take Additional Depositions*. Referral Judge: Mark Lane. (dm) (Entered: 01/19/2023) |
| 01/23/2023 | 154 | Opposed MOTION *to Hold January 25, 2023 Hearing in Abeyance Pending Service and Conference with Defendants Ceh, Ceh, and Kruger* re 147 Response in Opposition to Motion, Order on Motion for Discovery,, 146 Opposed MOTION for Discovery *for Leave to Take Additional Depositions*, 148 Order,, Set Motion Hearings, Motions Referred, Order on Motion for Discovery,, Motions Referred, 153 Reply to Response to Motion,, by Dolores Park. (Attachments: # 1 Proposed Order)(Thompson, Richard) (Entered: 01/23/2023) |
| 01/23/2023 | 155 | Unopposed MOTION *to appear electronically for Jan 25 2023 discovery hearing* by Joeylynn Mesaros, Robert Mesaros. (Attachments: # 1 Proposed Order granting leave to appear electronically)(Najvar, Jerad) (Entered: 01/23/2023) |
| 01/23/2023 | 156 | STATUS REPORT *(Joint) re: Motion for Leave to Take Additional Depositions* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Paredes, John) (Entered: 01/23/2023) |
| 01/24/2023 | | Text Order GRANTING 155 Motion to Appear Telephonically entered by Judge Mark Lane. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ah) (Entered: 01/24/2023) |
| 01/24/2023 | 157 | Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 154 Opposed MOTION *to Hold January 25, 2023 Hearing in Abeyance Pending Service and Conference with Defendants Ceh, Ceh, and Kruger* re 147 Response in Opposition to Motion, Order on Motion for Discovery,, 146 Opposed MOTION for Discovery < filed by Defendant Dolores Park (Berwick, Benjamin) (Entered: 01/24/2023) |
| 01/25/2023 | 158 | NOTICE *of Correction* by Dolores Park re 147 Response in Opposition to Motion, (Thompson, Richard) (Entered: 01/25/2023) |
| 01/25/2023 | 159 | ORDER GRANTING 146 Motion for Leave to Take Additional Depositions. Signed by Judge Mark Lane. (dm) (Entered: 01/25/2023) |
| 01/25/2023 | | Text Order DENYING 154 Motion for the reasons stated at the hearing entered by Judge Mark Lane. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ah) (Entered: 01/25/2023) |

| | | |
|---|---|---|
| 01/25/2023 | [160](#) | Minute Entry for proceedings held before Judge Mark Lane: Motion Hearing held on 1/25/2023 re [146](#) Opposed MOTION for Discovery *for Leave to Take Additional Depositions* filed by David Gins, Wendy Davis, Timothy Holloway, Eric Cervini, [154](#) Opposed MOTION *to Hold January 25, 2023 Hearing in Abeyance Pending Service and Conference with Defendants Ceh, Ceh, and Kruger* (Minute entry documents are not available electronically.). (Court Reporter ERO.)(dm) (Entered: 01/25/2023) |
| 02/01/2023 | [161](#) | Unopposed MOTION for Extension of Time to File Answer */Response to First Amended Complaint* by Eliazar Cisneros, Joeylynn Mesaros, Robert Mesaros, Dolores Park. (Attachments: # [1](#) Proposed Order)(Najvar, Jerad) (Entered: 02/01/2023) |
| 02/02/2023 | | Text Order GRANTING [161](#) Motion for Extension of Time to Answer/Respond to First Amended Complaint entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that Defendants shall answer or otherwise respond to Plaintiffs' Amended Complaint on or before February 8, 2023. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 02/02/2023) |
| 02/02/2023 | | Reset Deadlines: Eliazar Cisneros answer due 2/8/2023; Joeylynn Mesaros answer due 2/8/2023; Robert Mesaros answer due 2/8/2023; Dolores Park answer due 2/8/2023. (dm) (Entered: 02/02/2023) |
| 02/08/2023 | [162](#) | Second Motion to Dismiss for Failure to State a Claim by Joeylynn Mesaros, Robert Mesaros. (Attachments: # [1](#) Proposed Order dismissing First Amended Complaint)(Najvar, Jerad) (Entered: 02/08/2023) |
| 02/08/2023 | [163](#) | Motion to Dismiss for Failure to State a Claim *Plaintiffs' First Amended Complaint* by Dolores Park. (Attachments: # [1](#) Proposed Order - Motion to Dismiss, # [2](#) Proposed Order -Request to Authorize Interlocutory Appeal)(Thompson, Richard) (Entered: 02/08/2023) |
| 02/08/2023 | [164](#) | Second MOTION to Amend Complaint *Dismiss Amended Complaint* by Eliazar Cisneros. (Attachments: # [1](#) Proposed Order Order Granting, # [2](#) Proposed Order Order InterLocAppeal)(Canseco, Francisco) (Entered: 02/08/2023) |
| 02/09/2023 | [165](#) | SUMMONS Returned Executed by Wendy Davis, Eric Cervini, David Gins, Timothy Holloway. Randi Ceh served on 1/26/2023, answer due 2/16/2023. (Hall, Samuel) (Entered: 02/09/2023) |
| 02/09/2023 | [166](#) | SUMMONS Returned Executed by Wendy Davis, Eric Cervini, David Gins, Timothy Holloway. Steve Ceh served on 1/26/2023, answer due 2/16/2023. (Hall, Samuel) (Entered: 02/09/2023) |
| 02/22/2023 | [167](#) | Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re [162](#) Second Motion to Dismiss for Failure to State a Claim filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros, [163](#) Motion to Dismiss for Failure to State a Claim *Plaintiffs' First Amended Complaint* filed by Defendant Dolores Park, [164](#) Second MOTION to Amend Complaint *Dismiss Amended Complaint* filed by Defendant Eliazar Cisneros. (Beeler, Christina) (Entered: 02/22/2023) |
| 02/28/2023 | [168](#) | REPLY to Response to Motion, filed by Joeylynn Mesaros, Robert Mesaros, re [162](#) Second Motion to Dismiss for Failure to State a Claim filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros (Najvar, Jerad) (Entered: 02/28/2023) |
| 03/01/2023 | [169](#) | REPLY to Response to Motion, filed by Dolores Park, re [163](#) Motion to Dismiss for Failure to State a Claim *Plaintiffs' First Amended Complaint* filed by Defendant Dolores Park (Thompson, Richard) (Entered: 03/01/2023) |
| 03/01/2023 | [170](#) | BRIEF *Consolidated Opposition to Defendants Randi Ceh's and Steve Ceh's Motions to Dismiss (motions attached; emailed to Plaintiffs rather than filed on ECF by pro se Defendants)* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # [1](#) Supplement A, # [2](#) Supplement B)(Paredes, John) (Entered: 03/01/2023) |
| 03/02/2023 | [171](#) | SUMMONS Returned Executed by Wendy Davis, Eric Cervini, David Gins, Timothy Holloway. Kyle Kruger served on 2/16/2023, answer due 3/9/2023. (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B)(Hall, Samuel) (Entered: 03/02/2023) |
| 03/02/2023 | [172](#) | STIPULATION/MOTION *to Extend Time for Defendant Kyle Kruger to Respond to Plaintiffs' First Amended Complaint* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Hall, Samuel) Modified on 3/3/2023 to create motion (dm). (Entered: 03/02/2023) |
| 03/03/2023 | [173](#) | Transcript filed of Proceedings held on October 27, 2022, Proceedings Transcribed: Motion Hearing. Court Reporter/Transcriber: Lily I. Reznik, Telephone number: 512-391-8792 or Lily_Reznik@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 3/24/2023, Redacted Transcript Deadline set for 4/3/2023, Release of Transcript Restriction set for 6/1/2023, (lr) (Entered: 03/03/2023) |
| 03/03/2023 | [174](#) | Transcript filed of Proceedings held on January 25, 2023, Proceedings Transcribed: Motion Hearing. Court Reporter/Transcriber: Lily I. Reznik, Telephone number: 512-391-8792 or Lily_Reznik@txwd.uscourts.gov. |

| | | |
|---|---|---|
| | | Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 3/24/2023, Redacted Transcript Deadline set for 4/3/2023, Release of Transcript Restriction set for 6/1/2023. (lr) (Entered: 03/03/2023) |
| 03/03/2023 | 175 | Unopposed MOTION to Extend Scheduling Order Deadlines by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Paredes, John) (Entered: 03/03/2023) |
| 03/06/2023 | | Text Order GRANTING 172 Motion for Extension of Time to File entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that Defendant Kyle Kruger shall answer or otherwise respond to Plaintiff's First Amended Complaint on or before March 23, 2023. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 03/06/2023) |
| 03/06/2023 | | Reset Deadlines: Kyle Kruger answer due 3/23/2023. (dm) (Entered: 03/06/2023) |
| 03/09/2023 | 176 | AMENDED SCHEDULING ORDER. Jury Trial set for 4/22/2024 at 09:00 AM before Judge Robert Pitman. Discovery due by 10/6/2023, Dispositive Motions due by 12/1/2023. Signed by Judge Robert Pitman. (dm) (Entered: 03/09/2023) |
| 03/23/2023 | 177 | Agreed MOTION *to extend time for Defendant Kyle Kruger to respond to Plaintiffs' First Amended Complaint* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Lindgrensavage, Cerin) (Entered: 03/23/2023) |
| 03/23/2023 | 178 | MOTION to Appear Pro Hac Vice by Christina Marie Beeler *for Jamielah Yancey* ( Filing fee $ 100 receipt number ATXWDC-17235615) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Beeler, Christina) (Entered: 03/23/2023) |
| 03/24/2023 | 179 | ORDER GRANTING 178 Motion to Appear Pro Hac Vice as to Jamielah Yancey. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (dm) (Entered: 03/24/2023) |
| 03/27/2023 | | Text Order GRANTING 177 Motion for Extension of Time to Answer entered by Judge Robert Pitman. In light of the parties' agreement, IT IS ORDERED that Defendant Kyle Kruger shall answer or otherwise respond to Plaintiffs' complaint on or before April 6, 2023. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 03/27/2023) |
| 03/27/2023 | | Reset Deadlines: Kyle Kruger answer due 4/6/2023. (dm) (Entered: 03/27/2023) |
| 04/06/2023 | 180 | Agreed MOTION *to extend time for Defendant Kyle Kruger to respond to Plaintiffs' First Amended Complaint* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Lindgrensavage, Cerin) (Entered: 04/06/2023) |
| 04/11/2023 | | Text Order GRANTING 180 Motion to Extend Time for Defendant Kyle Kruger to Answer. entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that Defendant Kyle Kruger shall answer Plaintiffs' complaint on or before on or before May 6, 2023. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 04/11/2023) |
| 04/11/2023 | | Reset Deadlines: Kyle Kruger answer due 5/6/2023. (dm) (Entered: 04/12/2023) |
| 04/18/2023 | 181 | MOTION for Discovery *Second Motion for Leave to Take Additional Depositions* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order)(Berwick, Benjamin) (Entered: 04/18/2023) |
| 04/25/2023 | 182 | RESPONSE to Motion, filed by Dolores Park, re 181 MOTION for Discovery *Second Motion for Leave to Take Additional Depositions* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Thompson, Richard) (Entered: 04/25/2023) |
| 04/27/2023 | 183 | NOTICE of Settlement *with Defendant Kyle Kruger* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway (Lindgrensavage, Cerin) Modified on 4/27/2023 to add gavel per chambers (cc3). (Entered: 04/27/2023) |
| 04/27/2023 | 184 | Agreed MOTION to Dismiss *Defendant Hannah Ceh with prejudice pursuant to settlement agreement* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order Proposed Order for Voluntary Dismissal with Prejudice of Defendant Hannah Ceh)(Lindgrensavage, Cerin) (Entered: 04/27/2023) |
| 04/28/2023 | 185 | Unopposed MOTION to Withdraw as Attorney *filed on behalf of Jacek Pruski* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order re: Motion to Withdraw Jacek Pruski as Counsel)(Paredes, John) (Entered: 04/28/2023) |
| 04/28/2023 | 186 | ORDER GRANTING 184 Motion to Dismiss. Terminated Kyle Kruger and Hannah Ceh Signed by Judge Robert Pitman. (cc3) Modified on 4/28/2023 to update terminated defendants name (cc3). (Entered: 04/28/2023) |

| | | |
|---|---|---|
| 05/01/2023 | | Text Order GRANTING 185 Motion to Withdraw as Attorney entered by Judge Robert Pitman. In light of the lack of opposition and for good cause shown, IT IS ORDERED that Jacek Pruski is WITHDRAWN as Plaintiffs' attorney. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 05/01/2023) |
| 05/02/2023 | 187 | NOTICE *of non-opposition to Plaintiffs' Second Motion for Additional Depositions* by Joeylynn Mesaros, Robert Mesaros re 181 MOTION for Discovery *Second Motion for Leave to Take Additional Depositions* (Najvar, Jerad) (Entered: 05/02/2023) |
| 05/02/2023 | 188 | RESPONSE in Support, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 181 MOTION for Discovery *Second Motion for Leave to Take Additional Depositions* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Paredes, John) (Entered: 05/02/2023) |
| 05/02/2023 | 189 | ORDER GRANTING 181 Motion for Leave to Take Additional Depositions. Signed by Judge Robert Pitman. (dm) (Entered: 05/02/2023) |
| 05/08/2023 | 190 | Motion for leave to File Sealed Document (Attachments: # 1 Exhibit 10 - Sealed Document, # 2 Exhibit 12 - Sealed Document, # 3 Proposed Order) (Hall, Samuel) (Entered: 05/08/2023) |
| 05/08/2023 | 191 | MOTION to Compel *Defendant Joelynn Mesaros to Produce her iCloud Data and Documents Related to Potential Spoliation of Evidence* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Declaration of JoAnna Barbara Suriani, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Proposed Order)(Hall, Samuel) (Additional attachment(s) added on 5/15/2023: # 18 Sealed Exhibits 10 and 12) (dm). (Entered: 05/08/2023) |
| 05/12/2023 | 192 | MOTION to Quash *Subpoena* by MARK GRIFFIN. (Attachments: # 1 Exhibit A)(Brown, Shawn) (Entered: 05/12/2023) |
| 05/12/2023 | 193 | DEFICIENCY NOTICE: re 192 MOTION to Quash *Subpoena* (cc3) (Entered: 05/12/2023) |
| 05/13/2023 | 194 | Memorandum in Support, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 191 MOTION to Compel *Defendant Joelynn Mesaros to Produce her iCloud Data and Documents Related to Potential Spoliation of Evidence* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini *NOTICE OF CORRECTION* (Paredes, John) (Entered: 05/13/2023) |
| 05/15/2023 | | Text Order GRANTING 190 Motion for Leave to File Sealed Document entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that the Clerk of Court shall file the following exhibits to Plaintiffs' motion to compel, (Dkt. 191), UNDER SEAL: Exhibit 10, (Dkt. 190-1), and Exhibit 12, (Dkt. 190-2). (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 05/15/2023) |
| 05/15/2023 | 195 | Unopposed MOTION to Stay *deadline for response to motion to compel* by Joeylynn Mesaros. (Attachments: # 1 Proposed Order)(Najvar, Jerad) (Entered: 05/15/2023) |
| 05/16/2023 | | Text Order GRANTING 195 Motion to Stay Deadline entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that the deadline for a response to Plaintiffs motion to compel production from Defendant Joeylynn Mesaros is suspended, and the parties shall file a status update with the court on or before May 24, 2023. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 05/16/2023) |
| 05/18/2023 | 196 | MOTION to Quash *Subpoena* by Mark Griffin. (Attachments: # 1 Exhibit A)(Brown, Shawn) (Entered: 05/18/2023) |
| 05/18/2023 | 197 | MOTION to Appear Pro Hac Vice by Christina Marie Beeler *for Rebecca Heath* ( Filing fee $ 100 receipt number ATXWDC-17458091) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Beeler, Christina) (Entered: 05/18/2023) |
| 05/19/2023 | 198 | Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 196 MOTION to Quash *Subpoena* filed by Movant Mark Griffin, Movant MARK GRIFFIN (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Proposed Order)(Hall, Samuel) (Entered: 05/19/2023) |
| 05/24/2023 | 199 | ORDER GRANTING 197 Motion to Appear Pro Hac Vice as to REBECCA N. HEATH. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (cc3) (Entered: 05/24/2023) |
| 05/24/2023 | 200 | NOTICE *of Withdrawal* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway re 191 MOTION to Compel *Defendant Joelynn Mesaros to Produce her iCloud Data and Documents Related to Potential Spoliation of Evidence* (Paredes, John) (Entered: 05/24/2023) |

| | | |
|---|---|---|
| 05/25/2023 | | Text Order MOOTING 191 Motion to Compel entered by Judge Robert Pitman. In light of Plaintiffs' notice of withdrawal, (Dkt. 200), IT IS ORDERED that Plaintiffs' motion is DISMISSED AS MOOT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 05/25/2023) |
| 06/09/2023 | 201 | MOTION to Withdraw 196 MOTION to Quash *Subpoena* by Mark Griffin. (Brown, Shawn) (Entered: 06/09/2023) |
| 06/12/2023 | | Text Order GRANTING 201 Motion to Withdraw 201 MOTION to Withdraw 196 MOTION to Quash *Subpoena* entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that Movant Mark Griffin's motion, (Dkt. 196), is WITHDRAWN. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 06/12/2023) |
| 07/25/2023 | 202 | IT IS ORDERED that Defendant Kyle Kruger is DISMISSED as a party inthis suit. Signed by Judge Robert Pitman. (dm) (Entered: 07/25/2023) |
| 07/31/2023 | 203 | NOTICE of Filing (Notice of Change of Address and Firm Affiliation for JoAnna Barbara Suriani) by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway (Hall, Samuel) (Entered: 07/31/2023) |
| 08/03/2023 | 204 | ORDER DENYING 162 Motion to Dismiss for Failure to State a Claim; DENYING 163 Motion to Dismiss for Failure to State a Claim; DENYING 164 Motion to Dismiss First Amended Complaint. Signed by Judge Robert Pitman. (dm) (Entered: 08/03/2023) |
| 08/16/2023 | 205 | NOTICE *of Filing of Petition for Writ of Mandamus* by Dolores Park (Attachments: # 1 Petition, # 2 Appendix) (Mersino, Erin) (Entered: 08/16/2023) |
| 08/17/2023 | 206 | NOTICE *of 5th Court of Appeals Requesting Response to Petition file in In re Dolores Park, Case No. 23-50585* by Dolores Park (Attachments: # 1 Exhibit 1)(Mersino, Erin) (Entered: 08/17/2023) |
| 08/17/2023 | 207 | NOTICE of Filing: Courtesy copy of a **Petition for Writ of Mandamus** filed by Dolores Park, forwarded from the USCA Fifth Circuit. (klw) (Entered: 08/18/2023) |
| 08/18/2023 | 208 | NOTICE *of filing of petition for mandamus* by Joeylynn Mesaros, Robert Mesaros (Attachments: # 1 Exhibit Copy of Petition and appendix)(Najvar, Jerad) (Entered: 08/18/2023) |
| 08/22/2023 | | Text Order TERMINATING 183 Motion entered by Judge Robert Pitman. In light of the parties' settlement, Defendant Kruger has been TERMINATED as a party in this suit. (This is a text-only entry generated by the court. There is no document associated with this entry.) (lolc) (Entered: 08/22/2023) |
| 08/28/2023 | 209 | ORDER of USCA (certified copy) DENYING the Petition for Mandamus in re: Joeylynn Mesaros and Robert Mesaros. (klw) (Entered: 08/29/2023) |
| 08/31/2023 | 210 | Opposed MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint by Joeylynn Mesaros, Robert Mesaros. (Attachments: # 1 Proposed Order)(Najvar, Jerad) (Entered: 08/31/2023) |
| 09/01/2023 | 211 | Opposed MOTION for Extension of Time to File Response/Reply *to Mesaros Defendants' Motion for Reconsideration and/or Renewed Request to Certify an Interlocutory Appeal* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Paredes, John) (Entered: 09/01/2023) |
| 09/07/2023 | 212 | MOTION to Appear Pro Hac Vice by Christina Marie Beeler *for Amy Orlov* ( Filing fee $ 100 receipt number ATXWDC-17855593) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Beeler, Christina) (Entered: 09/07/2023) |
| 09/07/2023 | 213 | MOTION to Appear Pro Hac Vice by Christina Marie Beeler *for Christina Peck* ( Filing fee $ 100 receipt number ATXWDC-17855636) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Beeler, Christina) (Entered: 09/07/2023) |
| 09/07/2023 | 214 | MOTION to Appear Pro Hac Vice by Christina Marie Beeler *for JP Catalanotto* ( Filing fee $ 100 receipt number ATXWDC-17855706) by on behalf of Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Beeler, Christina) (Entered: 09/07/2023) |
| 09/11/2023 | 215 | RESPONSE in Support, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 211 Opposed MOTION for Extension of Time to File Response/Reply *to Mesaros Defendants' Motion for Reconsideration and/or Renewed Request to Certify an Interlocutory Appeal* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Hall, Samuel) (Entered: 09/11/2023) |
| 09/11/2023 | 216 | NOTICE *Regarding Plaintiffs Request for Default Order on Mtn for Extension* by Joeylynn Mesaros, Robert Mesaros re 211 Opposed MOTION for Extension of Time to File Response/Reply *to Mesaros Defendants' Motion for Reconsideration and/or Renewed Request to Certify an Interlocutory Appeal* (Najvar, Jerad) (Entered: 09/11/2023) |
| 09/11/2023 | 217 | ORDER GRANTING 212 Motion to Appear Pro Hac Vice as to Amy Orlov. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must |

| | | |
|---|---|---|
| | | register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (dm) (Entered: 09/11/2023) |
| 09/11/2023 | [218](#) | ORDER GRANTING [213](#) Motion to Appear Pro Hac Vice as to Christina Peck. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (dm) (Entered: 09/11/2023) |
| 09/11/2023 | [219](#) | ORDER GRANTING [214](#) Motion to Appear Pro Hac Vice as to JP Catalanotto. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Robert Pitman. (dm) (Entered: 09/11/2023) |
| 09/11/2023 | [220](#) | NOTICE by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway re [211](#) Opposed MOTION for Extension of Time to File Response/Reply *to Mesaros Defendants' Motion for Reconsideration and/or Renewed Request to Certify an Interlocutory Appeal* (Hall, Samuel) (Entered: 09/11/2023) |
| 09/13/2023 | [221](#) | ORDER of USCA (certified copy) DENYING the Petition for Mandamus in re: Dolores Park.(klw) *(Clerk notes page 6 of filing reflects document as rec'd from the USCA - no text.)* (Entered: 09/13/2023) |
| 09/14/2023 | [222](#) | MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal* by Eliazar Cisneros. (Canseco, Francisco) (Entered: 09/14/2023) |
| 09/14/2023 | [223](#) | MOTION for Reconsideration re [222](#) MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal W/PROPOSED ORDER* by Eliazar Cisneros. (Canseco, Francisco) (Entered: 09/14/2023) |
| 09/14/2023 | [224](#) | MOTION for Reconsideration re [204](#) Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, [221](#) Notice of Filing by Dolores Park. (Mersino, Erin) (Entered: 09/14/2023) |
| 09/15/2023 | [225](#) | Response in Opposition to Motion, filed by Joeylynn Mesaros, Robert Mesaros, re [211](#) Opposed MOTION for Extension of Time to File Response/Reply *to Mesaros Defendants' Motion for Reconsideration and/or Renewed Request to Certify an Interlocutory Appeal* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Najvar, Jerad) (Entered: 09/15/2023) |
| 09/16/2023 | [226](#) | MOTION for Confidentiality/Protective Order by Eliazar Cisneros. (Attachments: # [1](#) Proposed Order)(Canseco, Francisco) (Entered: 09/16/2023) |
| 09/19/2023 | [227](#) | Opposed MOTION for Extension of Time to File Response/Reply as to [224](#) MOTION for Reconsideration re [204](#) Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, [221](#) Notice of Filing , [223](#) MOTION for Reconsideration re [222](#) MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal W/PROPOSED ORDER*, [210](#) Opposed MOTION for Reconsideration re [204](#) Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint *and for Consolidated Briefing, and NOTICE Concerning Certification to the Attorney General* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # [1](#) Proposed Order)(Paredes, John) (Entered: 09/19/2023) |
| 09/20/2023 | [228](#) | Response in Opposition to Motion, filed by Dolores Park, re [227](#) Opposed MOTION for Extension of Time to File Response/Reply as to [224](#) MOTION for Reconsideration re [204](#) Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, [221](#) Notice of Filing , [223](#) filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Mersino, Erin) (Entered: 09/20/2023) |
| 09/21/2023 | | Text Order REFERRING [226](#) Motion for Protective Order entered by Judge Robert Pitman. IT IS ORDERED that Defendant Eliazar Cisneros's Motion for Protective Order, (Dkt. 226), is REFERRED to United States Magistrate Judge Mark Lane for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. (This is a text-only entry generated by the court. There is no document associated with this entry.) (tclc) (Entered: 09/21/2023) |
| 09/21/2023 | | MOTION REFERRED: referred [226](#) MOTION for Confidentiality/Protective Order . Referral Judge: Mark Lane. (dm) (Entered: 09/22/2023) |
| 09/22/2023 | [229](#) | Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal* by Joeylynn Mesaros, Robert Mesaros. (Attachments: # [1](#) Exhibit A Factual Appx, # [2](#) Exhibit B Sarah Hill depo, # [3](#) Exhibit C J Mesaros depo excerpts, # [4](#) Exhibit D transcript fees, # [5](#) Exhibit H Tx Civil Rights page, # [6](#) Proposed Order granting stay)(Najvar, Jerad) *Video Exhibits located on Clerk's Office archive. Not available on CM/ECF.* (Entered: 09/22/2023) |
| 09/22/2023 | [230](#) | Opposed MOTION to Stay by Dolores Park. (Attachments: # [1](#) Proposed Order)(Mersino, Erin) (Entered: 09/22/2023) |
| 09/25/2023 | [231](#) | Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re [226](#) MOTION for Confidentiality/Protective Order filed by Defendant Eliazar Cisneros (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2, # [3](#) Exhibit 3, # [4](#) Exhibit 4, # [5](#) Exhibit 5, # [6](#) Exhibit 6, # [7](#) Exhibit 7, # [8](#) Exhibit 8, # [9](#) Exhibit 9, # |

|  |  | [10](#) Exhibit 10, # [11](#) Exhibit 11, # [12](#) Exhibit 12, # [13](#) Exhibit 13, # [14](#) Exhibit 14)(Meyer, Robert) (Entered: 09/25/2023) |
|---|---|---|
| 09/25/2023 | [232](#) | REPLY to Response to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re [227](#) Opposed MOTION for Extension of Time to File Response/Reply as to [224](#) MOTION for Reconsideration re [204](#) Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, [221](#) Notice of Filing , [223](#) filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Hall, Samuel) (Entered: 09/25/2023) |
| 09/26/2023 | [233](#) | Proposed Order *(Corrected)* to [230](#) Opposed MOTION to Stay by Dolores Park. (Mersino, Erin) (Entered: 09/26/2023) |
| 09/26/2023 | [234](#) | ORDER DENYING [226](#) Motion for Protective Order. Signed by Judge Mark Lane. (dm) (Entered: 09/26/2023) |
| 09/26/2023 | [235](#) | Response in Opposition to Motion, filed by Joeylynn Mesaros, Robert Mesaros, re [227](#) Opposed MOTION for Extension of Time to File Response/Reply as to [224](#) MOTION for Reconsideration re [204](#) Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, [221](#) Notice of Filing , [223](#) filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini (Najvar, Jerad) (Entered: 09/26/2023) |
| 09/27/2023 | [236](#) | Joint MOTION to Extend Scheduling Order Deadlines by Dolores Park. (Attachments: # [1](#) Exhibit A, Proposed Scheduling Order)(Mersino, Erin) (Entered: 09/27/2023) |
| 09/27/2023 | [237](#) | IT IS ORDERED that Plaintiffs shall file a response to these motions on orbefore Friday, September 29, 2023. Signed by Judge Robert Pitman. (dm) (Entered: 09/27/2023) |
| 09/27/2023 |  | Text Order GRANTING [227](#) Motion for Extension of Time to File Response entered by Judge Robert Pitman. For good cause shown, IT IS ORDERED that Plaintiffs shall file a consolidated response to Defendants' motions for reconsideration, (Dkts. 210, 222-224), on or before September 28, 2023. For good cause shown, IT IS FURTHER ORDERED that Plaintiffs may file a brief of up to 30 pages. (This is a text-only entry generated by the court. There is no document associated with this entry.) (tclc) (Entered: 09/27/2023) |
| 09/27/2023 |  | Text Order MOOTING [211](#) Motion for Extension of Time to File Response entered by Judge Robert Pitman. In light of Plaintiffs' renewed Motion for Extension of Time, (Dkt. 227), and this Court's text order granting it on September 27, 2023, this motion is MOOT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (tclc) (Entered: 09/27/2023) |
| 09/27/2023 | [238](#) | Unopposed MOTION for Leave to Exceed Page Limitation *to File a Consolidated Brief in Opposition* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # [1](#) Proposed Order)(Hall, Samuel) (Entered: 09/27/2023) |
| 09/27/2023 | [239](#) | ORDER, the Court will decline to certify this case to the Attorney General for the United States intervention at this time. Signed by Judge Robert Pitman. (dm) (Entered: 09/27/2023) |
| 09/27/2023 |  | Text Order GRANTING [238](#) Motion for Leave to File Excess Pages entered by Judge Robert Pitman. IT IS ORDERED that Plaintiffs shall file a consolidated brief not to exceed 15 pages on or before September 29, 2023, to respond to Defendants' motions for stay. (This is a text-only entry generated by the court. There is no document associated with this entry.) (tclc) (Entered: 09/27/2023) |
| 09/28/2023 | [240](#) | RESPONSE to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re [224](#) MOTION for Reconsideration re [204](#) Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, [221](#) Notice of Filing filed by Defendant Dolores Park, [223](#) MOTION for Reconsideration re [222](#) MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal W/PROPOSED ORDER* filed by Defendant Eliazar Cisneros, [210](#) Opposed MOTION for Reconsideration re [204](#) Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros (Hall, Samuel) (Entered: 09/28/2023) |
| 09/29/2023 | [241](#) | Motion for leave to File Sealed Document (Attachments: # [1](#) Brief, # [2](#) Exhibit A, # [3](#) Exhibit 8 - # [4](#) Exhibit 11, # [5](#) Exhibit 14, # [6](#) Exhibit 21, # [7](#) Exhibit 38, # [8](#) Exhibit 114, # [9](#) Proposed Document Sealed Document) (Hall, Samuel) Modified on 10/20/2023 to unseal pleading (dm). (Entered: 09/29/2023) |
| 09/29/2023 | [242](#) | Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re [230](#) Opposed MOTION to Stay filed by Defendant Dolores Park, [229](#) Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal* filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros (Attachments: # [1](#) Exhibit 00A, # [2](#) Exhibit 001, # [3](#) Exhibit 002A, # [4](#) Exhibit 002B, # [5](#) Exhibit 003A, # [6](#) Exhibit 003B, # [7](#) Exhibit 003C, # [8](#) Exhibit 004A, # [9](#) Exhibit 004B, # [10](#) Exhibit 004C, # [11](#) Exhibit 004D, # [12](#) Exhibit 004E, # [13](#) Exhibit 004F, # [14](#) Exhibit 004G, # [15](#) Exhibit 005A, # [16](#) Exhibit 005B, # [17](#) Exhibit 005C, # [18](#) Exhibit 005D, # [19](#) Exhibit 005E, # [20](#) Exhibit 005F, # [21](#) Exhibit 005G, # [22](#) Exhibit 005H, # [23](#) Exhibit 006A, # [24](#) Exhibit 006B, # [25](#) Exhibit 007A, # [26](#) Exhibit 007B, # [27](#) Exhibit 008, # [28](#) Exhibit 009, # [29](#) Exhibit 010, # [30](#) Exhibit 011, # [31](#) Exhibit 012, # [32](#) Exhibit 013, # [33](#) Exhibit 014, # [34](#) Exhibit 015, # [35](#) Exhibit 016, # [36](#) Exhibit 017, # [37](#) Exhibit 018, # [38](#) Exhibit 019, # [39](#) Exhibit 020, # [40](#) Exhibit 021, # [41](#) |

| | | |
|---|---|---|
| | | Exhibit 022, # 42 Exhibit 023, # 43 Exhibit 024, # 44 Exhibit 025, # 45 Exhibit 026, # 46 Exhibit 027, # 47 Exhibit 028, # 48 Exhibit 029, # 49 Exhibit 030, # 50 Exhibit 031, # 51 Exhibit 032, # 52 Exhibit 033, # 53 Exhibit 034, # 54 Exhibit 035, # 55 Exhibit 036, # 56 Exhibit 037, # 57 Exhibit 038, # 58 Exhibit 039, # 59 Exhibit 040, # 60 Exhibit 041, # 61 Exhibit 042, # 62 Exhibit 043, # 63 Exhibit 044)(Hall, Samuel) (Additional attachment(s) added on 10/17/2023: # 64 Unredacted Response to Motion to Stay Discovery) (dm). (Entered: 09/30/2023) |
| 09/30/2023 | 243 | ATTACHMENT *[Redacted Exhibits]* to 242 Response in Opposition to Motion,,,,,, by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Exhibit 046, # 2 Exhibit 047, # 3 Exhibit 048, # 4 Exhibit 049, # 5 Exhibit 050, # 6 Exhibit 051, # 7 Exhibit 052, # 8 Exhibit 053, # 9 Exhibit 054, # 10 Exhibit 055, # 11 Exhibit 056, # 12 Exhibit 057, # 13 Exhibit 058, # 14 Exhibit 059, # 15 Exhibit 060, # 16 Exhibit 061, # 17 Exhibit 062, # 18 Exhibit 063, # 19 Exhibit 064, # 20 Exhibit 065, # 21 Exhibit 066, # 22 Exhibit 067, # 23 Exhibit 068, # 24 Exhibit 069, # 25 Exhibit 070, # 26 Exhibit 071, # 27 Exhibit 072, # 28 Exhibit 073, # 29 Exhibit 074, # 30 Exhibit 075, # 31 Exhibit 076, # 32 Exhibit 077, # 33 Exhibit 078, # 34 Exhibit 079, # 35 Exhibit 080, # 36 Exhibit 081, # 37 Exhibit 082, # 38 Exhibit 083, # 39 Exhibit 084, # 40 Exhibit 085, # 41 Exhibit 086, # 42 Exhibit 087, # 43 Exhibit 088, # 44 Exhibit 089, # 45 Exhibit 090, # 46 Exhibit 091, # 47 Exhibit 092, # 48 Exhibit 093, # 49 Exhibit 094, # 50 Exhibit 095, # 51 Exhibit 096, # 52 Exhibit 097, # 53 Exhibit 098, # 54 Exhibit 099, # 55 Exhibit 100, # 56 Exhibit 101, # 57 Exhibit 102, # 58 Exhibit 103, # 59 Exhibit 104, # 60 Exhibit 105, # 61 Exhibit 106, # 62 Exhibit 107, # 63 Exhibit 108, # 64 Exhibit 109, # 65 Exhibit 110, # 66 Exhibit 111, # 67 Exhibit 112, # 68 Exhibit 113, # 69 Exhibit 114, # 70 Exhibit 115, # 71 Exhibit 116, # 72 Exhibit 117, # 73 Exhibit 118, # 74 Exhibit 119, # 75 Exhibit 120, # 76 Exhibit 121)(Hall, Samuel) (Entered: 09/30/2023) |
| 10/02/2023 | | Notice of Correction: re 243 Attachment; Please take note for future filings that it is improper filing procedure to file an exhibit or attachment as a separate docket entry when it is part of another pleading. Instead, these such documents are to be filed as attachments to the original pleading. Also, in the future, free standing documents must be in full pleading format, including case style, signature block, and certificate of service when required; and the *ATTACHMENT* event should not be used unless you are instructed to do so by the court. (pg) (Entered: 10/02/2023) |
| 10/02/2023 | 244 | *STICKEN PER TEXT ORDER dated 10/11/2023. Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 230 Opposed MOTION to Stay filed by Defendant Dolores Park, 229 Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal* filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros *(CORRECTED)* (Attachments: # 1 Exhibit A)(Hall, Samuel) Modified on 10/12/2023 (dm). (Entered: 10/02/2023) |
| 10/02/2023 | 245 | Response in Opposition to Motion, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 229 Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal* filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros *(CORRECTED)*, 230 Opposed MOTION to Stay filed by Defendant Dolores Park *(CORRECTED)* (Attachments: # 1 Exhibit 00A, # 2 Declaration of Jamielah Yancey, # 3 Exhibit 001, # 4 Exhibit 002A, # 5 Exhibit 002B, # 6 Exhibit 003A, # 7 Exhibit 003B, # 8 Exhibit 003C, # 9 Exhibit 004A, # 10 Exhibit 004B, # 11 Exhibit 004C, # 12 Exhibit 004D, # 13 Exhibit 004E, # 14 Exhibit 004F, # 15 Exhibit 004G, # 16 Exhibit 005A, # 17 Exhibit 005B, # 18 Exhibit 005C, # 19 Exhibit 005D, # 20 Exhibit 005E, # 21 Exhibit 005F, # 22 Exhibit 005G, # 23 Exhibit 005H, # 24 Exhibit 006A, # 25 Exhibit 006B, # 26 Exhibit 007A, # 27 Exhibit 007B, # 28 Exhibit 008, # 29 Exhibit 009, # 30 Exhibit 010, # 31 Exhibit 011, # 32 Exhibit 012, # 33 Exhibit 013, # 34 Exhibit 014, # 35 Exhibit 015, # 36 Exhibit 016, # 37 Exhibit 017, # 38 Exhibit 018, # 39 Exhibit 019, # 40 Exhibit 020, # 41 Exhibit 021, # 42 Exhibit 022, # 43 Exhibit 023, # 44 Exhibit 024, # 45 Exhibit 025, # 46 Exhibit 026, # 47 Exhibit 027, # 48 Exhibit 028, # 49 Exhibit 029, # 50 Exhibit 030, # 51 Exhibit 031, # 52 Exhibit 032, # 53 Exhibit 033, # 54 Exhibit 034, # 55 Exhibit 035, # 56 Exhibit 036, # 57 Exhibit 037, # 58 Exhibit 038, # 59 Exhibit 039, # 60 Exhibit 040, # 61 Exhibit 041, # 62 Exhibit 042, # 63 Exhibit 043, # 64 Exhibit 044, # 65 Exhibit 045, # 66 Exhibit 046, # 67 Exhibit 047, # 68 Exhibit 048, # 69 Exhibit 049, # 70 Exhibit 050, # 71 Exhibit 051, # 72 Exhibit 052, # 73 Exhibit 053, # 74 Exhibit 054, # 75 Exhibit 055, # 76 Exhibit 056, # 77 Exhibit 057, # 78 Exhibit 058, # 79 Exhibit 059, # 80 Exhibit 060, # 81 Exhibit 061, # 82 Exhibit 062, # 83 Exhibit 063, # 84 Exhibit 064, # 85 Exhibit 065, # 86 Exhibit 066, # 87 Exhibit 067, # 88 Exhibit 068, # 89 Exhibit 069, # 90 Exhibit 070, # 91 Exhibit 071, # 92 Exhibit 072, # 93 Exhibit 073, # 94 Exhibit 074, # 95 Exhibit 075, # 96 Exhibit 076, # 97 Exhibit 077, # 98 Exhibit 078, # 99 Exhibit 079, # 100 Exhibit 080, # 101 Exhibit 081, # 102 Exhibit 082, # 103 Exhibit 083, # 104 Exhibit 084, # 105 Exhibit 085, # 106 Exhibit 086, # 107 Exhibit 087, # 108 Exhibit 088, # 109 Exhibit 089, # 110 Exhibit 090, # 111 Exhibit 091, # 112 Exhibit 092, # 113 Exhibit 093, # 114 Exhibit 094, # 115 Exhibit 095, # 116 Exhibit 096, # 117 Exhibit 097, # 118 Exhibit 098, # 119 Exhibit 099, # 120 Exhibit 100, # 121 Exhibit 101, # 122 Exhibit 102, # 123 Exhibit 103, # 124 Exhibit 104, # 125 Exhibit 105, # 126 Exhibit 106, # 127 Exhibit 107, # 128 Exhibit 108, # 129 Exhibit 109, # 130 Exhibit 110, # 131 Exhibit 111, # 132 Exhibit 112, # 133 Exhibit 113, # 134 Exhibit 114, # 135 Exhibit 115, # 136 Exhibit 116, # 137 Exhibit 117, # 138 Exhibit 118, # 139 Exhibit 119, # 140 Exhibit 120, # 141 Exhibit 121)(Hall, Samuel) (Entered: 10/02/2023) |
| 10/03/2023 | 246 | MOTION to Strike 244 Response in Opposition to Motion, *(Plaintiffs' Partially Unopposed Motion to Strike Erroneous Filing)* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Hall, Samuel) (Entered: 10/03/2023) |

| | | |
|---|---|---|
| 10/03/2023 | 247 | NOTICE *of Supplemental Authority* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway re 230 Opposed MOTION to Stay , 229 Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal,* 222 MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal*, 224 MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, 221 Notice of Filing , 223 MOTION for Reconsideration re 222 MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal W/PROPOSED ORDER*, 210 Opposed MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint (Attachments: # 1 Exhibit 1)(Paredes, John) (Entered: 10/03/2023) |
| 10/05/2023 | 248 | Unopposed MOTION for Leave to Exceed Page Limitation *on reply in support of motion for stay* by Joeylynn Mesaros, Robert Mesaros. (Attachments: # 1 Proposed Order granting leave, # 2 Exhibit Proposed reply, # 3 Exhibit Exh I to reply)(Najvar, Jerad) (Entered: 10/05/2023) |
| 10/05/2023 | 249 | REPLY to Response to Motion, filed by Dolores Park, re 224 MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, 221 Notice of Filing filed by Defendant Dolores Park (Mersino, Erin) (Entered: 10/05/2023) |
| 10/05/2023 | 250 | REPLY to Response to Motion, filed by Joeylynn Mesaros, Robert Mesaros, re 210 Opposed MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros (Najvar, Jerad) (Entered: 10/05/2023) |
| 10/06/2023 | | Text Order GRANTING 248 Motion for Leave to File Excess Pages entered by Judge Robert Pitman. IT IS ORDERED that the Mesaros Defendants file a reply brief that shall not exceed nine pages. (This is a text-only entry generated by the court. There is no document associated with this entry.) (tclc) (Entered: 10/06/2023) |
| 10/06/2023 | 251 | REPLY to Response to Motion, filed by Robert Mesaros, re 229 Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal* filed by Defendant Robert Mesaros, Defendant Joeylynn Mesaros (dm) (Entered: 10/06/2023) |
| 10/06/2023 | 252 | REPLY to Response to Motion, filed by Dolores Park, re 230 Opposed MOTION to Stay filed by Defendant Dolores Park (Mersino, Erin) (Entered: 10/06/2023) |
| 10/10/2023 | 253 | NOTICE *Response to Plaintiffs' Notice of Supplemental Authority* by Dolores Park re 247 Notice (Other),,, (Mersino, Erin) (Entered: 10/10/2023) |
| 10/11/2023 | | Text Order GRANTING 241 Motion for Leave to File Sealed Document entered by Judge Robert Pitman. IT IS ORDERED that the Clerk of Court shall file Plaintiffs' unredacted Opposition to Defendants' Motions to Stay and Exhibits A, 8, 11, 14, 21, 38, and 114 (Dkts. 241-1 through 241-8), under seal. (This is a text-only entry generated by the court. There is no document associated with this entry.) (tclc) (Entered: 10/11/2023) |
| 10/11/2023 | | Text Order GRANTING 246 MOTION to Strike 244 entered by Judge Robert Pitman. IT IS ORDERED that the Clerk of the Court strike docket entry 244 from the docket. (This is a text-only entry generated by the court. There is no document associated with this entry.) (tclc) (Entered: 10/11/2023) |
| 10/11/2023 | 254 | ORDER GRANTING 236 Motion to Extend Scheduling Order Deadlines Jury Trial set for 6/10/2024 at 9:30 AM before Judge Robert Pitman, Discovery due by 12/12/2023, Dispositive Motions due by 1/29/2024. Signed by Judge Robert Pitman. (dm) (Entered: 10/11/2023) |
| 10/12/2023 | 255 | MOTION to Unseal Document 241 Motion for leave to File Sealed Document filed by David Gins, Wendy Davis, Timothy Holloway, Eric Cervini *(Plaintiffs' Partially Unopposed Motion to Unseal Dkt. No. 241)* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway. (Attachments: # 1 Proposed Order)(Hall, Samuel) (Entered: 10/12/2023) |
| 10/16/2023 | 256 | NOTICE *regarding schedule for certification or stay* by Joeylynn Mesaros, Robert Mesaros (Najvar, Jerad) (Entered: 10/16/2023) |
| 10/17/2023 | 257 | NOTICE *re: Mesaros Defendants' Notice Regarding Schedule for Stay* by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway re 256 Notice (Other) (Paredes, John) (Entered: 10/17/2023) |
| 10/18/2023 | 258 | ORDER DENYING 210 Motion for Reconsideration re 210 Opposed MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint filed by Robert Mesaros, Joeylynn Mesaros, 222 MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal* filed by Eliazar Cisneros, 223 MOTION for Reconsideration re 222 MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal W/PROPOSED ORDER* filed by Eliazar Cisneros, 224 MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, 221 Notice of Filing filed by Dolores Park, 229 Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal* filed by Robert Mesaros, Joeylynn Mesaros, 230 Opposed MOTION to Stay filed by Dolores Park ; DENYING 222 Motion for Reconsideration re 210 Opposed MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint filed by Robert Mesaros, Joeylynn Mesaros, 222 MOTION for Reconsideration *and Request for To* |

| | | |
|---|---|---|
| | | *Certify Interlocutory Appeal* filed by Eliazar Cisneros, 223 MOTION for Reconsideration re 222 MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal W/PROPOSED ORDER* filed by Eliazar Cisneros, 224 MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, 221 Notice of Filing filed by Dolores Park, 229 Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal* filed by Robert Mesaros, Joeylynn Mesaros, 230 Opposed MOTION to Stay filed by Dolores Park ; DENYING 223 Motion for Reconsideration re 210 Opposed MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint filed by Robert Mesaros, Joeylynn Mesaros, 222 MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal* filed by Eliazar Cisneros, 223 MOTION for Reconsideration re 222 MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal W/PROPOSED ORDER* filed by Eliazar Cisneros, 224 MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, 221 Notice of Filing filed by Dolores Park, 229 Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal* filed by Robert Mesaros, Joeylynn Mesaros, 230 Opposed MOTION to Stay filed by Dolores Park ; DENYING 224 Motion for Reconsideration re 210 Opposed MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint filed by Robert Mesaros, Joeylynn Mesaros, 222 MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal* filed by Eliazar Cisneros, 223 MOTION for Reconsideration re 222 MOTION for Reconsideration *and Request for To Certify Interlocutory Appeal W/PROPOSED ORDER* filed by Eliazar Cisneros, 224 MOTION for Reconsideration re 204 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Amend Complaint, 221 Notice of Filing filed by Dolores Park, 229 Opposed MOTION to Stay Case *pending resolution of reconsideration and interlocutory appeal* filed by Robert Mesaros, Joeylynn Mesaros, 230 Opposed MOTION to Stay filed by Dolores Park ; MOOTING 229 Motion to Stay Case; MOOTING 230 Motion to Stay Signed by Judge Robert Pitman. (dm) (Entered: 10/18/2023) |
| 10/19/2023 | 259 | NOTICE *of filing of Motion to Renew Petition for Writ of Mandamus* by Dolores Park re 205 Notice (Other) (Attachments: # 1 Motion to Renew Petition for Writ of Mandamus)(Mersino, Erin) (Entered: 10/19/2023) |
| 10/20/2023 | 260 | RESPONSE in Support, filed by Eric Cervini, Wendy Davis, David Gins, Timothy Holloway, re 255 MOTION to Unseal Document 241 Motion for leave to File Sealed Document filed by David Gins, Wendy Davis, Timothy Holloway, Eric Cervini *(Plaintiffs' Partially Unopposed Motion to Unseal Dkt. No. 241)* filed by Plaintiff David Gins, Plaintiff Wendy Davis, Plaintiff Timothy Holloway, Plaintiff Eric Cervini *and Request for EMERGENCY CONSIDERATION of Plaintiffs' Partially Unopposed Motion* (Paredes, John) (Entered: 10/20/2023) |
| 10/20/2023 | | Text Order GRANTING 255 Motion to Unseal Document entered by Judge Robert Pitman. For lack of opposition, IT IS ORDERED that the Clerk of the Court shall unseal the documents associated with docket entry 241: Plaintiffs' unredacted Opposition Brief and Exhibits A, 8, 11, 14, 21, 38, and 114 (Dkts. 241-1 through 241-8). (This is a text-only entry generated by the court. There is no document associated with this entry.) (tclc) (Entered: 10/20/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/29/2023 13:31:24 | | |
| **PACER Login:** | wf0018 | **Client Code:** | 099980-10885-18657 |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-00565-RP |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ERIC CERVINI, WENDY DAVIS, DAVID
GINS, and TIMOTHY HOLLOWAY                    Civil Case No. 1: 21-cv-565

        Plaintiffs,                           Honorable Robert Pittman

v.

ELIAZER CISNEROS, HANNAH CEH,
JOEYLYNN MESAROS, ROBERT,
MESAROS, JOHN DOES, JANE DOES, and
DOLORES PARK,

        Defendants.

## DOLORES PARK'S OPPOSED EMERGENCY MOTION REQUESTING THIS COURT TO AUTHORIZE AN INTERLOCUTORY APPEAL

For the reasons set forth in the accompanying Brief in Support of this motion,

Defendant Dolores Park respectfully requests that this Court certify its March 23,

2022, Opinion and Order [ECF No. 64] for interlocutory appeal, or otherwise amend

that Opinion and Order to authorize Defendant Dolores Park to file an application

for immediate interlocutory appeal of this Court's Opinion and Order.  Specifically,

Defendant Dolores Park requests leave authorizing her to seek interlocutory appeal

on the question of the applicability of Ku Klux Klan Act of 1871, 42 U.S.C. §

1985(3), and whether it applies to private causes of action where no racial animus or

state action is alleged.

Due to the seriousness of the issues in question and the potential harmful effect they could have, and given the statutory time for Defendants to file an application for interlocutory appeal with the Fifth Circuit Court of Appeals, Defendant Dolores Park respectfully requests that this Court hear this motion on an emergency basis and issue an expedited ruling granting this motion as soon as practicable, amending its prior Opinion and Order to reflect the certification for interlocutory appeal.

There was a conference between the attorneys for both parties via telephone and email and Defendant Dolores Park explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought. Plaintiffs oppose the motion.

Respectfully submitted,

/s/ Richard Thompson
**THOMAS MORE LAW CENTER**
Richard Thompson
(Admitted in Michigan, P21410)
24 Frank Lloyd Wright Dr.
Suite 393
Ann Arbor, MI 48106
rthompson@thomasmore.org
(734) 827-2001

Attorney for Defendant Dolores Park

Dated: March 29, 2022

**SUPP.APP.036**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ERIC CERVINI, WENDY DAVIS, DAVID
GINS, and TIMOTHY HOLLOWAY

Plaintiffs,

v.

ELIAZER CISNEROS, HANNAH CEH,
JOEYLYNN MESAROS, ROBERT,
MESAROS, JOHN DOES, JANE DOES, and
DOLORES PARK,

Defendants.

Civil Case No. 1: 21-cv-565

Honorable Robert Pittman

**DOLORES PARK'S BRIEF IN SUPPORT OF ITS
EMERGENCY MOTION REQUESTING
THIS COURT TO AUTHORIZE AN INTERLOCUTORY APPEAL**

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Defendant Dolores Park respectfully requests this Court to grant it leave to file an application for interlocutory appeal with the Fifth Circuit Court of Appeals, seeking review of this Court's opinion that the Ku Klux Klan Act provides a cause of action when a defendant did not interfere with the right to vote in a federal election, when the defendant harbors no racial animus, and when the claim fails to involve state action.

Defendant Dolores Park believes that this issue presents a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. For these reasons, Defendant Dolores Park seeks leave to file an application for interlocutory appeal to the Fifth Circuit Court of Appeals.

SUPP.APP.038

## I.     Introduction and Background

On March 23, 2022, this Court entered an Opinion and Order denying four Motions to Dismiss filed by Defendants Eliazer Cisneros, Hannah Ceh, Joeylynn and Robert Mesaros, and Dolores Park [ECF Nos. 22, 24, 25, 33, 40, 41].    The primary of cause of action addressed was the Ku Klux Klan Act.

The Court states in its Opinion and Order "the parties' disagreements at this stage arise from the question of whether § 1985(3) requires the Plaintiffs to plead that the conspiracy against them stemmed from race-based animus."  ECF 64 at 8. This Court recognizes that this is an unresolved question of law: "Notably, the Court has not reached the issue of whether the second portion of § 1985(3), which, like the first portion of § 1985(2) also lacks the "equal protection" language, likewise lacks the requirement to plead race-based animus." ECF 64 at 9.  The Court characterizes U.S. Supreme Court precedent as leaving this resolution of this question of law "open."  ECF 64 at 10.

The Court relies on persuasive, out of jurisdiction authority for the conclusion that election-based claims under the Ku Klux Klan Act have a relaxed pleading standard.  *Gill v. Farm Bureau Life Ins. Co. of Missouri*, 906 F.2d 1265, 1269 n.21 (8th Cir. 1990).  The holding in *Gill*, however, highlighted the narrow circumstances under which a plaintiff may use the Ku Klux Klan Act as a mechanism to vindicate the interference with one's right to vote.  *Id*. at 1270-71 (discussing that the right is

1

limited "to the right to vote."). The Eighth Circuit then determined the claims at issue in *Gill* were not voting claims but conduct implicating the First Amendment, and quickly rejected for want of establishing state action. *Id.*

Under existing precedent, one might have expected the same result here. However, this Court denied Defendants' Motions to Dismiss without requiring Plaintiffs establish a violation of their right to vote in a federal election. Instead, the Court held that it was enough to plead in a complaint that the activity involved "election advocacy." ECF 64 at 11.

This case presents an important, unresolved question of federal law. As this Court noted, "neither the Supreme Court nor the Fifth Circuit have addressed this question head on." ECF 64 at 10.

While Defendants respect this Court's ruling and analysis, this ruling does nothing short of change the law, broadening the scope of the Ku Klux Klan Act. The Court acknowledged that the U.S. Supreme Court has, on more than one occasion, reigned in the scope of the Act. *See, e.g.*, ECF 64 at 10 (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)). This Court's Opinion and Order of March 23, 2022, seems to believe that the Court would rule in a different direction moving forward. This creates conflict with other courts' rulings.

Because the scope of the Ku Klux Klan Act presents a question of law both the controlling and dispositive for the case, and because there is substantial ground

SUPP.APP.040

for difference of opinion and an immediate appeal from the Order may materially

advance the ultimate termination of this litigation, Defendants respectfully request

that this Court amend its March 23, 2022 Opinion and Order to reflect that this case

involves a controlling question of law as to which there is substantial ground for

difference of opinion and that an immediate appeal from the order may materially

advance the ultimate termination of the litigation, or otherwise authorize such an

interlocutory appeal.[1]

## II.   An Interlocutory Appeal as to the Proper Scope of the Ku Klux Klan Act is Appropriate

As noted above, 28 U.S.C. § 1292 permits for interlocutory appeals:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292.  When the district court is of the opinion that these factors have

been met, the district court shall permit a party to appeal a non-final order.  *Rico v.*

*Flores*, 481 F.3d 234, 238 (5th Cir. 2007); *In re Trump*, 874 F.3d 948, 950-51 (6th

---

[1] Pursuant to 28 U.S. Code § 1292, a district court "shall so state in writing in such order" for the order to be subject to interlocutory appeal.  Such an appeal shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

SUPP.APP.041

Cir. 2017). If so, the district court must expressly find in writing that all three §
1292 requirements are met. *Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th
Cir. 1981). Here, each of these elements is present and the issues in question appear
particularly ripe for interlocutory appeal.

### A. The Question of Law is "Controlling"

All that must be shown in order for a question to be "controlling" is "whether
the issue has 'potential to have some impact on the course of ligation.'" *La. State
Conference of the NAACP v. Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020)
(citing *United States v. La. Generating LLC*, No. 09-100, 2012 U.S. Dist. LEXIS
142349, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012); *Tesco Corp. v.
Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 766 (S.D. Tex. 2010)). "It is sufficient
to satisfy the controlling question of law standard if resolution on appeal
determines the 'future course of the litigation.'" *La. State Conference of the
NAACP*, 495 F. Supp. 3d at 413 (quoting *Tesco Corp.*, 722 F. Supp. 2d at 766); *see
also* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
3930 (3d ed. 2020).

The Court's interpretation and application of the Ku Klux Klan Act is
"controlling" to this matter. Plaintiffs have made clear from the beginning that their
basis for federal jurisdiction revolves around this claim brought under the Act. It is
their only federal cause of action. Underlying the controlling nature of this claim,

SUPP.APP.042

this Court spent the better part of twelve pages in the Opinion and Order in question analyzing the Ku Klux Klan Act, prior to devoting only about one page to the remainder of the claims and its conclusion.  The Ku Klux Klan Act claim represents 100% of the federal claims before the Court.  The cause of action comprises one-third of Plaintiffs' causes of action, and counts two and three are predicated on the same underlying alleged "conspiracy."

The resolution of the scope of the Ku Klux Klan Act is clearly a controlling issue and one that could materially affect the outcome of the litigation in this Court. This issue could also have a broader applicability, as the present interpretation of the Ku Klux Klan Act creates a private tort for interference with "election advocacy." This will lead to additional lawsuits from members of various political parties who will now bring lawsuits against private actors for infringement with their advocacy efforts if such efforts relate to a political candidate or an election.   This will have a chilling effect on otherwise lawful political discourse.  As noted below in more detail, it also leads to different standards in the federal circuits and a novel interpretation of existing U.S. Supreme Court precedent.  This matter is an important one and indeed a controlling one—both in this matter and others.

## B. A Substantial Ground for Difference of Opinion Exists as to the Statutes in Question

There also exists clear and substantial grounds for differences of opinion as to the statutes in question.  A "substantial ground for difference of opinion" exists

5

when: (1) the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question. *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002); *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (en banc). An issue is novel "where reasonable jurists might disagree on an issue's resolution." *In re Trump*, 874 F.3d at 952.

This Court recognized in its March 23 Opinion and Order that "[i]ndeed, neither the Supreme Court nor the Fifth Circuit have addressed this question head on." ECF No. 64 at 10.

There have been multiple long-standing U.S. Supreme Court and Court of Appeals opinions that would reasonably lead a jurist to a conclusion contrary to the Court's ruling. No Court has ever interpreted the Ku Klux Klan Act, as the Court did in its Opinion and Order here, as providing a private cause of action for interference with "election advocacy."

The Court's holding expands the traditional application of § 1985(3) of the Ku Klux Klan Act, that encompasses stifling specific and formal acts of voting, to non-voting First Amendment "election advocacy" activities. There are several cases that limit that Act's application to *voting*. *See Paynes v. Lee*, 377 F.2d 61 (5th Cir.

6

1967) (interference with the specific act of registering to vote); *United States v. Williams*, 341 U.S. 70 (1951) (protecting the right to actually vote in federal elections); *Ex Parte Yarbrough,* 110 U.S. 651 (1884) (protecting the right to cast one's vote); *United States v. Classic*, 313 U.S. 299 (1941) (protecting the right to cast one's vote in a primary election); *United States v. Wood*, 295 F.2d 772, 774 (5th Cir. 1961) (protecting the right to register to vote).

These cases have been considered the settled law of the U.S. Supreme Court and Fifth Circuit for years, cited by treatises and secondary sources, and generally understood to be the controlling law. These cases conflict with this Court's recent opinion, underlying that there is a difference of opinion as to this issue. But this Court also noted the lack of precedent from the U.S. Supreme Court and Fifth Circuit on point. Thus, this Court believes there is little controlling precedent, and the precedent that does exist is in conflict with this Court's latest ruling.

Indeed, even in *Gill,* that this Court relies on as persuasive authority, the Eighth Circuit states, "the independent constitutional right relating to federal elections . . . is limited, under existing case law, to the right to vote -- to cast a ballot and have it honestly counted." *Gill*, 906 F.2d at 1270-71 (citing *U.S. v. Classic*, 313 U.S. 299, 315 (1941); *U.S. v. Mosley*, 238 U.S. 383, 386, (1915)). The plaintiff in *Gill* "[s]ignificantly" "does not allege that he was actually deterred from voting." 906 F.2d at 1270. The Court then finds that fundraising activities and supporting a

SUPP.APP.045

candidacy is a right protected, not under the Ku Klux Klan Act, but by the First Amendment. *Id*. at 1270-71.

To be sure in the instant case, Plaintiffs' Complaint fails to state any allegations that involve interference with voting. The complaint, in contrast, repeatedly alleges infringement with Plaintiffs' free speech activities. *See* Compl. at ¶¶ 1, 3, 10, 11, 12, 135, 141, 144, 147. The Court's Opinion and Order, in practical effect, establishes a separate constitutional claim for interference with the First Amendment activity of "election advocacy"—one that does not require that plaintiff allege the involvement of state action or racial animus. This holding conflicts with relevant precedent.

Courts have traditionally held that a constitutional claim alleging an interference with First Amendment rights, such as advocacy for a political cause, require that a plaintiff allege the involvement of state action. For example, in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993), the U.S. Supreme Court rejected a "claim that an alleged private conspiracy to infringe First Amendment rights violated § 1985(3)." *See also United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825 (1983); *Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004).

Courts have also held that § 1985(3)'s requires a plaintiff to plead factual allegations that establish an equal protection violation, when asserting voter

SUPP.APP.046

intimidation claim under the Act. For example in 2020, the Fifth Circuit applied the four-part test from *Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994) to a voter intimidation claim. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020). When analyzing the claim, the Fifth Circuit held that one reason why the state officials had not violated § 1985(3) was because they "did not deprive anyone of the equal protection of the laws." *Tex. Democratic Party*, 961 F.3d at 410.

This Court's Opinion and Order, in not following the aforementioned cases, has caused the instant case to be an outlier unsupported by longstanding precedent interpreting the Ku Klux Klan Act.

As this Court noted at the outset of its Opinion and Order, this is an unresolved question of federal law. ECF 64 at 10 ("neither the Supreme Court nor the Fifth Circuit have addressed this question head on"). This Court also stated that "Notably, the Court has not reached the issue of whether the second portion of § 1985(3), which, like the first portion of § 1985(2) also lacks the "equal protection" language, likewise lacks the requirement to plead race-based animus." ECF 64 at 9. These statements indicate there is no clear direction for courts to follow to answer the questions raised by Plaintiffs' Complaint.

There are substantial grounds for differences of opinion regarding the statute in question. Thus, this matter, respectfully, is particularly suited for interlocutory appeal.

9

## C. An Appeal Will Materially Advance the Ultimate Termination of this Litigation

The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law. "When litigation will be conducted in substantially the same manner regardless of the court's decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002); *see also Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) ("A controlling question of law—although not consistently defined—at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation—thereby saving time and expense for the court and the litigants."). When litigation would be conducted in a substantially *different* manner depending on the appeal, therefore, an interlocutory appeal is appropriate.

This Court pointed out in its opinion that the supplemental state law claims in question mirror criminal claims. ECF 64 at 13. This ruling—in breaking from federal precedent—not only changes this civil litigation but also infuses a criminal element to it. These claims would be without jurisdiction upon the Court dismissing the § 1985(3) claim against Defendant Park. Dismissal of the lone pending federal claim could drastically change the manner in which this matter is defended.

Defendant Dolores Park's strategy for defense could be drastically altered based on this ruling (or based on the Fifth Circuit's ruling if permitted to appeal). Defense counsel can attest that already their thoughts on defense strategy (*i.e.*, the manner in which this matter might be litigated) are evolving based on this Court's latest ruling.

The entire manner of the litigation could be altered. It could also lead to the need to limit or to cease further discovery, or conversely to pursue additional discovery, engage in more discovery disputes, and experience protracted litigation of issues that otherwise would not be present. "An interlocutory appeal materially advances the litigation when it 'saves judicial resources and litigant expense.'" *Newsome v. Young Supply Co.*, 873 F.Supp.2d 872, 878 (E.D. Mich. 2012).

This litigation going forward will be conducted in a substantially different manner depending on the appeal. And clarification upon appeal could lead to a vast savings in judicial resources and litigant expense. Therefore, it would appear that an interlocutory appeal would be appropriate.

### III.   An Interlocutory Appeal Will Cause No Prejudice or Delay

While it is not an element or factor that need be met or analyzed, it is worth noting that if this Court gives Defendant Dolores Park the grounds to seek interlocutory appeal, none of the parties will be prejudiced and there will be no delay in the instant matter. Pursuant to 28 U.S.C. §1292, an "application for an appeal

SUPP.APP.049

hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." The matter before this Court, therefore, shall proceed apace, unless this Court or the Fifth Circuit wish to grant a stay. And the Fifth Circuit's internal rules permit for expedited interlocutory appeals upon a showing of good cause. *See* 5 Cir. I.O.P. 34.5; 5 Cir. I.O.P. 47.7. Thus, neither party will be prejudiced by an interlocutory appeal and there will be no delay to this matter proceeding in this Court.

## IV. Defendants Respectfully Request an Emergency Ruling

Pursuant to 28 U.S.C. § 1292, the Fifth Circuit can permit an appeal taken from the Opinion and Order in question so long as "application is made to it within ten days after the entry of the order." Thus, Defendants respectfully request that this Court dispense with a full briefing schedule and any oral argument and issue an emergency opinion granting this motion. This is also warranted given the impact of the decision and its potential far reaching effect.[2] Under the present Opinion and Order, any heckler at a candidate's political rally could find themselves a defendant for interference with "election advocacy" under the Ku Klux Klan Act. The

---

[2] Defendants understand that pursuant to Fed. R. App. P. 5, the Court may amend its Order at any time in order to certify the issue for interlocutory appeal, and that in that event the time to petition runs from entry of the amended order. Nonetheless, given the seriousness of the issues in question, Defendant Dolores Park respectfully believes that an expedited appeal is warranted.

SUPP.APP.050

important question of law should be answered and clarified now, as this Court's ruling is likely to cause an influx of political litigation.

## V.     Conclusion

Defendant Dolores Park respects this Court and its latest ruling. Nonetheless, as this Court seemingly acknowledges in its Opinion and Order, this is an important issue that is unresolved under federal law. Thus, this question is likewise ripe for interlocutory appeal and review by the Fifth Circuit. Because of the importance of these issues, Defendant Dolores Park respectfully requests permission from this Court authorizing her to seek interlocutory appeal on the question of the applicability of the Ku Klux Klan Act to the instant case.

Respectfully submitted,

/s/ Richard Thompson
**THOMAS MORE LAW CENTER**
Richard Thompson
(Admitted in Michigan, P21410)
24 Frank Lloyd Wright Dr.
Suite 393
Ann Arbor, MI 48106
rthompson@thomasmore.org
(734) 827-2001

Attorney for Defendant Dolores Park

Dated: March 29, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

Respectfully submitted,

/s/ Richard Thompson
**THOMAS MORE LAW CENTER**
Richard Thompson
(Admitted in Michigan, P21410)
24 Frank Lloyd Wright Dr.
Suite 393
Ann Arbor, MI 48106
rthompson@thomasmore.org
(734) 827-2001

Attorney for Defendant Dolores Park

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC CERVINI, et al. | § | |
| | § | |
| Plaintiffs, | § | Civil Action |
| v. | § | |
| | § | No. 1:21-CV-565-RP |
| ELIAZAR CISNEROS, et al., | § | |
| | § | |
| Defendants. | § | |

**MESAROS DEFENDANTS' MOTION TO RECONSIDER OR, IN THE ALTERNATIVE, TO AMEND MARCH 23, 2022 ORDER TO AUTHORIZE INTERLOCUTORY APPEAL**

Defendants, Joeylynn and Robert Mesaros (collectively the "Mesaros Defendants"), respectfully request that the Court reconsider its March 23, 2022 Opinion and Order (ECF 64) ("Order") and grant the Mesaroses' motion to dismiss. In the alternative, the Mesaros Defendants respectfully request that the Court amend the Order so as to allow an interlocutory appeal. The Mesaros Defendants desire to pursue resolution of this contested legal issue in the Court of Appeals because an immediate appeal may materially advance the ultimate termination of this litigation.

**I.    Request to Reconsider and Dismiss Plaintiffs' Claims**

The Mesaroses first request that the Court reconsider its Order, and grant their motion to dismiss. As described in the Mesaroses' filings and further below, Plaintiffs' entire federal complaint relies on the notion that they can maintain a claim for alleged interference with "support or advocacy" (but not with actual voting) in relation to federal elections under § 1985(3) without any allegation of

1

racial animus. This is a novel claim without any support in the Fifth Circuit. *Mesaros's Mtn. to Dismiss* (ECF 24) 6-9. The Fifth Circuit has never recognized any subset of claims arising under §1985(3) that arise in the absence of racial animus; to the contrary, it has repeatedly pronounced that racial animus is a necessary element for any § 1985(3) claim. *Id.*; *Reply in Support of Mtn. to Dismiss* (ECF 41) 2-7.

The Court's Order nonetheless indulges the Plaintiffs' argument that their claim arises under a particular clause of § 1985(3)—regarding alleged interference with voting in federal elections—which, Plaintiffs claim, does not require any element of racial motivation. The Court places prominent reliance on a single, out of circuit decision that does endorse Plaintiffs' position. Order at 11 (citing *Gill v. Farm Burea Life Ins. Co. of Missouri*, 906 F.2d 1265 (8th Cir. 1990)). However, the Plaintiffs themselves did not even cite *Gill* to the Court, and it is clear why they did not. Even if one accepted *Gill's* analysis on this point, *Gill* itself still reflects why Plaintiffs' claims must fail.

Plaintiffs' claims here, as in *Gill*, do not allege interference with any Plaintiff's ability to actually cast a ballot or have it counted. Instead, the complaint alleges only interference with Plaintiffs' speech and associational activities. *See* Compl. at ¶¶ 1, 3, 10, 11, 12, 135, 141, 144, 147. The Court has effectively acknowledged that this is the basis of the Complaint. Order at 11 (referring to the "election advocacy portion of 1985(3)"). Absent allegations of interference with actual voting, Plaintiffs' claims do not even implicate the clause of § 1985(3) that

SUPP.APP.054

they nominally rely upon, but instead arise under the first clause of § 1985(3), which not even they can deny requires racial animus. But as the Mesaroses pointed out, even if (alleged) interference with election-related "support or advocacy" can support a complaint, it implicates the First Amendment and thus requires state action. ECF 41 at 6-7. As *Gill* observed, the Supreme Court held in *Carpenters v. Scott*, 463 U.S. 825, 836-39 (1983), "that a First Amendment claim could not be actionable in the absence of State Action." *Gill*, 906 F.2d at 1270; *see also* ECF 41 (citing *Federer v. Gephardt*, 363 F.3d 754, 760 (8th Cir. 2004)). This explains why the Plaintiffs here—who waste no ink advocating their novel view of the statute—conspicuously avoided citation to *Gill* or *Carpenters*. In short, even if this Court accepts Plaintiffs' view regarding the lack of racial animus as an element, the nature of their claim still requires an additional element—as held in *Carpenters* and *Gill*—which is entirely lacking here.

The Court's Order suggested that Defendants Ceh and Cisneros did not "cite any authority for the proposition that both parties exercising their First Amendment rights is a defense to a civil suit under §1985(3)," in the course of rejecting those Defendants' arguments that jurisdiction was lacking. Order at 7. However, the Mesaroses did provide authority reflecting that a cause of action (rather than jurisdiction) is lacking under 1985(3) for interference with "support or advocacy" *in the absence of state action*, and that point was not addressed in the Order.

SUPP.APP.055

Where the Order rejects the argument that state action is required, ECF 64 at 12-13, it does not actually recognize the relevant distinction: state action is not required for *all* claims arising under 1985(3), but is required for those that arise from alleged interference with the plaintiff's associational and expressive activities rather than actual voting. That is the point made in *Carpenters* and *Gill*, but it is not frontally acknowledged in the Order.

The Court's Order is therefore in error and should be reversed.

## II. An Interlocutory Appeal to Determine the Proper Application of Section 1985(3) is Particularly Appropriate Here.

If the Court does not reconsider its Order and grant the motion to dismiss, the Mesaroses request that the Court amend the Order to authorize an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Federal Rule of Appellate Procedure 5(a)(3) specifically authorizes the district court to amend the order to include the requisite statements should this motion be granted. *See also* West's Federal Forms, Court of Appeals (2021) § 2:49. If the order is amended, Defendants' time to petition the Court of Appeals would run from the entry of the amended order. Fed. R. App. P. 5(a)(3).

Under 28 U.S.C. § 1292(b), a district court judge may certify an order for interlocutory appeal if three conditions are met: the order (1) "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on the question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." A district court judge certifying an order for interlocutory appeal must articulate, in writing, why the order satisfies each of

4

these criteria.  *See Linton v. Shell Oil Co.*, 563 F.3d 556, 557–58 (5th Cir. 2009).  All three criteria are met here, and an interlocutory appeal is particularly appropriate for resolution of the important legal issues of first impression raised at the outset of this case.

### a.  The disputed legal question is "controlling."

All that must be shown in order for a question to be "controlling" is "whether the issue has 'potential to have some impact on the course of ligation.'" *La. State Conference of the NAACP v. Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020) (citing *United States v. La. Generating LLC*, No. 09-100, 2012 U.S. Dist. LEXIS 142349, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012); *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 766 (S.D. Tex. 2010)).  "It is sufficient to satisfy the controlling question of law standard if resolution on appeal determines the 'future course of the litigation.'" *La. State Conference of the NAACP*, 495 F. Supp. 3d at 413 (quoting *Tesco Corp.*, 722 F. Supp. 2d at 766).

Whether Plaintiffs can maintain a claim based on allegations limited to interference with "support or advocacy" alone, without any interference with actual voting, and in the absence of any claim of racial animus, is the controlling question in this matter.  If so, then Plaintiffs can proceed; if not, then the sole federal cause of action must be dismissed.  An issue could not be more "controlling" than that.

### b.  Substantial ground for difference of opinion

A "substantial ground for difference of opinion" exists when (1) the question is difficult, novel, and either a question on which there is little precedent or one

SUPP.APP.057

whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question. *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002); *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (en banc). An issue is novel "where reasonable jurists might disagree on an issue's resolution." *In re Trump*, 874 F.3d at 952.

This Court recognized in its March 23 Opinion and Order that "[i]ndeed, neither the Supreme Court nor the Fifth Circuit have addressed" "head on" the question "whether the second portion of § 1985(3) … lacks the requirement to plead race-based animus." ECF No. 64 at 10. The Court therefore acknowledges that it was reaching an issue of first impression in holding that allegations of racial animus are not required for a claim to proceed under some subpart of § 1985(3).

Not only did the Court's Order answer this novel issue, but it did so in a way—allowing a pure "support or advocacy" claim to proceed—in a manner that conflicts with Supreme Court and other Circuit authority requiring state action for such claims.

The Court's holding expands the traditional application of § 1985(3)'s clause relevant to stifling specific and formal acts of voting, to reach non-voting First Amendment "election advocacy" activities. But as *Gill* held, "[t]he independent constitutional right relating to federal elections as part of the basic institutions and processes of the national government is limited, under existing case law, to the

6

right to vote—to cast a ballot and have it honestly counted." 906 F.2d at 1270 (requiring state action in claim implicating associational activity because "Gill does not allege that he was actually deterred from voting"). This is consistent with longstanding court decisions limiting the Act's application to *voting*. *See Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967) (interference with the specific act of registering to vote); *United States v. Williams*, 341 U.S. 70 (1951) (protecting the right to actually vote in federal elections); *Ex Parte Yarbrough,* 110 U.S. 651 (1884) (protecting the right to cast one's vote); *United States v. Classic*, 313 U.S. 299 (1941) (protecting the right to cast one's vote in a primary election); *United States v. Wood*, 295 F.2d 772, 774 (5th Cir. 1961) (protecting the right to register to vote). *See Mesaros Reply In Support of Mtn. to Dismiss* (ECF 41) at 4-5, 5 n.4 (distinguishing *Paynes* on this basis). The Order thus recognizes not only a right to proceed without an element that the Fifth Circuit has otherwise always required (racial animus), but also without any allegation of interference with actual voting, or any element of state action. Even if a claim can arise under the cited clause of 1985(3) for interference with "support or advocacy," the notion that it can proceed without state action is contrary to Supreme Court and other Circuit precedent.

There is clearly substantial ground for difference of opinion where the Court's Order admittedly decides a novel legal issue as to racial animus, and where it contemplates a "support or advocacy" claim without any requirement of state action, contrary to Supreme Court and other Circuit precedent.

SUPP.APP.059

### c. Interlocutory appeal will materially advance the ultimate termination of this litigation.

Obviously, if Defendants are correct regarding the interpretation of § 1985(3), then the Plaintiffs' sole federal cause of action would be ordered dismissed. Such a holding would clearly advance the ultimate termination of this litigation. But "[a]n interlocutory appeal" also "materially advances the litigation when it 'saves judicial resources and litigant expense.'" *Newsome v. Young Supply Co.*, 873 F.Supp.2d 872, 878 (E.D. Mich. 2012). All parties and the Court have an interest in knowing as soon as possible whether the Plaintiffs or the Defendants are correct regarding the scope of the Act. The sooner that question is answered, the sooner the parties will either be spared the further expense of proceeding with the detailed discovery implicated by the Complaint (should the Mesaroses' view prevail), or know that such discovery is necessary, with perhaps some clarification of the scope of the claim(s), should the Plaintiffs' view prevail on appeal. The worst scenario, for all involved, would be for the parties and the Court to invest time and resources for months or years before being allowed the opportunity to secure resolution of this foundational issue of statutory interpretation.

## III. No Prejudice to Plaintiffs

The Court may grant this motion without prejudice to the Plaintiffs. Indeed, as noted above, all parties will benefit by a prompt resolution of the proper interpretation of the relevant statute driving this litigation. And an interlocutory appeal would not even delay the progress of discovery unless this Court or the Court of Appeals were to grant a stay of discovery after considering a motion for same,.

8

CONCLUSION

The Mesaros Defendants respectfully request that the Court reconsider its Order and grant their motion to dismiss. In the alternative, they request that the Court amend its Order to authorize an interlocutory appeal.

Respectfully submitted,

*/s/ Jerad Najvar*
Jerad W. Najvar
Texas Bar No. 24068079
jerad@najvarlaw.com
NAJVAR LAW FIRM, PLLC
2180 N. Loop W., Ste. 255
Houston, TX 77018
Phone:       (281) 404-4696
Facsimile:   (281) 582-4138

## CERTIFICATE OF CONFERENCE

On March 31, 2022, the undersigned conferred by email with counsel for Plaintiffs, who indicated that the Plaintiffs are opposed.

*/s/ Jerad Najvar*
Jerad Najvar

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on April 1, 2022, the foregoing document, and any accompanying exhibits and proposed order, was served by CM/ECF upon all counsel of record.

*/s/ Jerad Najvar*
Jerad Najvar

SUPP.APP.061

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ERIC CERVINI, et al.　　　　　　　§
　　　　　　　　　　　　　　　　§
　　　　　　Plaintiffs,　　　　　　§　　　Civil Action
　　v.　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　§　　　No. 1:21-CV-565-RP
ELIAZAR CISNEROS, et al.,　　　　§
　　　　　　　　　　　　　　　　§
　　　　　　Defendants.　　　　　　§

## MESAROS DEFENDANTS' MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

Defendants, Joeylynn and Robert Mesaros (collectively the "Mesaros Defendants"), move to dismiss the Plaintiffs' First Amended Complaint (ECF 151).

Like the original Complaint, the First Amended Complaint alleges a single federal cause of action (a violation of 42 U.S.C. § 1985(3) in Count I) which should be dismissed for failure to state a claim. This claim should be dismissed because two necessary elements are entirely absent. This court's prior order denying Defendants' first motion to dismiss, ECF Nos. 64, devoted most of its attention to the requirement *vel non* of racial animus for a claim arising under the second part of § 1985(3). ECF 8-12. While the Mesaros Defendants dispute the court's analysis, they do not re-brief it here, but reassert it by incorporation of their first Motion to Dismiss (ECF 24), Reply (ECF 41), and Motion to Reconsider (ECF 69). This motion does provide further clarity regarding the necessity of state action to support a cognizable claim of interference with one's electoral "support or advocacy" *in the absence of interference with actual voting activity*. The court's analysis of this issue in the March 23, 2022 Order—consisting of a single paragraph—fails to recognize material distinctions

1

(improperly conflating alleged interference with actual voting/registration and alleged interference with speech or association) and thus fails to address the actual issue.

## I.   If a Violation of 1985(3)'s "Speech or Advocacy" Provision Exists Absent Interference with Voting Itself, It Requires State Action.

Plaintiffs lodge no allegation that any Plaintiff (or anyone else) was dissuaded or affected in any way with respect to their ability to actually vote or register to vote. Instead, Plaintiffs' case centers on the claim that their "speech or advocacy"—campaign activity on behalf of their preferred presidential candidate—was impacted by Defendants.  *See* First Amended Complaint (ECF No. 151) at ¶ 10 ("Davis, Gins, and others were prevented from exercising their First Amendment rights"), ¶ 49 (discussing that Plaintiffs' bus tour planned to include "rallies and gatherings in support of the Biden-Harris Campaign as well as speeches"), ¶ 145 (referring to "engaging . . . with prospective voters and exercising their First Amendment rights to freedom of speech and association"), ¶ 151 (again referring to "engaging . . . with prospective voters and exercising their First Amendment rights to freedom of speech and association"), ¶ 157 ("Plaintiffs . . . were prevented from exercising their First Amendment rights").

In its March 2022 Order, this court rejected the argument that state action was required for such a claim, reasoning that "the Fifth Circuit has previously stated that 1985(3) was created to allow plaintiffs to recover damages for interference with their *election-related rights* and is a 'specific remedy for interference by private individuals.'" ECF 64 at 12 (quoting *Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967)) (italics

2

added).  But the court's generalized reference to "election-related rights" obscures the material distinction between interference with actual voting or voter-registration activity (as in *Paynes*) and interference with "speech or advocacy" itself.  When this distinction is observed, Paynes loses its application, and, under the Supreme Court's rationale in *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 830 (1983), Plaintiffs cannot maintain a claim in the absence of state action.

In its brief analysis rejecting the state action requirement, this court cited the Fifth Circuit's 1967 decision in *Paynes*, and the Supreme Court's 1971 decision in *Griffin v. Breckenridge*, 403 U.S. 88 (1971), for the general proposition that "Section 1985(3) can reach 'private conspiracies to deprive others of legal rights.'"  ECF 64 at 13 (quoting *Griffin*, 403 U.S. at 104).  True enough.  But that does not answer the question in this case.  "Section 1985(3) 'provides no substantial rights itself' to the class conspired against."  *Carpenters*, 463 U.S. at 833 (quoting *Great American Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979)).  "The rights, privileges, and immunities that 1985(3) vindicates must be found elsewhere[.]"  *Id*.  Because Plaintiffs here do not allege interference with anyone's ability to vote or register to vote, their claims, like those of the nonunion workers in *Carpenters*, cannot be founded upon any constitutional or statutory right to vote, but arise only by virtue of the First Amendment's guarantee of speech and association (which Plaintiffs' Complaint itself implicitly acknowledges).  *Carpenters* held that "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the

3

conspiracy is to influence the activity of the state." 463 U.S. at 830. Fully aware of the actual violence perpetrated against the nonunion plaintiffs in the case, the Supreme Court rejected the view that Section "1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group," even "by use of otherwise unlawful means." *Id.* at 836. *Carpenters* warned against

> making the federal courts … the monitors of campaign tactics … a role that the courts should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.

*Id.* Following *Carpenters*, the Eighth Circuit has affirmed the dismissal of a § 1985(3) claim, both under the equal protection and federal-election "support or advocacy" provisions, for lack of state action. *Federer v. Gephardt*, 363 F.3d 754 (2004) ("[B]ecause the substantive federal right that Federer wishes to vindicate is a First Amendment right, state action is required."); *Gill v. Farm Bureau Life Ins., Co.*, 906 F.2d 1265 (8th Cir. 1990) (holding the Ku Klux Klan act does not provide a cause of action for an infringement of a First Amendment right without a showing of state action).

The court was wrong in March 2022 to rely on *Paynes* and *Griffin* for the general proposition that 1985(3) can reach purely private conspiracies. Because this case does not involve any alleged interference with actual voting, or racial animus, but only claimed interference with rights based in the First Amendment, the

4

Supreme Court's subsequent decision in *Carpenters* speaks more directly to the issue, and requires state action.  Lacking state action, Plaintiffs are without a claim.

## II.    State Claims Should Be Dismissed

In the event the court dismisses Plaintiffs' lone federal claim, the Mesaroses further request that the court dismiss the pendent state law claims with prejudice or, at a minimum, dismiss them without prejudice, for the reasons provided in the original motion to dismiss (ECF 24 at 9-12).

## III.    In the Event the Court Declines to Dismiss the Complaint, It Should Authorize an Interlocutory Appeal to Determine the Proper Application of Section 1985(3).

If the Court does not reconsider its Order and grant the motion to dismiss, the Mesaroses request that the Court amend the Order to authorize an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Under 28 U.S.C. § 1292(b), a district court judge may certify an order for interlocutory appeal if three conditions are met: the order (1) "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on the question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  A district court judge certifying an order for interlocutory appeal must articulate, in writing, why the order satisfies each of these criteria.  *See Linton v. Shell Oil Co.*, 563 F.3d 556, 557–58 (5th Cir. 2009).  All three criteria are met here, and an interlocutory appeal is particularly appropriate for resolution of the important legal issues of first impression raised at the outset of this case.

SUPP.APP.066

### a. The disputed legal question is "controlling."

All that must be shown in order for a question to be "controlling" is "whether the issue has 'potential to have some impact on the course of ligation.'" *La. State Conference of the NAACP v. Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020) (citing *United States v. La. Generating LLC*, No. 09-100, 2012 U.S. Dist. LEXIS 142349, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012); *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 766 (S.D. Tex. 2010)). "It is sufficient to satisfy the controlling question of law standard if resolution on appeal determines the 'future course of the litigation.'" *La. State Conference of the NAACP*, 495 F. Supp. 3d at 413 (quoting *Tesco Corp.*, 722 F. Supp. 2d at 766).

Whether Plaintiffs can maintain a claim based on allegations limited to interference with "support or advocacy" alone, without any interference with actual voting, and in the absence of state action contributing to the alleged interference with First Amendment rights or any claim of racial animus, is the controlling question in this matter. If so, then Plaintiffs can proceed; if not, then the sole federal cause of action must be dismissed. An issue could not be more "controlling" than that.

### b. Substantial ground for difference of opinion

A "substantial ground for difference of opinion" exists when (1) the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question. *Judicial Watch, Inc. v.*

6

*Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002); *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (en banc). An issue is novel "where reasonable jurists might disagree on an issue's resolution." *In re Trump*, 874 F.3d at 952.

This Court recognized in its March 23 Opinion and Order that "[i]ndeed, neither the Supreme Court nor the Fifth Circuit have addressed" "head on" the question "whether the second portion of § 1985(3) … lacks the requirement to plead race-based animus." ECF No. 64 at 10. The Court therefore acknowledges that it was reaching an issue of first impression in holding that allegations of racial animus are not required for a claim to proceed under some subpart of § 1985(3). That alone is an issue sufficient to support an interlocutory appeal.

But there is more. The Court's holding expands the second part of § 1985(3) to reach non-voting First Amendment "election advocacy" activities. But as *Gill* held, "[t]he independent constitutional right relating to federal elections as part of the basic institutions and processes of the national government is limited, under existing case law, to the right to vote—to cast a ballot and have it honestly counted." 906 F.2d at 1270 (requiring state action in claim implicating associational activity because "Gill does not allege that he was actually deterred from voting"). This is consistent with longstanding court decisions limiting the Act's application to *voting*. *See Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967) (interference with the specific act of registering to vote); *United States v. Williams*, 341 U.S. 70 (1951) (protecting the right to actually vote in federal elections); *Ex Parte Yarbrough*, 110 U.S. 651 (1884) (protecting the

SUPP.APP.068

right to cast one's vote); *United States v. Classic*, 313 U.S. 299 (1941) (protecting the right to cast one's vote in a primary election); *United States v. Wood*, 295 F.2d 772, 774 (5th Cir. 1961) (protecting the right to register to vote). *See Mesaros Reply In Support of Mtn. to Dismiss* (ECF 41) at 4-5, 5 n.4 (distinguishing *Paynes* on this basis). The Order thus recognizes not only a right to proceed without an element that the Fifth Circuit has otherwise always required (racial animus), but also without any allegation of interference with actual voting, or any element of state action. Even if a claim can arise under the cited clause of § 1985(3) for interference with "support or advocacy," the notion that it can proceed without state action is contrary to Supreme Court's opinion in *Carpenters* and other Circuit precedent.

There is clearly substantial ground for difference of opinion where the Court's Order admittedly decides a novel legal issue as to racial animus, and where it contemplates a "support or advocacy" claim without any requirement of state action, contrary to Supreme Court and other Circuit precedent.

### c. Interlocutory appeal will materially advance the ultimate termination of this litigation.

Obviously, if Defendants are correct regarding the interpretation of § 1985(3), then the Plaintiffs' sole federal cause of action would be ordered dismissed. Such a holding would clearly advance the ultimate termination of this litigation. But "[a]n interlocutory appeal" also "materially advances the litigation when it 'saves judicial resources and litigant expense.'" *Newsome v. Young Supply Co.*, 873 F.Supp.2d 872, 878 (E.D. Mich. 2012). All parties and the Court have an interest in knowing as soon as possible whether the Plaintiffs or the Defendants are correct regarding the scope

SUPP.APP.069

of the Act. The sooner that question is answered, the sooner the parties will either be spared the further expense of proceeding with the detailed discovery implicated by the live complaint (should the Mesaroses' view prevail), or know that such discovery is necessary, with perhaps some clarification of the scope of the claim(s), should the Plaintiffs' view prevail on appeal. The worst scenario, for all involved, would be for the parties and the Court to invest time and resources for months or years before being allowed the opportunity to secure resolution of this foundational issue of statutory interpretation.

## IV.    No Prejudice to Plaintiffs

The Court may grant this motion without prejudice to the Plaintiffs. Indeed, as noted above, all parties will benefit by a prompt resolution of the proper interpretation of the relevant statute driving this litigation. And an interlocutory appeal would not even delay the progress of discovery unless this Court or the Court of Appeals were to grant a stay of discovery after considering a motion for same.

### CONCLUSION

The Mesaros Defendants respectfully request that the Court grant their motion to dismiss the First Amended Complaint. In the alternative, should the Court deny the motion to dismiss, the Mesaroses request that the Court authorize an interlocutory appeal.

Respectfully submitted,

*/s/ Jerad Najvar*
Jerad W. Najvar
Texas Bar No. 24068079

9

jerad@najvarlaw.com
NAJVAR LAW FIRM, PLLC
2180 N. Loop W., Ste. 255
Houston, TX 77018
Phone:       (281) 404-4696
Facsimile:   (281) 582-4138
*Counsel for Mesaros Defendants*

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on February 8, 2023, the foregoing document, and any accompanying exhibits and proposed order, was served by CM/ECF upon all counsel of record. I emailed the foregoing documents to Hannah Ceh per agreement of the parties, and I sent via First Class U.S. Mail a copy of the foregoing to Defendants Ceh, Ceh, and Kruger at the following addresses provide by Plaintiffs:

Kyle Kruger
645 Herbelin Rd.
New Braunfels, Texas 78132

Steve Ceh
18501 FM 306
Canyon Lake, Texas 78133

Randi Ceh
18501 FM 306
Canyon Lake, Texas 78133

*/s/ Jerad Najvar*
Jerad Najvar

SUPP.APP.071

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC CERVINI, et al. | § | |
| | § | |
| Plaintiffs, | § | Civil Action |
| v. | § | |
| | § | No. 1:21-CV-565-RP |
| ELIAZAR CISNEROS, et al., | § | |
| | § | |
| Defendants. | § | |

## **[PROPOSED] ORDER OF DISMISSAL**

On this day, the Court considered the motion to dismiss Plaintiffs' First Amended Complaint filed by Defendants Joeylynn Mesaros and Robert Mesaros (collectively, the "Mesaroses"). After considering the Motion, the response, if any, the pleadings and papers on file, and any argument of counsel, the Court is of the opinion that Defendants' Motion to Dismiss should be GRANTED.

It is therefore ORDERED that Plaintiffs' First Amended Complaint is dismissed with prejudice.

SIGNED THIS _____ day of _____, 2023.

_____
UNITED STATES DISTRICT JUDGE

SUPP.APP.072

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| ERIC CERVINI, et al., | |
| *Plaintiffs,* | |
| | Civil Action No. 1:21-cv-00565-RP |
| v. | |
| | Hon. Robert Pitman |
| ELIAZAR CISNEROS, et al., | |
| *Defendants.* | |

**Defendant Dolores Park's Motion for Reconsideration and/or Renewed Request to Certify an Interlocutory Appeal**

Based upon the Fifth Circuit's decision yesterday in *In re Dolores Park,* Case No. 23-50585, Op. (5th Cir. Sep. 13, 2023) and its August 28, 2023 decision in *In re Joeylynn Mesaros*, Case No. 23- 50593, Op. (5th Cir. Aug. 28, 2023), Dolores Park seeks immediate reconsideration and renews her motion for this Court to amend its August 3, 2023 order (ECF No. 204) by certifying an interlocutory appeal.

The Fifth Circuit held yesterday that this "court should have certified its [August 3rd] order for interlocutory appeal under 28 U.S.C. § 1292(b)," *In re Dolores Park,* Op. at 1, but "we are confident that the

1

district court will reach the correct certification decision if given another opportunity," *id*. at 11.   Defendant Park asks the court to take this opportunity and at the earliest possible time.

## I.   The Fifth Circuit Has Directed this Court to Certify an Interlocutory Appeal under 28 U.S.C. § 1292(b).

The Fifth Circuit's panel ruling is straightforward:  this "court should have certified its order." *Id*. at 11.  The Fifth Circuit found that "there is *unquestionably* a 'substantial ground for difference of opinion' that necessitates certification of a 'controlling question of law' under 28 U.S.C. § 1292(b)." *Id*. at 7 (emphasis in original).  The Fifth Circuit continued, "Respondents' invocation of the Support-or-Advocacy Clause is unprecedented in the statute's 152-year history. And what little precedent exists cuts squarely against respondents. Without the Support-or-Advocacy Clause, respondents' only federal claim (and hence their only basis for litigating in federal court) fails. By our count, petitioners have at least four grounds for substantial difference of opinion, any one of which necessitates certification under § 1292(b)." *Id*.

The Fifth Circuit then analyzed four reasons why certification should be granted, *id*. at 7-11 and stated that "we are confident that the district court will reach the correct certification decision if given another

SUPP.APP.074

opportunity, which suggests petitioners have another adequate means to secure their requested relief," *id*. at 11. The Fifth Circuit warned that if this court failed to certify an interlocutory appeal again, Dolores Park could renew her petition for mandamus and again seek appellate relief. *Id*. Given the clear directions from the Fifth Circuit, the Defendants move for this Court to reconsider its decision based upon yesterday's panel opinion.

## II.   This Court Should Reconsider Its August 3, 2023 Order and Amend It to Certify an Interlocutory Appeal.

Federal Rule of Civil Procedure 54(b) "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (alterations in original) (quoting Fed. R. Civ. P. 54(b)). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* at 336 (quotation marks omitted)." Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear . . . [s]uch a motion requires the Court to determine whether reconsideration is

SUPP.APP.075

necessary under the circumstances." *Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014) (quotation marks omitted).

"Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible [than Rule 59(e)], reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 336–37 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)). Accordingly, in contrast to a Rule 59(e) motion, the district court may consider "new arguments" on a Rule 54(b) motion that the movant did not raise in prior briefing. *See id.* at 337. For the reasons stated in the Fifth Circuit's opinion, *see id.* at 7-11, this Court should reconsider and correct its decision denying certification and immediately certify this interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

### A. The Fifth Circuit Held that this Court's August 3, 2023 Order Presented a Controlling Issue of Law with Substantial Grounds for Difference of Opinion.

The Fifth Circuit held that "whether the Support-or-Advocacy Clause [of the Ku Klux Klan Act of 1871] affords respondents a cause of action against petitioners" was a controlling question of law. *Id.* at 7. The Fifth Circuit next identified "at least *four* grounds for substantial

4

difference of opinion, any one of which necessitates certification under § 1292(b)." *Id.* at 7. Dolores Park re-asserts those four reasons now and asks the Court to certify its August 3, 2023 order for the appellate court to address these issues:

First, the order should be certified because there is substantial ground for difference of opinion whether the Support-or-Advocacy Clause presents a new cause of action. *Id.* at 7 (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 278 (1993); *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 830–31 (1983); *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Gill v. Farm Bureau Life Ins. Co. of Missouri*, 906 F.2d 1265, 1269 (8th Cir. 1990)); *see also* Dolores Park's Mot. to Dismiss (ECF. 33), Pet. for Writ of Mandamus (ECF No. 205).

Second, there is substantial ground for difference of opinion whether the "conspiracy" asserted by Plaintiffs comports with the text of the Support-or-Advocacy Clause. *In re Dolores Park*, Op. at 8-9. The Fifth Circuit even noted that "[t]here are myriad reasons for preferring" Dolores Park's "reading of statutory text" over the Plaintiffs. *Id.* at 9 (citing *Bray*, 506 U.S. 263 (1993); *Carpenters*, 463 U.S. 825 (1983);

SUPP.APP.077

*Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004)); *see also* Dolores Park's Mot. to Dismiss First Amend. Compl. (ECF No. 163), Reply (ECF No. 169), Opp. to Pls' Mot. for Leave to File First Amend. Compl. (ECF No. 139), Pet. for Writ of Mandamus (ECF No. 205).

Third, there is substantial ground for difference of opinion whether Plaintiffs' reading of the Support-or-Advocacy Clause violates Article I of the U.S. Constitution because their claim fails to "intimately relate[ ] to ballot-casting." *In re Dolores Park*, Op. at 9-10; *see also* Dolores Park's Mot. to Dismiss (ECF. 33), Reply (ECF No. 40); Mot. to Authorize an Interlocutory Appeal (ECF No. 66), Reply (ECF No. 77); Mot. to Dismiss First Amend. Compl. (ECF No. 163), Reply (ECF No. 169), Pet. for Writ of Mandamus (ECF No. 205).

Fourth, there is substantial ground for difference of opinion whether any intimidation associated with the Trump Train, which is protected speech and association, creates a private cause of action under the Support-or-Advocacy Clause without running afoul of the First Amendment. *Id.* at 10 (quoting *Snyder v. Phelps*, 562 U.S. 443 (2011); *Broadrick v. Oklahoma*, 413 U.S. 601, 614–15 (1973)); *see also* Dolores

SUPP.APP.078

Park's Mot. to Dismiss (ECF. 33), Pet. for Writ of Mandamus (ECF No, 205).

Fifth, there is substantial ground for difference of opinion whether the Support-or-Advocacy Clause requires "the presence of state action." *In re Dolores Park*, Op. at 11 (stating that this Court "should have granted the § 1292(b) motion" for this reason); *see also* Dolores Park's Mot. to Dismiss (ECF. 33), Reply (ECF No. 40); Mot. to Authorize an Interlocutory Appeal (ECF No. 66), Reply (ECF No. 77); Mot. to Dismiss First Amend. Compl. (ECF No. 163), Reply (ECF No. 169), Pet. for Writ of Mandamus (ECF No. 205).

Sixth, there is substantial ground for difference of opinion whether the Support-or-Advocacy Clause requires "allegations of racial animus." *Id*. (stating that this Court "should have granted the § 1292(b) motion" on this basis as well); *see also* Dolores Park's Mot. to Dismiss (ECF. 33), Reply (ECF No. 40); Mot. to Authorize an Interlocutory Appeal (ECF No. 66), Reply (ECF No. 77); Mot. to Dismiss First Amend. Compl. (ECF No. 163), Reply (ECF No. 169), Pet. for Writ of Mandamus (ECF No. 205).

7

**B.    The Fifth Circuit Held An Immediate Appeal of the Order Will Materially Advance the Ultimate Termination of the Litigation.**

The Fifth Circuit recognized that an "immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Dolores Park*, Op. at 3.  The Fifth Circuit found that Plaintiffs' Support-or-Advocacy Clause claim was "their only basis for litigating in federal court." *Id.* at 7.  Therefore, if Plaintiffs have failed to plead a federal cause of action under the Support-or-Advocacy Clause, their case fails for want of federal court jurisdiction.  *Id.* at 7.  And because an immediate appeal will materially advance the termination of this litigation, this court "should have certified its order for interlocutory appeal under 28 U.S.C. § 1292(b)." *Id.* at 1.

## CONCLUSION

For the reasons stated above, those given by the Fifth Circuit in *In re Dolores Park* and *In re Joeylynn Mesaros*, and those argued by Dolores Park's in her previous filings, *see* (ECF Nos. 33, 40, 66, 77, 163, 169, and 205), incorporated by reference, this Court should immediately reconsider its August 3, 2023 and amend the order in accordance with

8

the Fifth Circuit's Opinions in *In re Dolores Park* and *In re Joeylynn Mesaros*.

Date: September 14, 2023

Respectfully,

THOMAS MORE LAW CENTER

Richard Thompson

<u>/s/ Erin Elizabeth Mersino</u>
Erin Elizabeth Mersino

24 Frank Lloyd Wright Drive
Suite J-3200
Ann Arbor, MI 48106
Tel: (734) 827-2001
Fax: (734) 930-7160
Email: rthompson@thomasmore.org
emersino@thomasmore.org

SUPP.APP.081

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case. I emailed the foregoing paper to Hannah Ceh per agreement of the parties, and I sent via First Class U.S. Mail a copy of the foregoing to Defendants Ceh, Ceh, and Kruger at the following addresses provide by Plaintiffs:

Kyle Kruger
645 Herbelin Rd.
New Braunfels, Texas 78132

Steve Ceh
18501 FM 306
Canyon Lake, Texas 78133

Randi Ceh
18501 FM 306
Canyon Lake, Texas 78133

/s/ Erin Elizabeth Mersino
Erin Elizabeth Mersino

SUPP.APP.082

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY, <br><br>              Plaintiffs, <br><br>     v. <br><br> ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK, <br><br>              Defendants. | Civil Action No. 1:21-cv-00565-RP <br><br> Hon. Robert Pitman |

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO MESAROS AND PARK**
**DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF**
**DISPOSITIVE MOTIONS**

As discovery draws to a close, the evidence shows that what happened on October 30, 2020 was not just a peaceful protest. While some who drove with the Biden bus may have done so with peaceful intentions, a subset—including Defendants in this case—coordinated to surround the bus, force it to a crawl, intimidate its occupants with assaultive driving tactics, and "run [it] out of Texas."[1] Facing the mounting evidence against them, and seeking to delay what discovery remains, the Defendants Joeylynn and Robert Mesaros (together, the "Mesaros Defendants") and Defendant Park seek to stay proceedings pending an interlocutory appeal (Dkts. 229, 230). But Defendants have failed to show they are likely to succeed on the legal merits of their appeal. And even were the Fifth Circuit to rule for them, Plaintiffs' state law claims, with the same factual scope, will survive, and Defendants will face the remaining discovery, summary judgment, and trial. Defendants' stay motion is the latest move in an overall strategy of shifting narrative, evasion, and delay that, if granted, will injure Plaintiffs as memories fade and spoliation by Defendants and nonparty witnesses continues. The stay motions should be denied.

## LEGAL STANDARD

A stay is not a matter of right—even where irreparable injury may occur—but "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009). The movant for a stay bears the burden of showing why circumstances necessitate it. *Id.*

When considering a stay motion pending appeal, a court must determine the following: (1) whether the movant makes a strong showing of likelihood of success on the merits; (2) whether

---

[1]  Ex. 1. Plaintiffs attach a fact appendix to this brief as permitted by Local Rule CV-7(c)(1) in response to the Mesaros Defendants' inaccurate, factual references and characterizations that pervade their motion and fact appendix. Ex. A. Plaintiffs' appendix represents only a sample of the factual evidence discovered thus far, and paints a far different picture than the Mesaros Defendants.  While the Court need not consult Plaintiffs' fact appendix to decide this motion, Plaintiffs include it to set the record straight.

SUPP.APP.084

irreparable injury will befall the movant absent a stay; (3) whether a stay will substantially injure the other parties; and (4) the public interest. *Id.* at 434. Possible success or injury will not carry a movant's burden, *id.*, and injury is only irreparable if money damages will not undo it. *Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017). Only where a movant carries the burden on factors (1) and (2) will the court assess harm to other parties and the public interest. *Nken*, 556 U.S. at 435.

The Fifth Circuit recognizes an alternative test if—and only if—factors (2), (3), and (4) are "heavily tilted in the movant's favor" and a "serious legal question is involved." *Hernandez v. Erazo*, No. 23-50281, 2023 WL 3175471, at *2 (5th Cir. May 1, 2023) (per curiam) (unpublished) (quoting *Ruiz v. Estelle*, 650 F.2d 565-66 (5th Cir. Unit A June 26, 1981) (per curiam)). In such a case, a stay may issue where the issue on appeal is one with "patent substantial merit." *Vine v. PLS Financial Servs., Inc.*, 2019 WL 4257108, at *5 (E.D. Tex. Sept. 9, 2019).

## ARGUMENT

a. *The Mesaros and Park Defendants Have Not Made a Strong Showing They Are Likely To Succeed on the Merits*

The Mesaros Defendants argue they meet the first *Nken* factor based solely on the Fifth Circuit panel majority's statement that "there is *unquestionably* a 'substantial ground for difference of opinion' that necessitates certification of a 'controlling question of law' under 28 U.S.C. § 1292(b)."[2] Dkt. 209 at 7; Dkt. 229. at 3-4. But a split panel's identification of "substantial ground for difference of opinion" is far less than a "strong showing" of likelihood of success on the merits, *Nken*, 556 U.S. at 434. Otherwise, the first *Nken* factor would automatically be met every time an interlocutory appeal was certified. The panel majority did not consider the Mesaros Defendants' overall likelihood of success, and its opining on other matters cannot carry the Mesaros

---

[2] Judge Clement evidently disagreed, declining to join the majority's opinion.

SUPP.APP.085

Defendants' burden. On the contrary, as discussed in Plaintiffs' response to Defendants' renewed request to certify an interlocutory appeal, the legal issues raised by the panel above—and now pressed by Defendants—all cut definitively in Plaintiffs' favor. Dkt. 240 at 6. Plaintiffs incorporate those arguments by reference here.

Defendant Park argued in turn that she need only present "a substantial case on the merits" because "there is a serious legal question involved" and "the balance of equities weighs heavily in favor of granting the stay." Dkt. 230 at 2-3; *see Hernandez*, 2023 WL 3175471, at *2. Park posits that the mandamus opinion carries her burden of showing both a "serious legal question" and "a substantial case on the merits." *Id.* at 3. Again, Plaintiffs disagree. But Plaintiffs do not ask this Court to reject the majority's conclusion that this case presents a "substantial ground for difference of opinion." Rather, even assuming *arguendo* that Park makes this more modest showing on the merits, she fails to show that the balance of equities tilts in her favor at all, as is required. As discussed below, "the latter three [*Nken*] factors," and thus, "the balance of equities," *Hernandez*, 2023 WL 3175471, at *2, overwhelmingly favor Plaintiffs and weigh against a stay.

### b. A Stay Denial Would Not Irreparably Injure the Mesaros and Park Defendants

Defendants fail to show they would sustain "irreparable injury" absent a stay pending appeal. Park fails to assert any injury *at all*, instead concluding without argument that "Defendants meet this standard." *See* Dkt. 230 at 2. Park's motion should be denied for that reason alone, given the burden she has taken on to show that "the latter three [*Nken*] factors are heavily tilted in [her] favor," *Hernandez*, 2023 WL 3175471, at *2.

The Mesaros Defendants identify three purportedly irreparable injuries they would incur absent a stay: (1) chill of the exercise of their First Amendment freedoms, Dkt. 229. At 5-6; (2)

SUPP.APP.086

being subjected to "ideological and political harassment" in discovery, *id.* at 6-8; and (3) the continued cost of litigation and "excessive" discovery, *id.* at 8-9. None meet their burden.

**First Amendment chill.** The Mesaros Defendants first argue that they will be irreparably harmed absent a stay because Plaintiffs' suit against them is chilling their ability to exercise their First Amendment rights of speech and association. But *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)—the authority they rely on to argue that diversion of time and resources to respond to a civil lawsuit brought by private litigants is irreparable harm—was a standing case concerning the chill of First Amendment activity if enforcement of a state statute regulating campaign speech was not enjoined. As a standing case, *Driehaus* is inapposite—whether a party will suffer irreparable harm sufficient to justify a stay pending appeal is a higher standard than cognizable injury sufficient to confer standing. What is more, nothing about the remaining discovery at issue purports to regulate the Mesaros Defendants' current exercise of their First Amendment rights.

The Mesaros Defendants assert that being forced to participate in a lawsuit *at all* chills their First Amendment speech and therefore irreparably harms them. But this proposition is completely unsupported. Suggesting that an unwilling party to litigation (as most defendants are) is irreparably harmed merely by participation in legal proceedings would *give any defendant* in *any civil litigation* where speech or conduct is part of the factual record grounds to stay discovery. *See FTC. v. Standard Oil Co. of Cal.*, 499 U.S. 232, 244 (1980) ("expense and annoyance of litigation is part of the social burden of living under government"). The Mesaros Defendants also do not make a serious or particularized showing of how their First Amendment rights are being infringed by their remaining participation in this litigation. Their subjective feeling that their

SUPP.APP.087

speech may have non-legal consequences does not amount to a chill of First Amendment rights, let alone irreparable harm. *See Nken*, 556 U.S. at 434-35.

***Ideological and political harassment.*** The Mesaros Defendants next argue that they have been subject to ideological and political harassment as a result of Plaintiffs' discovery. As they admit, the bounds of relevancy in discovery are broad, Dkt. 229 at 6, and Plaintiffs have remained well within the bounds of the federal rules in seeking discovery. It is not harassment to engage in thorough discovery on relevant topics.

Each discovery topic the Mesaros Defendants identify as political or ideological harassment is in fact quite relevant to the case and well within the scope of Rule 26. All of the topics—community group and political affiliation, interactions with then-Congressional candidate Chip Roy, knowledge of QAnon beliefs, actions of "Antifa," knowledge of Proud Boys' or Three Percenters' affiliation with any Trump Train, and the legitimacy of the 2020 election and related political or civil violence—are topics that feature prominently in relevant social media postings and other communications involving coordination and execution of the October 30, 2020 incident.[3] Parties need not justify the admissibility of any discovery sought for it to be permissible, Fed. R. Civ. P. 26(b)(1) ("[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable"), but to put even a finer point on the appropriateness of Plaintiffs' discovery, exploration of these topics not only seeks facts that may directly prove Plaintiffs' claims, but also facts regarding other acts admissible under Federal Rule of Evidence 404(b), including intent, motive, preparation and plan, and absence of mistake. The Mesaros Defendants' attempts to characterize questions regarding their attendance at Solomon's Porch meetings as religious

---

[3] **Chip Roy**: Exs. 2A and 2B. **QAnon**: Exs. 3A, 3B; and 3C. **Antifa**: Exs. 4A, 4B, 4C, 4D, 4E, 4F, and 4G. **Proud Boys**: Exs. 5A, 5B, 5C, 5D, 5E, 5F, 5G, and 5H. **Three Percenters**: 6A and 6B. **Political/civil violence**: 7A and 7B.

SUPP.APP.088

harassment are equally overstated—the relationships between co-defendants, such as the Mesaroses and the Cehs, who run the Solomon's Porch meetings, are highly probative in a conspiracy case, and public videos posted to YouTube show that the facts underlying this lawsuit were discussed at Solomon's Porch meetings. Steve Ceh himself admits that politics—including the election—was a regular part of his sermons, Ex. 8 at 97:11-98:2, and describes Solomon's Porch as being "born out of" the Trump Train rallies. *See, e.g.*, Ex. 6 at 96:25-97:3; Ex. 9 at 13:28.

Inquiry into Defendants' participation in and perspective on the riot at the U.S. Capitol on January 6, 2021 are also plainly relevant here. Participating in a riot meant to stop the peaceful transfer of power after a free and fair election is probative of Defendants' state of mind as the election loomed, including what they were prepared to do and how far they were prepared to go to ensure their preferred candidate held power, and how comfortable they were with use of force to achieve that end. Defendant Cisneros, for example, armed his friends with "collapsible batons and bear mace" before heading to the Capitol. Ex. 10; Ex. 11 at 32:16-33:3. He did this "in preparation for [dealing with] Antifa," Ex. 11 at 33:24, a group he associates with the driver of the staffer vehicle he hit on October 30, 2020. Ex. 12 at 7:40 ("As far as [the staffer] being Antifa, I'm more than sure.").

Defendants' opinions on January 6th are also probative of their credibility in describing the events of October 30, 2020. For example, Steve and Randi Ceh took pictures on the Capitol steps as those around them scaled the scaffolding and walls of the building. Ex. 13; Ex. 14 at 304:4-306. Yet Randi described the transfer of power after the 2020 election as "mostly peaceful." Ex. 14 at 200:7-11. Both Randi and Steve claim that the only people causing property damage to the Capitol on January 6th were "Antifa" who could be identified by their actions and black outfits. Ex. 14 at 297:20-8; Ex. 8 at 268:23-269:25. Their perspective on the events of January 6th—which were

SUPP.APP.089

widely publicized—contextualizes what they mean when they describe the events of October 30th in similar terms, Ex. 14 at 260:18 (describing the October 30th Trump Train as "nice and peaceful"), and how reliable they are as witnesses when describing the actions of fellow Trump supporters or those they see as their political enemies. *See, e.g.*, Ex. 8 at 271:13-25 (Steve Ceh saying he knew the people breaking windows at January 6th were Antifa *because* they were breaking windows); Ex. 14 at 305:12-24 (Randi Ceh saying she discerned the people climbing the Capitol walls "weren't us […] because they were crazy").

Tellingly, in the nearly two years that discovery has been ongoing, no Defendant has ever moved for a protective order to shield them from Plaintiffs' purported harassing discovery, nor has any Defendant objected to the scope of discovery. Defendants have largely forfeited objections to the topics they now call irreparably harmful. Plaintiffs have served discovery requests on the Mesaros Defendants asking about a range of relevant topics from their fundraising efforts relating to the Trump Train incident, Ex. 15 at 9; Ex. 16 at 9; their opinions of Democrats and liberals, Ex. 15 at 8; Ex. 16 at 8; their use of violent, intimidating, or racist language, Ex. 15 at 8-9; Ex. 16 at 8-9; and discussion and knowledge of white nationalist groups and groups like the Proud Boys and Oath Keepers involved in planning the insurrection on January 6th RFP No. 22. Ex. 15 at 9; Ex. 16 at 9. The Mesaros Defendants responded *without objection* to these discovery requests throughout the spring of 2022. *See* Exs. 15, 16.

**Litigation costs.** Litigation costs are not irreparable harm. *See Burgess*, 871 F.3d at 304; *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1975) ("litigation expense [is not] irreparable injury"). What is more, the Mesaroses have only exacerbated the time and expense of discovery in this litigation through their obstinacy and non-compliance. They have stonewalled the exchange of basic discovery information and refused reasonable stipulations, forcing Plaintiffs

SUPP.APP.090

to engage in time-consuming motions practice to conduct basic discovery. *See, e.g*, Dkt. 147 (opposing additional depositions) and 191 (Pls. Motion to Compel Production of iCloud Data); Ex. 17; Ex. 18 (J. Mesaros R&Os to Plfs. Third Set of Requests for Production, dated more than a month after they were due). Twice now, they produced highly material documents on the eve of a deposition, forcing it to be left open (S. Evans) or cancelled (J. Mesaros and R. Mesaros). Exs. 19 and 20.[4]

But more importantly, Defendants cannot show that they will be irreparably injured absent a stay because the discovery they seek to avoid will occur *even if* they succeed on appeal. As argued in Plaintiffs' opposition to 1292(b) certification, and incorporated by reference here, even if Plaintiffs' Klan Act claims are dismissed, their state law claims will survive and continue to be litigated, whether in this Court through its exercise of supplemental jurisdiction, or in state court. And their federal and state law claims arise from the same set of facts, call for substantially the same evidence and, therefore, require substantially the same discovery. Dkt. 240 at 8-11.

### c. Issuance of the Stay Will Substantially Injure Plaintiffs

Plaintiffs would also be substantially harmed by a stay in discovery. Defendants and witnesses in this case have engaged in rampant spoliation of evidence. A stay in discovery would only permit more evidence to be lost and seriously prejudice Plaintiffs. Multiple defendants have admitted to deleting evidence. *See* Ex. 24 at 1940 ("We probably need to delete our social media posts ASAP about chasing the bus."); Ex. 21 at 267:9-15 (confirming they followed through on

---

[4] In any case, the Mesaroses have raised more than sufficient funds to cover the costs of litigation. By their own account, they have spent approximately $100,000 in litigation expenses, but have raised over $235,000 through their GiveSendGo account alone. Ex. 21 at 243:15-18. That is to say nothing of the thousands of dollars they have brought in from merchandise sales and other donation methods. *Id.* at 243:19 – 244:22; Ex. 22 at 27; Ex. 23 at 3.

SUPP.APP.091

deleting social media.); Ex. 25 (admitting that he deleted an Instagram account in the fall of 2021); Ex. 26 (explaining that she does not "save" her text messages).

Several Defendants, including Joeylynn Mesaros and Park, also lost access to large swaths of relevant discoverable data through apparently inadvertent means, such as deactivation of social media accounts and missing or damaged mobile devices. *See* Dkt. 191 at 2–3 (explaining that Joeylynn Mesaros's phone was permanently damaged and none of its contents recoverable); Dkt. 190 at Exs. 1, 4, 14 (showing that information on Joeylynn Mesaros's phone was not recoverable by a forensic vendor and that no texts could be recovered from her iCloud account between Sept. 1, 2020 and Dec. 31, 2020); Ex. 26 at No. 24 (stating Park "do[es] not save" her text messages); Ex. 27 at RFP Nos. 3, 4; Ex. 28 at Rog Nos. 3, 9 (explaining that Randi Ceh changed her phone and lost all iCloud data as well as access to her Parler, MeWe and Discord accounts); Ex. 29 at RFP No. 1 (explaining that Steve Ceh no longer has "access" to the phone he used on October 30, 2020).

Defendant Cisneros's egregious spoliation demonstrates the extent to which certain co-conspirators have and may continue to destroy evidence if a stay is instituted. Cisneros has been unable to conclusively answer simple questions regarding discoverable evidence he admits he has not produced, including his assertion that his social media accounts and mobile phones were hacked and deleted by an unknown actor, and his ability to produce a mobile phone that he admits contained discoverable information. His contradictory and often patently false statements regarding where responsive information may exist, whether it still exists, and if and how responsive material was lost cannot be reconciled and indicate a significant pattern of spoliation, if not a strategy of withholding or destroying documents to prevent disclosure.

SUPP.APP.092

The saga of Defendant Cisneros's mobile phone illustrates what Plaintiffs likely would endure in the event of a stay. As detailed at length in Plaintiffs' eventual motion to compel the device, Dkt. 109, throughout March and April 2022 Cisneros stated in interrogatory responses and related discovery correspondence that discoverable documents were "destroyed" when his mobile phone was "'hacked' and 'deleted'" after October 30, 2020. Dkt. 109 Ex. 7 at 1-2. In June 2022, however, Cisneros stated in another interrogatory response that he had already provided Plaintiffs all responsive data from the his phone. Dkt. 109 Ex. 8 at 3. And at all times during this period Cisneros insisted he maintained custody over the purportedly compromised device. Plaintiffs moved to compel production of the phone to reconcile these conflicting accounts, and in two affidavits submitted to fend off Plaintiffs' motion, Cisneros again contradicted himself, stating that he had produced to Plaintiffs all relevant content from his phone, but also that he wished he could locate the device because it contained lost data that could "serve in [his] defense[.]" Dkt. 115-1 at 1–2. For the first time, he also stated that he had lost the device sometime around April 2022. *Id.*; Dkt. 133, Ex. 1 at 3.

Cisneros' story regarding the location of the mobile phone changed again during an October 28, 2022 hearing before Judge Lane, during which he testified that he believed his brother may have stolen the phone, preventing its production, despite also testifying that his brother had been incarcerated until approximately late-September 2022, meaning he could not have caused the phone to go missing between April 2022, when he supposedly extracted and produced data from it, and September 2022. Ex. 30 (E. Cisneros Spoliation Hrg. Tr.) at 27:5-31:5. The Court did not find his account credible and granted Plaintiffs' motion. *Id.* at 5:17-23, 62:8-25 ("I smell a rat").

Shortly after that hearing, Cisneros found and produced the phone, which he testified at his August 22, 2023 deposition he located "in a basket up in -- up in a closet." Ex. 11 at 118:19–20.

SUPP.APP.093

But Plaintiffs were able to gain access to its contents only after several months of working with an expert vendor because Cisneros could not recall the passcode he had set to unlock the device. The coda to this long-standing dispute is a frustrating one: despite testifying at his deposition that he used the device on October 30, 2020 to text updates about the Bus's location (namely, Jason Pena-Ahuyon and Edward Nino), Ex. 11 at 118:6–14; 120:8–12, a forensic analysis of the phone did not recover *any* of these text messages. After a nearly 18-month dispute, Plaintiffs have been unable to recover key text messages regarding the intent or motive of the alleged conspiracy despite repeated testimony, attestations, and corroborating documentary evidence, that those communications at one time existed. *See* Ex. 31.

A similar fate has befallen the mobile phones and social media accounts of the non-party witnesses. *See, e.g.* Ex. 32 (explaining that third party K. Lee does "not have access to twitter, periscope, discord or any other info . . . due to censorship"); Ex. 33 at 121:24—122:22 (explaining third party C. Guzman was locked out of MeWe, Discord, and her email by AT&T due to a "password issue"); Ex. 34 at 21-23 (explaining that third party J. Pena got a new phone in 2021 and no longer has the old phone).

### d. *The Public Interest Cuts Against a Stay*

The public interest is served by courts applying their discretionary powers in an equitable manner. *See, e.g. All. for Hippocratic Med. v. Food & Drug Admin.,* No. 23-10362, 2023 WL 2913725, at *19 (5th Cir. Apr. 12, 2023) (observing in their analysis of the public interest factor that it is "it's unclear on this record that applicants have embraced 'the principles of equity and righteous dealing'") (quoting *Binh Hoa Le v. Exeter Fin. Corp.,* 990 F.3d 410, 416 (5th Cir. 2021) (noting that a party's own imperfect conduct can prejudice their request for equitable relief). Here, such equitable considerations weigh heavily against a stay, as Defendants have engaged in bad

SUPP.APP.094

faith gamesmanship that threaten the integrity of this litigation; *supra* at 8-11. For example, the Mesaros Defendants have repeatedly produced responsive and highly material documents at the last minute before depositions—including their own—thereby requiring last minute rescheduling or holding depositions open. Exs. 19 and 20.

While the Mesaros Defendants accuse Plaintiffs of misrepresenting the facts in this litigation, the evidence accumulated to date confirms Plaintiffs' version of events. It is the Mesaroses and other Defendants who have presented implausible and ever-shifting accounts of their own conduct, and who have extended discovery through obfuscation and delay. As just one example, in their response to Plaintiffs' Requests for Admission served on May 9, 2022, the Mesarsos Defendants provided the following explanation for their dangerous driving, and in particular, why they cut off the Biden-Harris bus by pulling out suddenly from the shoulder:

> [T]he bus *pulled up behind Defendant's vehicle as he was stopped*[5] *on the shoulder*, and the bus honked incessantly,[6] clearly indicating to Defendant that the driver of the bus wanted Defendant to pull back out into the driving lane in front of the bus. *The bus came to a near dead stop, as it pulled behind Defendant's vehicle on the shoulder*, honking.

Ex. 36 at 5 (emphasis added). About a month later, the Mesaros Defendants doubled down on this story, going so far as to send Plaintiffs' counsel a letter threatening Rule 11 sanctions if Plaintiffs did not withdraw the relevant allegations in the complaint. *See* Ex. 37. In a letter, counsel for the Mesaros Defendants describes the incident by saying, "*the Biden campaign bus pulled up behind the Mesaros's position on the shoulder, coming to a near complete stop (despite the clear lane ahead of the bus)*,[7] and continued honking incessantly until Robert Mesaros slowly and safely re-

---

[5] Video evidence shows that the Mesaroses' truck never came to a complete stop on the shoulder before pulling back onto the highway again. Ex. 35 (R. Mesaros Dep. Ex. 12) at 2:27 – 2:46.
[6] The bus honked once. Ex. 35 at 2:27 – 2:46.
[7] This statement in parentheses is demonstrably false. During the entire time that Robert Mesaros was driving on the shoulder, a gray truck with Trump flags was driving directly ahead of the bus

SUPP.APP.095

entered the right lane and pulled away." *Id.* at 2 (emphasis added). Counsel for the Mesaros Defendants asserted that this version of events is supported by the Plaintiffs' video evidence. *Id.*

But at his deposition, in describing his driving during his encounter with the Biden-Harris bus, Robert Mesaros stated at first that he "was trying to pull even further towards the grass" but the bus "pulled over [the] white line" that runs along the side of the highway and on to the shoulder behind him. Ex. 38 at 163:21-22; 164:12-13;165:7-10. Yet when confronted with the video—the same video the Mesaroses' counsel asserted supported their version of events—Robert Mesaros walked back his claim. *Id.* at 165:7-22. He acknowledged that the bus could not have crossed the white line, since no rumble strips can be heard in the video, and that the bus stayed in its lane. *Id.* at 165:20-22; 168:2-6; 168:25-169:8. Robert also acknowledged that the bus was merely driving slowly, in its lane, but "[did]n't come to almost a complete stop." *Id.* at 169:22-25. In response to the bus "slowing" in its lane "and simultaneous[ly] honking," Robert did not to pull forward on the shoulder or pull into the grassy median or even put on his hazards—which he acknowledged "was an oversight." *Id.* at 170:19-171:2. Instead, Robert pulled out in right front of the bus. In short, Robert has admitted that the two key facts underlying his story—1) the bus came to a near dead stop 2) behind him on the shoulder—were untrue, and that there were other, far safer options at his disposal.

Although in their stay motion the Mesaroses continue to summarily deny the truth of Plaintiffs' allegations as to Robert's driving, their *own* story has changed. Now, instead of claiming the bus came to "almost a complete stop" "behind the Defendants' vehicle on the shoulder," they now admit the bus was "deliberately brought […] to a crawl in the right lane." Ex. A. at 4. This

---

in the right lane. Ex. 35 (R. Mesaros Dep. Ex. 12) at 2:27 – 2:46. In fact, after pulling out suddenly from the shoulder, Robert Mesaros had to hit his breaks in order to squeeze in between the bus and the truck in front of it. *Id.*

SUPP.APP.096

distinction is more than semantics. In the Mesaroses' original story, they were stopped on the shoulder and the bus pulled over onto the shoulder behind them, slowing to almost a stop and honking, despite an open lane ahead. But as the video shows and Robert Mesaros now admits, that is not what happened. The Mesaros Defendants now claim they "[got] out of the way" of the bus by pulling suddenly in front of it. Ex. 38 at 166:15-19. A decision somehow justified by the fact that the bus, which was driving slowly in an adjacent lane and was trapped behind a slow-moving Trump Train vehicle, honked. *Id.* at 170:19-171:2. Despite this meaningful adjustment to their sworn testimony when faced with documentary evidence, the Mesaros Defendants make no acknowledgement of the change, let alone provide a justification for it. Instead, their Motion and attached Fact Appendix imply this has been their story all along.

The Mesaros Defendants mischaracterize other Defendants' conduct, as well. Discussing the collision between Cisneros and a campaign staffer, the Mesaros Defendants describe Cisneros's conduct as "pull[ing] forward in a normal fashion," "driving normally in the right lane," and "legally and safely driving." Dkt. 229-1 at 4.

Video evidence contradicts this version of events. For example, the video cited as Exhibit F in the Mesaros Defendant's Fact Appendix depicts the bus, followed closely by the staffer vehicle, changing from the right lane to the middle lane, before sliding back into the right lane. As the bus merges back into the right lane, Cisneros' truck speeds up, preventing the staffer vehicle from following, and tailgates the bus so closely that he is forced to break to avoid a collision. Although this video cuts off before the collision, other videos show that shortly thereafter, rather than yield to the staffer vehicle which was attempting to stay with the bus, Cisneros used his truck to push the staffer vehicle back into the middle lane. Ex. 39.

If these videos left any room for doubt about what happened, Defendant Cisneros resolved it. The day of the incident, he posted a video of the collision saying, "Texas welcomes Biden-Harris. We serve brisket, sausage, leg quarters, Whataburger, and 35-inch tires," and he identifies his vehicle as the one "slamming the f****r." Ex. 40 (expletive removed). Later, at his deposition, he described how he "shot up" when the bus changed lanes. Ex. 11 at 149:23-150:1. And, when asked about why he sped up to get right behind the bus, he responded, "Because I can. […] Because I wanted to. […] Because that's what I wanted to do." *Id.* at 149:14-23.

These are just some of the examples. Defendants' request for a stay pending appeal is just the latest in a pattern of gamesmanship and dishonesty that threatens the integrity of this litigation. The public interest counsels against a stay.

## <u>CONCLUSION</u>

For the foregoing reasons, the Mesaros Defendants' and Defendant Park's motions to stay the case pending resolution of their motions for reconsideration and any interlocutory appeal should be denied.

Respectfully submitted,

**DATED:** September 29, 2023.

By: *  /s Samuel Hall*

**TEXAS CIVIL RIGHTS PROJECT**
Ashley Fernandez Dorsaneo (TX Bar No. 24127393)
Christina M. Beeler (TX Bar No. 24096124)
Sarah Xiyi Chen (CA Bar No. 325327) (*pro hac vice*)
Veronikah Rhea Warms (TX Bar No. 24132682) (*pro hac vice*)
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
Telephone: (512) 474-5073

- 15 -

Facsimile: (512) 474-0726
Email: ashley@texascivilrightsproject.org
christinab@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

**THE PROTECT DEMOCRACY
PROJECT, INC.**
John Paredes (NY Bar No. 5225412) (*pro
hac vice*)
Orion Danjuma (NY Bar No. 4942249) (*pro
hac vice*)
The Protect Democracy Project, Inc.
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
john.paredes@protectdemocracy.org
orion.danjuma@protectdemocracy.org

Cameron O. Kistler (DC Bar No. 1008922)
(*pro hac vice*)
Cerin Lindgrensavage (DC Bar No.
1741602) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro
hac vice*)
Anne Harden Tindall (DC Bar No. 494607)
(*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, D.C. 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
cameron.kistler@protectdemocracy.org
cerin.lindgrensavage@protectdemocracy.org
joanna.suriani@protectdemocracy.org
anne.tindall@protectdemocracy.org

Benjamin L. Berwick (MA Bar No. 679207)
(*pro hac vice*)
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
ben.berwick@protectdemocracy.org

SUPP.APP.099

Jared Fletcher Davidson (LA Bar No. 37093)
(*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Meryl Conant Governski (DC Bar No. 1023549) (*pro hac vice*)
Jamielah Yancey (DC Bar No. 1619055) (*pro hac vice*)
Rebecca Heath (DC Bar No. 1644402) (*pro hac vice*)
Aaron E. Nathan (NY Bar No. 5478227) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
mgovernski@willkie.com
jyancey@willkie.com
rheath@willkie.com
anathan@willkie.com

Madeleine Tayer (NY Bar No. 5683545)
(*pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

SUPP.APP.100

Email: mtayer@willkie.com

***Attorneys for Plaintiffs***

**SUPP.APP.101**

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2023, a true and correct copy of the foregoing has been served on all counsel of record and Defendants Steve Ceh and Randi Ceh through the Electronic Case Filing System of the Western District of Texas in compliance with the Federal Rules of Civil Procedure and by email as agreed by the parties.

**DATED:** September 29, 2023.

By: _/s Samuel Hall_

SUPP.APP.102

**EXHIBIT A**

**Factual Appendix to Plaintiffs' Consolidated Opposition to Motions for Stay**

I.     <u>Trump Trains in 2020</u>

In the lead up to the 2020 presidential election, so-called "Trump Trains" were organized across Texas, as well as other states across the country. Trump Trains—sometimes referred to as "flag runs"—were events at which groups of cars bearing Trump flags and other Trump paraphernalia would drive in a parade-like formation to show their support for Donald Trump. Ex. 41 at 2. In Central Texas in the fall of 2020, there were at least eight active Trump Train groups: the New Braunfels Trump Train ("NBTT"), the Alamo City Trump Train ("ACTT"), the San Marcos Trump Train, the Wimberly Trump Train, the Boerne Trump Train, the Seguin Trump Train, the Schertz/Universal City Trump Train, and the San Antonio Trump Train. There were other Trump Trains in South Texas, including McAllen and Corpus Christi, as well as MAGA Drag the Interstate—a national organization based on a similar model of showing support for President Trump through flag runs, organized by Keith Lee—in operation at the same time. The goal of these groups was largely the same, the membership often overlapped, and the leadership was, to some degree, in contact as demonstrated by Defendant Randi Ceh's testimony that "everybody went to each other's" Trump Trains, explaining of the Alamo City Trump Train in particular "they came to ours and sometimes we went to theirs." Ex. 14 at 58:11–59:10, 60:9–13. Defendant Randi Ceh and her husband Steve Ceh (together, the "Ceh Defendants") both testified to attending other Trump Trains as well as a MAGA Drag the Interstate event in the summer of 2020 along with other Trump Train members. *Id.* at 65:1–67:12; Ex. 8 at 74:7–75:5.

II.     <u>Founding and Growth of the New Braunfels Trump Train</u>

The Ceh Defendants were leaders and founders of the New Braunfels Trump Train. Ex. 42 RFA No. 7; Ex. 14 at 48:24–53:1; Ex. 8 at 76:25–78:8; Ex. 41 at 2. The Ceh Defendants founded

the Trump Train in July 2020. Ex. 14 at 48:23–49:4; Ex. 8 at 74:1–6. Randi Ceh testified that the NBTT began as a family activity—the Cehs and their children began "driving around at the beginning of the year, 2020" with their "Trump flags on" their car. Ex. 14 at 49:11–20. She further testified that, as the Ceh Defendants and their children drove around town while flying their flags, people began to approach them and ask to be involved in what they were doing. *Id.* at 49:21–25. The Ceh Defendants then began to formalize what it meant to be in the New Braunfels Trump Train and organize events. Ex. 41 at 2-3.

The Ceh Defendants first arranged meetings at a Buc-ee's gas station parking lot, but when the size of the gathering grew to over 100 cars, Buc-ee's asked them to find a different meeting place. Ex. 14 at 51:1–15. By July 2020, the Trump Train had over 100 regular attendees and had begun meeting in the parking lot near an Ulta across the street from Buc-ee's to accommodate the number of participants. *Id.* at 51:19–21. The Trump Train eventually moved to the Rockin' R parking lot as the number of regular attendees approached 500 vehicles. Ex. 8 (S. Ceh Depo. Tr.) at 80:12–17. A typical Trump Train meeting began with a speech and prayer led by Defendant Steve Ceh, *id.* at 74:16–17, 85:25–86:14, after which Defendant Randi Ceh would pass out route maps and the members would drive off. *Id.* at 185:6–8; Ex. 41 at 2; Ex. 43 at 4.

Defendant Randi Ceh was responsible for organizing, coordinating, and directing weekly Trump Trains. Ex. 41 at 2, 4. She selected the routes that Trump Train participants would drive and often assisted in selecting the "route leaders"—the individuals chosen to drive at the head of a specific Trump Train route. Ex. 14 at 52:15–53:1; Ex. 8 at 80:18–3; Ex. 41 at 2, 4. Defendant Randi Ceh was also a creator and an administrator of the NBTT Facebook group along with her eldest son, Cody Ceh. Ex. 14 at 51:17–23; Ex. 41 at 3, 5; Ex. 43 at 3; Ex. 44. As an administrator of the NBTT Facebook group, a private Facebook group visible to members only, Defendant Randi

2

Ceh would review and decide whether to approve requests to join the group. Ex. 14 at 152:20–153:2. She monitored all posts on the NBTT Facebook page, including at one point activating a setting that required an administrator of the page to personally approve each and every post made by a member to the NBTT Facebook group before it would become visible on the page. *Id.* at 153:5–154:1. Defendant Randi Ceh explained that having control over the NBTT Facebook page was important "because we [the Ceh Defendants] had a certain feel that we wanted the Trump Train to be; family, fun, faith." *Id.* at 156:3–7; *see also* Ex. 43 at 3. The Ceh family also created an Instagram page for the NBTT. Ex. 14 at 160:1–161:2. The Ceh Defendants operated several other social media accounts for the NBTT, including MeWe, Discord, and Parler accounts. Ex. 28 Rog. No. 9.

### III.   Trump Train Membership of Other Defendants

The other Defendants were each involved with Trump Trains prior to the October 30, 2020 Trump Train. Defendant Eliazar Cisneros began attending Trump Trains in San Antonio as part of the Alamo City Trump Train group on "day one." Ex. 11 at 51:21–23; Ex. 45 at 10:10. Defendant Cisneros has said that he doesn't "think [he] ever missed one" ACTT event, *id.* at 10:10, testifying that he participated in those events "95 percent of the time." Ex. 11 at 51:21–23. Each Sunday, Defendant Cisneros attended Alamo City Trump Train events. *Id.* at 52:1–3. Shortly after joining the ACTT, he began attending New Braunfels Trump Trains each week on Thursdays as well. *Id.* at 53:15–20; 56:23–57:3.

In September 2020, Defendants Joeylynn Mesaros and Robert Mesaros (together, the "Mesaros Defendants") saw a Trump Train drive through New Braunfels and past their home for the first time. Ex. 21 at 34:20–23. The Mesaros Defendants decided to join. *Id.* at 35:4–23. Three weeks after that first sighting, they began participating in the weekly Thursday night meetings and

3

flag runs held by the NBTT. *Id.* at 35:12–23; 53:19–54:11; 57:10–20. Their involvement with the NBTT soon grew to participating in events several days a week, Ex. 46, including their occasional participation in ACTT events; Schertz Universal City Trump Trains; a "Come and Take It" flag run in Gonzales, Texas; and Trump Train social events like barbecues and celebrations of Donald Trump's birthday. Ex. 21 at 54:12–55:10, 56:1–9. The Mesaros Defendants' engagement with the Trump Train community continued online, as they were both members of the NBTT and ACTT Facebook groups where members shared information about upcoming Trump Trains and related events. *Id.* at 57:10–20.

Defendant Dolores Park filmed herself driving in numerous Trump Trains prior to October 30. Defendant Park filmed a video of herself driving in San Antonio as part of a weekly pro-Trump flag run as early as October 10, 2020. Ex. 47. On October 16, 2020, Defendant Park posted to Instagram, captioning her post "TRUMP Day is EVERY Day" followed by a train emoji. Ex. 48. The October 16, 2020 Instagram post included a video of Defendant Park driving in a pro-Trump flag run that day in San Antonio. *Id.* Defendant Park not only drove in these weekly flag run events in the month leading up to the Trump Train that took place on October 30, 2020 (the "October 30 Trump Train"), she also promoted these events and solicited the participation of others through posting invitational flyers for the events on her social media. *E.g.*, Ex. 49.

## IV.  <u>Trump Trains, Community Confrontation, and Violence</u>

The Ceh Defendants' control over the organization of Trump Train meetings and social media extended to control over what conduct and behavior was deemed acceptable during Trump Trains by Trump Train members and participants. And, the Cehs were well aware of complaints related to the conduct of Trump Train members. *See* Ex. 43  at 5. Defendant Steve Ceh testified that he generally fielded a few calls per month complaining about the Trump Train due to noise

and disorderly behavior. Ex. 8 at 84:23–85:24; *see also* Ex. 43 at 5. For example, on September 4, 2020, Defendant Randi Ceh posted on the NBTT Facebook group to notify members that if they "come across any complaints about the Trump Train," they should "DM [Randi] [their] concerns or call Steve Ceh." Ex. 50. New Braunfels Trump Trains regularly drove a route—selected, like all other routes, by Defendant Randi Ceh—down New Braunfels' centrally located Common Street. In early September 2020, a resident of Common Street stood outside their home with a sign noting "Baby sleeping, people live here," which made local news. Ex. 14 at 69:9–70:18. As a result of complaints by Common Street residents, the Trump Train was asked by police to reroute to avoid Common Street. This reroute caused consternation within the Trump Train community. For instance, a post in the NBTT Facebook group by Defendant Randi Ceh on behalf of her husband, Defendant Steve Ceh, addressed the controversy, acknowledging the frustration of Trump Train members, and noting that Defendant Steve Ceh had participated in "many meetings" with the Chief of the New Braunfels Police Department ("NBPD"), and that the Trump Train would continue to avoid Common Street in part to continue the "good relationship" between the NBPD and the NBTT. Ex. 5, Ex. 14 at 74:9–18. Defendant Randi Ceh testified that the NBPD would regularly show up to Trump Train events and help manage traffic flow. Ex. 14 at 77:23–78:14. The Ceh Defendants' request that all complaints about the Trump Train be funneled through them demonstrated an awareness that certain members of the New Braunfels community took issue with the Trump Trains.

The Cehs were additionally aware of other confrontational interactions, verging near violent at times, between the Trump Train members and other members of the New Braunfels community. Ex. 41 at 4; Ex. 43 at 5. The Ceh Defendants knew that at a Trump Train meeting on September 4, 2020, a truck dragged a Black Lives Matter ("BLM") flag on the ground while

SUPP.APP.107

driving. Ex. 14 (R. Ceh Depo. Tr.) at 81:1–83:4. Defendant Randi Ceh testified that this incident became one that "the whole blessed town was complaining about" and that the "news media" became involved. *Id.* at 83:1–17; 164:19–165:21. She further testified that Defendant Steve Ceh "took the lead" in dealing with the aftermath of the BLM flag-dragging incident. *Id.* at 82:22–24. But the Ceh Defendants did not necessarily discourage such behavior—instead, they sometimes encouraged confrontation. That same day, after the BLM flag-dragging incident, Defendant Randi Ceh posted a message from Defendant Steve Ceh to the NBTT Facebook noting: "What a great night! What a crowd of Patriots! It does not take a majority to prevail . . . but rather an irate, tireless minority, keen on setting brushfires of freedom in the minds of men." Ex. 52. Similarly, despite knowing that the Trump Train had received noise complaints and that NBPD had asked the Trump Train to keep the volume down, Defendant Steve Ceh encouraged members to "please when you drive through New Braunfels, if you have a loud radio, turn on some patriotic music, put the window down and let them have it." Ex. 8 (S. Ceh Depo. Tr.) at 162:48–163:4; Ex. 53.

Additionally, on September 25, 2020, a group of young Trump Train members, including the Ceh Defendants' daughters Hannah and Alyssa Ceh, were involved in an altercation at the Buc-ee's and Willie's parking lots with other members of the New Braunfels community. Ex. 14 (R. Ceh Depo. Tr. at 97:1–104:1.) At the time, Defendant Randi Ceh posted on Facebook that a group of people "came through antagonizing, causing trouble, weaving in and out, almost hitting people" in the parking lots and "being aggressive toward our people." *Id.* at 102:16–103:10. Defendant Randi Ceh acknowledged that this kind of assaultive behavior, "when somebody's coming at you head-on," was "harassment." *Id.* at 118:13–119:6.

Through their months of participation in Trump Train events, and commensurate interaction with the Trump Train community both online and in-person, the other Defendants also

learned that Trump Train events, and Trump Train members, could be harassing, assaultive, and often dangerous, but that did not deter their participation in those events. *See* Ex. 54. In fact, the many of the Defendants looked favorably and approvingly upon the aggression displayed by the Trump Trains. When presented with a video of Trump Train members surrounding and harassing non-members at an event, Defendant Joeylynn Mesaros stated that the Trump Train members "were trying to get the people to leave. They were at our event." Ex. 21 at 146:2–7. In that same video, a Trump Train member threw a bottle of Big Red soda at a non-member. Ex. 54. Defendant Joeylynn Mesaros commented in response to that video, "whoever threw that Big Red at her is my spirit animal," and then posted a laughing emoji. Ex. 21 at 145:18–146:1. She testified to enjoying the combative political attitudes of Trump Train members, explaining that she found posts about "making liberals cry" to be "funny," and that making liberals cry was "easy to do." *Id.* at 139:15–140:6. Defendant Park used similar language while participating in Trump Trains. In the video she posted to her Instagram on October 16, 2020, in which she is driving in a flag run that appears to be a Trump Train, Defendant Park screams "make the liberals cry" into the camera. Ex. 55. Defendant Joeylynn Mesaros was also aware of the incident in which a driver dragged a BLM flag behind their truck, but that did not deter her from attending future events. Ex. 21 at 140:7–142:2. Indeed, Defendant Joeylynn Mesaros testified to enjoying when her personal expression upset other people. *Id.* at 136:20–137:2.

Defendant Cisneros similarly enjoyed confrontation with political opponents and sought out opportunities, beyond Trump Trains, to harass, intimidate, and assault those with differing political perspectives than his own. In June 2020, Defendant Cisneros patrolled Black Lives Matter protests in San Antonio while visibly armed, Ex. 56, but leaving the gun he called his "Antifa meat tenderizer" at home. Ex. 57. On September 12, 2020, Defendant Cisneros drove his truck into a

SUPP.APP.109

crowd of Black Lives Matter protesters who were marching on the streets of San Antonio, drawing frightened screams from the crowd. Exs. 58, 59. He testified that he drove into the crowd of protestors "just to make a statement." Ex. 11 at 41:8–9. When asked whether he knew if he put anybody in fear of being hit by his truck, he testified, "I hope so. I hope I instilled a little bit of fear, yeah." Ex. 11 at 43:16–21. He has repeated his use of violent language such as "Antifa meat tenderizer" in interviews, Ex. 60 at 7:40, and asked Defendant Joeylynn Mesaros to make him a shirt that says "don't make me Rittenhouse your ass" in reference to Kyle Rittenhouse, who shot and killed someone during a protest. Ex. 11 at 26:11–7.

## V.     **A Battle Between Good and Evil**

The Defendants each believed that the 2020 election was a battle between good and evil, in which the Democratic Party and affiliated candidates—including then-Presidential candidate Joe Biden and Vice-Presidential candidate Kamala Harris—were evil. As a result, the Defendants believed that extraordinary measures were justified in order to ensure that Democrats were defeated. On October 26, 2020, Defendant Randi Ceh commented on a post in the NBTT Facebook group that "[t]hese Demoncrat people are the epitome of evil." Ex. 61. She also testified that she thought the 2020 election was a "good versus evil" election. Ex. 14 at 291:3–5. Defendant Randi Ceh explained that "in the end, evil will not win" and believed that "Satan was on the ballot" in the 2020 election. *Id.* at 288:1–21. Defendant Randi Ceh further testified that she believed that over the last fifty years, politics has become a battle of good versus evil. *Id.* at 309:16–310:4.

Defendant Steve Ceh testified that during the 2020 Presidential election he believed President Biden was "wicked and evil" and that the election was one "between good and evil," and that he holds those opinions to this day. Ex. 8 at 63:6–13, 64:3–25. On election day, November 4, 2020, he posted on the NBTT Facebook page, via Defendant Randi Ceh, that "We knew this is an

8

evil vs good election. Evil will not win. They are in desperate actions due to God's revival coming." Ex. 62. He testified that "at this time, just like in the times of the 1776, you want to revive the spirit of patriotism in our country . . . Reagan said we're only one generation away [] from losing our freedoms" and explained that with the "unprincipled men that we have in office now, they will take" people's freedoms away." Ex. 8 at 105:16–106:4.

Defendant Steve Ceh further testified that he believed that President Biden and Vice President Harris were "people who want to take away our God-given freedom," and explained that "you have evil killing our kids, trying to say that you can change your gender . . . . That's plain old evil. And who pushes that? The Democratic Party." *Id.* at 207:18–208:1. He further testified that "is Biden for abortion? Yes. That's evil. Is Biden for all this gender stuff going on that they're giving these kids puberty blockers and all this stuff? Is he for it? Yes. Gosh, I mean, we have a constitution that the man breaks every day within . . . the enumerated powers that Congress has. I mean, he breaks these every day . . . there's a lot of evil going on." *Id.* at 209:1–13. He also testified that he believed President Biden and Vice President Kamala Harris were anti-American because they "have Marxist views," *id.* 209:14–16, and they were "absolutely" evil, *id.* at 232:21–233:2.

Defendant Robert Mesaros testified that he believed there was "probably some truth" to concerns that the Democratic Party comprised "Satan worshipping pedophiles." Ex. 38 at 52:3–16. He clarified that he "would think some of these people are Satan worshippers. That's my opinion." *Id.* at 52:17–22. When asked what he thought the stakes of the 2020 election were, Defendant Robert Mesaros testified that "it's always a concern when there's, you know, evil in the world and those people are in power." *Id.* at 54:10–12. Defendant Joeylynn Mesaros testified that she thought the 2020 election was an election between good and evil because she "believe[s] everything has something to do with good and evil." Ex. 21 at 117:8–11. She further testified that

SUPP.APP.111

"what is happening in our country with open borders and sex trafficking and the loss of so many basic freedoms is in complete opposition to the freedoms that God gives us. And so then categorically by the Bible I would align that with evil." *Id.* at 117:12–17. Though she testified that "it's not just one party or another" she "do[es] believe that the Democratic Party more aligns or is pushing the progressive laws through, and, and resulting in the loss of so many people's basic freedoms." *Id.* at 117:18–25.

Defendant Park similarly believed the 2020 election was a battle between good and evil, posting on October 30, 2020 on Facebook a picture of Donald Trump captioned "this man and this election is all that is standing between good and evil." Ex. 63. On November 7, 2020 she also posted on Facebook a photo captioned "Darkness vs. light" which goes on to say that "the Devil descends on our house" in reference to Biden supporters. Ex. 64. As proof that Biden supporters are "evil" Defendant Park points out that they do not carry flags and wear the color black. *Id.* She also posted on Facebook saying that "this is a war between good and evil," and that "we can see pictures of your children in sunshine and fight evil." Ex. 65.

## VI.    The Planning of the October 30, 2020 Trump Train

All of the Defendants were aware that the Biden-Harris Campaign bus would be passing through Texas prior to October 30, 2020. Defendant Cisneros learned that the Biden-Harris Campaign bus would be driving through Texas sometime in mid-October 2020. Ex. 31. In the lead up to October 30, 2020, Defendant Cisneros and non-party witness Jason Peña Ahuyon planned to "welcome" the Biden campaign by organizing a Trump Train that would target the bus as it drove through town. *Id.* Defendant Cisneros described "laughing and trying to come up with a plan to welcome [the Biden-Harris campaign] to Texas so to speak." *Id.* Defendant Cisneros testified to working with Mr. Peña Ahuyon, to coordinate a Trump Train for October 30, 2020. Ex. 11 at

**SUPP.APP.112**

114:7–10. Mr. Peña Ahuyon helped Defendant Cisneros further their plan, including by posting "#OperationBlocktheBus RN" on October 30, 2020 to thousands of ACTT Facebook group members. *Id.* at 113:7–114:1. Defendant Joeylynn Mesaros was also aware, prior to October 30, 2020, the Biden-Harris Campaign bus was being followed through Texas by Trump Trains, including with a hearse. Ex. 21 at 153:7–25. She admitted to seeing videos of the bus being followed, and that she felt "excited" when she learned the bus was coming through New Braunfels. *Id.* at 153:4–25.

Several Trump Train organizations across Central Texas communicated and coordinated to arrange and promote a Trump Train to accompany the Biden-Harris bus through Central Texas. Ex. 41 at 6; Ex. 43 at 6. Defendant Randi Ceh testified that she first learned on the news that the Biden-Harris Campaign would be coming to Texas sometime before October 29, 2020. Ex. 14 at 123:25–124:10. She further testified that, on the evening of October 29, 2020 she learned the Biden-Harris bus would be driving through New Braunfels via a text message from one of the leaders of the Alamo City Trump Train. *Id.* at 124:18–125:9. Defendant Randi Ceh testified that she was added to a text message group with the leaders of the Alamo City Trump Train because, she testified, "they were going to – *we were going to* have a Trump Train with the Biden bus." *Id.* at 125:10–15 (emphasis added); Ex. 66. Defendant Randi Ceh agreed to post the information about the planned Trump Train for the Biden bus on the NBTT Facebook page. Ex. 14 at 126:4–5; Ex. 41 at 6. That same day, posts by non-party witness Chantel Guzman Peña on the Trump Train MeWe page described that the Biden bus would be traveling from San Antonio through San Marcos and eventually to Austin, and noted that the New Braunfels and San Marcos Trump Trains would be coordinating a Trump Train to follow the bus. Ex. 67 at 38.

SUPP.APP.113

Defendant Park testified in her Interrogatory responses that she learned about the October 30 Trump Train through a group text the evening of October 29, 2020, which included non-party witnesses Sarah Hill, Malorie Lerma, and Laura Kirby. Ex. 68 Rog. No. 4. Defendant Park has referred to the October 30 Trump Train as a "Trump Style Meet & Greet." *Id.* Rog. No. 2. Defendant Park testified that she created a flyer for the event that same night, which she posted to her Instagram and Facebook. *Id.*; Ex. 69; Ex. 70. Defendant Park posted a second flyer to her Instagram account, this one referring to a "Deplorable / Chump Style" event. Ex. 71.

## VIII. <u>Coordination Amongst the Defendants</u>

On October 30, 2020, the Defendants intended to interfere with the Biden-Harris Campaign bus and coordinated to do so. Defendant Steve Ceh testified to receiving a call that day informing him that the Biden-Harris Campaign was heading north, and he passed that information on to his family Ex. 8 at 166:1–3; Ex. 72 at 3. Defendant Randi Ceh and the leaders of other Central Texas Trump Trains coordinated throughout the day by text message to share information about the location of the Biden bus and arrange meet up points. Ex. 66; Ex. 14 at 192:1–197:25, 206:1–8, 207:15–25; Ex. 41 at 6; Ex. 43 at 6. Defendant Randi Ceh shared key updates about the bus in the NBTT Facebook group, posting that if people wanted to "follow the Biden bus" they should "be at Solms Exit and I-35 between 1:15 and 1:30 with Trump Flags ON!!" Ex. 73. Defendant Randi Ceh promised to "keep this updated in the comments as [she] hear[d] the exact time" of the bus' location, *id.*, and she did, posting later that Trump Train members "still have time if [they] want to meet at Solms Exit 183 to catch the Biden bus! The bus is currently at AT&T Center . . . there are 13 Trump Train vehicles there now." *Id.* Defendant Randi Ceh also testified that she thought Vice Presidential Candidate Kamala Harris "might be visiting San Antonio" and that she might have been on the bus as a result. Ex. 42; Ex. 14 at 207:1–208:25.

12

Defendant Randi Ceh admitted that she coordinated participation in the October 30, 2020 Trump Train by posting on the NBTT Facebook "telling everybody where they were all meeting" to follow the bus. *Id.* at 142:25–143:25. She testified that she provided regular updates on the status of the bus to the NBTT Facebook page by checking in with the leaders of other Trump Train groups for the most up-to-date information about the bus' location because "[she] had people standing – sitting on the side of the road" waiting for the bus and she "wanted to know how long they were going to have to sit there on the side of the road." *Id.* at 192:6–25. Defendant Randi Ceh also relayed the same information by text message to her family, including her daughter Hannah Ceh, who was driving in the Trump Train.     Ex. 74; Ex. 75; Ex. 41 at 6.

Defendant Joeylynn Mesaros testified that, pulling onto the highway on October 30 to chase down the Biden-Harris Campaign bus "was awesome" and agreed that an appropriate analogy for it was being "patriotic wasted." Ex. 21 at 170:25. Defendant Cisneros was so eager to find the Biden-Harris bus that he "stationed" himself about ten to fifteen miles south of San Antonio on I-35 where he waited for approximately two to three hours to intercept the bus. Ex. 31. At around 1:38 PM on October 30, 2020, Defendant Joeylynn Mesaros messaged a now-deleted Facebook user that it was "go time on election countdown" and that she and her husband were "raging to chase down the Biden bus." Ex. 76; Ex. 21 at 169:3–24. In response to that Facebook post, the user commented "[i]t looks like there's others ready to fuck shit up too," which Joeylynn Mesaros testified she understood to be slang for trying to "be noticed." *Id.* at 169:2–170:24. At 1:54 PM, Mr. Peña Ahuyon began to use "#OperationBlockTheBus" to coordinate Trump Train movement in real time. Ex. 77; Ex. 11 at 113:7–23.

At approximately 1:45 PM that day, Defendant Park testified that she was at a Planned Parenthood clinic "praying vigil" when she received a text message from Sarah Hill informing her

SUPP.APP.115

that the Trump Train was running late and that there was still time to join. Ex. 68 Rog. No. 4. Defendant Park then drove to the AT&T Center in San Antonio, arriving at roughly 2:15 PM. *Id.* Rog. No. 4. Defendant Park drove to the AT&T Center because she understood the Biden Campaign bus was meeting there, and that the Trump Train was meeting there to "greet" the bus. *Id.* Rog. No. 2, 4. Upon arriving, she found the Biden bus and supporters at the AT&T Center and therefore moved to a parking lot across the street where other Trump Train vehicles were parked to wait for the bus to begin driving. Ex. 78 at 6. Defendant Cisneros also arrived at the AT&T Center around the same time. Defendant Cisneros left his "station" south of San Antonio after receiving direct reports about the location of the bus from one of the leaders of the Alamo City Trump Train—non-party witness Edward Nino, who was coordinating with Defendant Randi Ceh and other Central Texas Trump Train leaders to organize the Trump Train on October 30, 2020. With Mr. Nino's help, Defendant Cisneros located the bus at the AT&T Center in San Antonio. Ex. 45 at 14:12–15:15. With eyes on the bus, Defendant Cisneros started a livestream on Facebook, giving an estimate on when the bus would arrive in New Braunfels, and telling his followers to "get ready." Ex. 79 at 0:35–0:40, 0:14–0:16.

When the bus pulled out of the AT&T Center parking lot, Defendant Park, Defendant Cisneros, and other Trump Train drivers followed as a pack. Narrating her movements in a Facebook Live video, Defendant Park explained that she and the other Trump Train drivers she was coordinating with were "following a bunch of cars, you want to know why? Biden is here. Biden bus is here. We're following the Biden bus." Ex. 80 at 00:45. She then laughed. *Id.* Defendant Park went on to state that there were "about fifty Trump cars here and about ten Biden cars," she then laughed and repeated "so funny." *Id.*

SUPP.APP.116

Defendants Park, Cisneros and the rest of the Trump Train continued to follow the Biden bus as it moved north towards New Braunfels, at which point the Mesaros Defendants joined. Ex. 81. In another Facebook Live video taken as the bus approached New Braunfels, Defendant Park explained "until Tuesday we're fighting" and announced that "we are all following the Biden bus and there is no one with a flag for Biden. Not one." *Id.* at 00:40. Like Defendants Cisneros and Park, the Mesaros Defendants drove in coordinated fashion with other Trump Train members in their attempt to chase down and interfere with the Biden-Harris Campaign bus. Defendant Joeylynn Mesaros coordinated with fellow Trump Train member, Shana Evans, by phone "to figure out where everybody was." Ex. 21 at 173:17. Once she located the Trump Train, she described pulling onto the side of the highway to take a video of the Trump Train, and easily being able to "fall in line with the Trump Train" again because "somebody let[] us in." *Id.* at 174:2–3. Robert Mesaros similarly testified to being able to easily join, leave, and re-join the Trump Train that day because other Trump Train drivers would "le[ave] an opening." Ex. 38 at 149:24–150:10. Defendant Joeylynn Mesaros testified that driving in concert in this manner was "pretty common," and that in Trump Trains, "when somebody's pulled over, people make an opening for you to get back with your group." Ex. 21 at 197:13–19.

## IX. Harassing and Assaulting the Bus

The Defendants drove in a deliberately, and knowingly, dangerous manner around the bus on October 30, 2020 in an attempt to surround, harass, assault, and intimidate the bus, and did so in coordination with each other and other Trump Train drivers.[1] At various points in her Facebook

---

[1] In addition to the examples described in this section, the 42:04 minute video Plaintiff Davis captured from her vantage point at the front of the bus, produced to Defendants as Plaintiffs00000070 and attached to the Mesaros Defendants' motion at Exhibit E, captures repeated instances where Defendants and their co-conspirators engaged in assaultive, harassing, and/or intimidating driving tactics. *See, e.g.*, Dkt. 229, Ex. E at 04:40-05:10 (bus closely

Live videos, both of Defendant Park's hands appear to be off the steering wheel—one holding a flag out of the sunroof of her car, the other holding her iPhone—and she repeatedly looks into the camera instead of onto the interstate while driving. *See* Ex. 80; Ex. 81 at 00:50, Ex. 82 at 00:45. At one point, Defendant Park even stated that "if my husband sees this he is going to kill me for driving like this." Ex. 82 at 2:30. Later, she accelerated in order to drive in front of the bus, and once arriving there promptly took both hands off the steering wheel, held both her camera and flag through the sunroof of her car, and stated that "a policeman" passing by "might get mad at [her]" due to her poor driving. Ex. 82 at 4:30; *see also* Ex. 43 at 7.

The other Defendants also drove dangerously. When joining the Trump Train, the Mesaros Defendants initially accelerated past the bus, Ex. 35 at 1:44, but then adjusted their driving to match the slow pace of other Trump Train drivers in front of the bus, *id.* at 1:47. Shortly thereafter, the Mesaros Defendants pulled onto the shoulder along with two other Trump Train drivers, including Defendant Cisneros. *Id.* at 2:25. Defendant Robert Mesaros acknowledged that he "should have" used his hazard lights to pull over, but he did not, Ex. 38 at 170:25–171:2, and he testified that he "did not" think about pulling further into the shoulder or onto the median, *id.* at 170:19–24. Though Defendant Robert Mesaros testified that he pulled over in order to fix one of the carabineers holding the Texas flag flying from his truck, *id.* at 147:1–7, it seems he actually

---

surrounded by five Trump Train vehicles); 07:20-07:34 (bus changes lanes to avoid Trump Train vehicles and red Toyota Tundra cuts dangerously close to maintain proximity to bus); *id.* at 08:30-08:46 (break checking by grey Ford F-150, bringing it within feet of the bus, and boxing in from center lane by red Toyota Tundra); *id.* at 10:55-11:35 (several vehicles, including the Mesaros Defendants, pull from lanes of traffic to shoulder at Exit 206 before re-entering traffic directly in front of bus); *id.* at 14:20-14:45 (grey Ford F-150 drives closely in front of the bus and brings it to a crawl while red Toyota Tundra and other vehicles move freely at higher speeds in center lane); *id.* at 16:00-17:06 (similar; grey Ford F-150 straddles dotted line to prevent bus's forward progress); *id.* at 18:20-19:00 (grey Ford F-150 and white Toyota Tundra weave in and out of vehicles to remain near bus and staffer in white SUV as bus attempts to move to center lane); *id.* at 24:30-26:25 (white Toyota Tundra drives closely in front of the bus and brings it to a crawl).

SUPP.APP.118

pulled over in order to drive more closely to the bus. Evidence shows the Mesaros Defendants did not fully pause on I-35, but instead continued to roll along the shoulder as the bus approached, Ex. 35 at 2:25-2:39, and then pulled out sharply directly in front of the bus, *id.* at 2:40. At no point did either of the Mesaros Defendants fix one of the truck's carabineers.

Defendant Robert Mesaros' sworn testimony regarding why he partially pulled over onto the shoulder and then re-joined traffic once directly in front of the bus has changed repeatedly throughout the course of this litigation. Defendant Robert Mesaros initially testified that he pulled back onto I-35 because the bus was driving in the shoulder, directly behind his vehicle and then came to a stop behind his vehicle while honking, which required the Mesaros Defendants to move back onto the interstate. Ex. 36 RFA No. 4. Defendant Robert Mesaros later corrected his initial testimony, and acknowledged that the bus remained entirely in its lane and did not stop or drive directly behind his vehicle while he was on the shoulder. Ex. 38 at 168:5–8. Defendant Robert Mesaros clarified that he did not fully stop or pull over on the interstate because when the bus honked, it "made [him] nervous," and he therefore rejoined I-35 to "get out of the way." *Id.* at 166:1–19. He testified that he re-joined I-35 as the slowing, honking bus began to pass where he was pulled over due to "[i]nstinct, reaction" in the heat of the moment and not, as his prior testimony indicated, due to the bus driving or stopping behind him. *Id.* at 170:6–18.

Though Defendant Robert Mesaros now testifies that the bus drove slowly as it passed to honk at him, prompting him "get out of the way" by re-joining the interstate, video evidence shows that the bus was driving slowly at that time because there were slow-driving Trump Train vehicles in front of it and Defendant Mesaros' truck appeared to be ready to cut the bus off. Ex. 35 at 2:27–2:46. When the Mesaros Defendants pulled in front of the bus, they too drove slowly in front of it, *id.* at 2:40–6:19, and Defendant Robert Mesaros admitted to tapping his brakes while in front of

the bus without justification, *id.* at 3:09; Ex. 38 at 179:23–180:12. By pulling out in front of the bus, the Mesaros Defendants joined other Trump Train drivers in surrounding the bus. Ex. 83 at 1:53; Ex. 35 at 4:52; Ex. 73. Defendant Joeylynn Mesaros acknowledged that the bus was "surrounded" by Trump Train drivers on I-35. Ex. 21 at 201:1–7. The Mesaros Defendants have testified that the goal of the Trump Train's driving style was to stay together, and that if Trump Train drivers were separated it would be "disappointing." *Id.* at 65:25–66:2. Therefore, on October 30, 2020, the Mesaros Defendants were able to pull over and re-join the highway with unusual ease because other Trump Train drivers would "ma[ke] a spot for [them] to get in," Ex. 38 at 149:24–150:10, or otherwise "make an opening" for them to re-join the Train, Ex. 21 at 197:13–19. Defendant Park also described the pack-style driving of the Trump Train stating that other drivers "try to break us [the Trump Train] up, they try to break us up but it doesn't work. There's too many of us and then someone just let's everyone in." Ex. 84 at 2:30. Demonstrating for the camera, Defendant Park stated that "you just scoot over and let everyone in like this" and then said that she was "going to let everyone in." *Id.* at 3:10.

The Defendants' slow driving, in concert with the slow driving of other Trump Train drivers, brought the bus to a dangerous crawl on the highway. Ex. 41 at 7 ("During the drive, at times we were right next to the bus, and sometimes we were directly in front of or behind the bus. Other vehicles were also surrounding the bus, and some vehicles would suddenly slow down in front of the bus and force it to slow down, too. All the vehicles surrounding the bus forced it to drive below the speed limit, although I don't know exactly how fast we were driving because I was only a passenger."). Defendant Park explained that the slow speed caused her to take over two hours to travel the fifty-five miles from the AT&T Center in San Antonio to Kyle, Texas. Ex. 82 at 00:30. At times, the bus was forced to drive as slow as 15 miles per hour, including while the

18

Mesaros Defendants were driving in front of it. Ex. 41 at 7; Ex. 35 at 0:23, 1:06, 1:47. Defendant Robert Mesaros admitted to not wanting to drive behind the bus because it was unsafe to drive on a highway at that speed. Ex. 38 at 191:7–10. Though the Mesaros Defendants witnessed the harassing and assaultive driving of other Trump Train members, that did not cause them to leave the highway or have concerns for their safety. Ex. 35 at 5:39–5:50; Ex. 85 at 0:20–0:40. The Mesaros Defendants understood that surrounding other vehicles, heckling drivers, and videotaping drivers was "harassing, bullying, and taunting" behavior designed to "intimidate." Ex. 24 at 1933–35; Ex. 21 at 99:18–100:12. They engaged in such behavior anyway.

Defendant Cisneros also repeatedly and inexplicably pulled onto the shoulder of I-35 and then back in front of the bus. Ex. 11 at 144:13-146:15. At one point, while pulled over he filmed a video of himself mocking the Vice Presidential candidate, Kamala Harris, for thinking it was a "good idea to campaign in Texas." Ex. 86. Hours after joining the Trump Train outside of San Antonio, as the bus was driving through San Marcos towards Kyle, Defendant Cisneros was involved in a collision with a car driven by a Biden-Harris Campaign staffer. Ex. 87. Around this time Defendant Park explained that so many people were "lining the freeways it [was] hard to turn off." Ex. 82 at 00:50. Defendant Park additionally explained that the "Biden bus is surrounded, like seriously surrounded by Trump flags," *id.* at 01:15, and that "a lot of people are ahead of the Biden bus. A lot of people." *Id.* at 1:35. Given this driving environment, the staffer's vehicle had been driving in defensive fashion behind the bus, when Defendant Cisneros deliberately sped up to prevent the staffer's vehicle from remaining behind the bus. Ex. 88. Defendant Cisneros testified to driving in this manner "because I can." Ex. 11 at 148:16–151:11. Filming this stretch of highway, Defendant Park narrated that "there are thirty to forty cars in front of the Biden bus" and explained that the bus "is trying to switch lanes to get rid of everyone but it's not going to work"

SUPP.APP.121

and then she laughed. Ex. 82 at 2:50. At this point, Defendant Park believed that the bus was trying "to sneak and get off the freeway but it's not going to work. Everyone is just going to surround it." *Id.* at 3:05. As Defendant Park explained, the bus changed lanes several times in an attempt to lose the Trump Train in this stretch, as exiting the interstate was an impossibility due to the Trump Train both surrounding the bus and blocking the exits. *Id.*; *see also* Ex. 43 at 8. The staffer's vehicle attempted to stay behind the bus through those evasive lane changes. Ex. 87; Ex. 88. But, Defendant Cisneros blocked the staffer's vehicle from switching lanes with the bus. Ex. 87; Ex. 88. Defendant Cisneros used his vehicle to push the staffer's vehicle back into the other lane, which he later described as "slamming that fucker" and "welcom[ing] him properly to Texas." Ex. 40. Defendant Cisneros and a second Trump Train vehicle then followed the staffer's vehicle aggressively, pulling out abruptly in front of the bus to do so. Mesaros Stay Mot. (Dkt. 229) Ex. E at 18:26. Defendant Cisneros later called the staffer "Antifa, I'm more than sure." Ex. 12 at 7:40.

Around this time, Defendant Park exited and left the Trump Train after witnessing the crash between Defendant Cisneros and the staffer's vehicle, and then allegedly being nearly run off the road by a Ranger Excavation truck herself. Ex. 68 at 2. The Mesaros Defendants also exited, claiming the Trump Train had become boring because it was so slow. Ex. 38 at 188:21-189:13. Despite the collision, Defendant Cisneros followed the bus all the way to Austin, where it eventually parked. Ex. 11 at 141:5-8. He got out of his truck and mingled with other Trump Train drivers for a while before returning home. *Id*. at 61:19-62:20; Ex. 89 Rog. No. 5.

Though neither of the Ceh Defendants considered themselves formal participants as drivers in the October 30, 2020 Trump Train because they were both apparently at work, Ex. 42 RFA No. 1, they both testified to driving home from work on I-35 at the precise time that allowed them to drive alongside the Trump Train and Biden bus. Defendant Randi Ceh explained that she was

SUPP.APP.122

"driving home" and there was "no flag" on her car, but that she "thought it was pretty cool" to drive briefly alongside the Trump Train. Ex. 14 at 138:2–139:1. She testified to exiting I-35 a few miles after around the 188 to 191 mile marker, just past the Buc-ee's. *Id*. at 140:20–141:2. Defendant Steve Ceh also testified to encountering the Trump Train as he drove home from work along the frontage road in the afternoon of October 30, 2020. Ex. 8 at 166:16–167:4. He testified to briefly joining I-35, driving behind Defendant Randi Ceh, and then exiting the interstate with her shortly thereafter. *Id*. at 172:13–173:11. Though he testified he had "no idea" why he joined I-35, he explained that he was in a company car so he had no intention of participating in the Trump Train. *Id*.

X.    **The Cancellation of Campaign Events and Celebrating the October 30 Trump Train**

Beyond deliberately driving in an assaultive and intimidating manner, the Defendants celebrated assaultive driving employed by others in the Trump Train on October 30, 2020 and the impact it had on Plaintiffs, including celebrating the cancellation of campaign events. Defendant Cisneros did not report his collision with the staffer's vehicle until the following day. Instead, he celebrated his actions and the resulting cancellation of Biden-Harris campaign events, posting on Facebook that "Texas welcomes Biden/Harris. We serve Brisket, Sausage, Leg quarters, Whataburger and 35 in tires . . . What would you like?" Ex. 40. Defendant Cisneros bragged in a Facebook message that he was "[s]mart enough to get the entire Biden Harris campaign canceled in Texas[,]" Ex. 90, and testified that he believed he got the Biden-Harris campaign canceled in Texas, Ex. 11 at 108:22–24. He additionally testified that the October 30, 2020 Trump Train "was [] a success [in] that [he] kind of saved Texas from people like that," meaning the Biden-Harris Campaign. *Id*. at 109:17-19. That same day, Defendant Park posted photos of her car driving in the Trump Train to her Instagram, captioning the photos "there I go," "escorting the Biden bus out of town" and "turn San Antonio red." Ex. 91; Ex. 92.

SUPP.APP.123

On October 31, 2020 Defendant Park shared a video to her Facebook captioned "THIS IS TEXAS—GTFOH!" likely meaning *get the fuck out of here.* Ex. 93. The post itself is a video taken of the Trump Train as it drove through New Braunfels on October 30, 2020. The man filming the video is laughing, while saying that the Trump supporters are "like chasing them out" and "literally escorting the bus out of town." Ex. 94. That same day Defendant Park posted on Facebook "Lol we were a hit." Ex. 95. Defendant Park continued to post local and national news coverage of the October 30, 2020 Trump Train on her Facebook celebrating and defending the so-called escort. Ex. 96; Ex. 97; Ex. 98, Ex. 99, Ex. 100. Defendant Park continued to post about the October 30, 2020 Trump Train days later calling it "so fun sincerely so fun" and admitting that "we surrounded their bus[]" in a November 3, 2020 Facebook post. Ex. 101. In the same post, Defendant Park wrote that she "wanted to make sure [the bus] was safely out of town." *Id.* Defendant Park also posted multiple videos of herself shouting approvingly at Fox News clips covering the Trump Train on October 30, 2020. Ex. 101; Ex. 102.

Defendant Joeylynn Mesaros described video of the bus surrounded by Trump Train cars as "fantastic footage," Ex. 103, and proudly declared that "TTNB doesn't mess around y'all," along with posting "YASSS! Byeee" in response to Facebook posts describing the October 30 Trump Train as "show[ing] Kamala the way out" of Texas, Ex. 104. She later testified that "it's safe to say that metaphorically whether Kamala and/or Biden were on the bus . . . when I say 'Yes, bye,' like regardless of who was on the bus, [I was] like saying goodbye to the bus and what it represents." Ex. 21 at 111:16–22. She testified to "clapping" for a Facebook comment celebrating that "Patriots" got "the Biden bus or the metaphor, the Democrat party" out of "our red county." *Id.* at 213:17–214:11. On October 30, 2020, Defendant Joeylynn Mesaros posted on Facebook that the "Trump Train NB . . . gave [the Biden bus] a proper Texas welcome and friendly escort out of

SUPP.APP.124

town." Ex. 105. Despite this, she later testified that "escorted" was the media's word and that "[i]t was never our intent or mind to escort the bus." Ex. 21 at 234:17–23. Defendant Robert Mesaros commented on Facebook after the Incident that he would "just as quick run [Biden] out of Texas again" than see him visit the state because "no one wants that man here." Ex. 1. He admitted that he was referring to the October 30 Trump Train as a previous instance of having "run [Biden] out of Texas." Ex. 38 at 228:3–6. Defendant Cisneros also mocked Plaintiffs following the Incident, posting on Plaintiff Cervini's Facebook page "How did you like Texas?" Ex. 106.

The Ceh Defendants also celebrated that the Biden-Harris Campaign bus had been run out of town. Ex. 41 at 7-8 (noting that "[p]eople were proud of the fact that we got the Biden bus out of our community, and we celebrated our success" and "[a]t the time, I thought that driving dangerously was a way of showing the bus that it was not welcome in Texas"). Defendant Randi Ceh testified that she understood that people "were happy" when they found out the Biden-Harris Campaign had been forced to cancel events as a result of the Trump Train, explaining it was "political." Ex. 14 at 279:3–18. The day of the incident, Defendant Randi Ceh posted on the NBTT Facebook group sharing a video captioned "Trump 2020 BABY!!" celebrating the Trump Train that day. Ex. 107. She later posted that she was "in awe of this community,"        Ex. 108, and shared videos from the Trump Train that day congratulating "Trump Train NB, Trump Train Alamo City and Trump Train San Marcos," saying "Y'all killed it today! Trump 2020 Baby!!" Ex. 109. Defendant Randi Ceh's daughter, Hannah Ceh, shared a post on Facebook where Randi Ceh shared a picture of the campaign staffer's vehicle that was involved in the collision with Defendant Cisneros, and Defendants Randi Ceh sarcastically wrote "I wonder why his car got all scrapped up." Ex.110. Defendant Randi Ceh herself shared videos that she captioned "Trump Trains Helping out the Biden Bus," Ex. 111, and posted excitedly in the NBTT Facebook group when

SUPP.APP.125

Donald Trump Jr. mentioned the Trump Train, Ex. 112. She later testified that she thought it was "cool" that Donald Trump Jr. posted about the Trump Train. Ex. 14 at 268:19–269:10.

In a sermon delivered shortly after October 30, 2020, Ex. 113, Defendant Steve Ceh asked for people to send him videos from the "good day we had with the Biden bus" and expounded that "[w]e're going to escort any socialist that comes into the State of Texas, we're going to escort them out of the stinking state." Ex. 8 at 235:6–11. Defendant Steve Ceh testified to being "proud" of the Trump Train for the "spirit of patriotism" and because "people showed up [on October 30, 2020] and they were excited and nobody broke the law." *Id.* at 236:6–15. He further testified to being "proud of the Trump Train from day one all the way throughout until today," including the October 30 Trump Train. *Id.* at 230:21–3; *see also id.* at 206:11–16. Defendant Steve Ceh posted on MeWe that he was "very proud of our Trump Train. Escorted evil anti-God and anti-Americans out of our city all the way to Austin." Ex. 6; Ex. 8 at 206:2–208:15. He further explained that the Biden-Harris bus and "the whole establishment of them" were evil. *Id.* at 206:22–25.

## XI.     **Defendants' Spoliated Evidence and False Statements**

The Defendants' conduct after the Incident, and in particular following the initiation of this lawsuit, has shown that they understood their conduct on October 30, 2020 exposed them to liability. Ex. 114. As only a few examples, Defendant Cisneros has claimed to lose devices and access to social media accounts that he used at the time of the Incident. Dkt. 133 Ex. 1 at 2–3. His credibility and the truthfulness of the explanations he has given for the loss of these devices has been called into question by the Court during a hearing on a motion to compel and for spoliation. Ex. 30 (E. Cisneros Spoliation Hearing Tr.) at 5:17–23, 62:8–25. Defendant Park did not save any communications from that time period, Ex. 26, and has testified in written discovery that, despite video evidence to the contrary, that she has never participated in a Trump Train on October 30,

SUPP.APP.126

2020. Ex. 115 at 3–4; Ex. 80; Ex. 82. Four non-party witnesses who were key conspirators with the Defendants—Michael Capizzi, Jenifer Capizzi, Jason Peña Ahuyon, and Chantal Guzman Peña—so fear criminal liability that they invoked their Fifth Amendment rights to refuse to answer questions throughout the entirety of their depositions. *See* Ex. 33; Ex. 34; Ex. 116, Ex. 117.

Shortly after being named as defendants, the Mesaros Defendants deliberately deleted social media accounts and text messages. Ex. 24 (J. Mesaros Depo. Ex. 4) at 1940; Ex. 25 (R. Mesaros R&O to Rog. No. 3). They also have given numerous interviews where they falsely represent the events of October 30, 2020, alleging that they never drove in front of the bus, never tapped their brakes or brake checked the bus, that the bus was driving dangerously slowly of its own accord, that the bus was never surrounded by Trump Train vehicles, that traffic was not impeded, and that they are being sued for driving next to the bus. Ex. 118; Ex. 119. These statements are all demonstrably false. For example, in many public appearances,[2] Defendant Joeylynn Mesaros has insisted that during their encounter with the Plaintiffs on October 30, 2020, her husband never "tapped [the] breaks," that the Mesaroses "were careful to abide by traffic laws, safety laws," that the Trump Train never "shut down traffic" or "slow[ed] [the bus's] progression, or impede its freedom of movement." Ex. 118; Ex. 119. In fact, she asserts that the Biden bus was

---

[2] A couple of these press appearances have included veiled threats directed at this Court, Plaintiffs, and their associates. Ex. 120, HisGloryMe Take FiVe, October 8, 2021 at 20:30.

> Host: "Privately, if you would, can you get me the name of that judge? So, if I need to use that judge's name at some later date, I will help in any way."
> Defendant Mesaros: "Yes, I can give it to you privately or publicly." […] "The judge assigned to the case is Judge Pitman."
> Host: "… You see why we needed that judge's name? Because we may need that judge's name."

Ex. 121 (David Sumrall-Defendant J. Mesaros interview in which the host states, "nobody from the Biden-Harris camp go tubing down in San Marcos" because "they may not swim back out, you know what I'm saying?").

SUPP.APP.127

"unobstructed" and "going so slow on the freeway, intentionally." Ex. 118. These statements are contradicted by video evidence, her and her husband's sworn testimony, and social media posts from Trump Train participants on the day. The Mesaros Defendants acknowledge that these public statements have induced people to donate to their legal defense fund. Ex. 21 at 257:11–23.

Indeed, these statements by the Mesaros Defendants form the basis of a successful fundraising campaign by which they have raised over $238,000, not including sales from merchandise or other donation methods. *Id.* at 243:15–18, 243:19–244:22; Ex. 22 at 27; Ex. 23 at 3. Defendant Joeylynn Mesaros has additionally broken a key repository of evidence since the inception of this litigation—her cellphone. Ex. 16 at 2.

**XII.** <u>**January 6, 2021**</u>

The Ceh Defendants traveled to Washington, D.C. and attended the January 6, 2021 rally to "Stop the Steal" at the Capitol. Ex. 13. Defendant Cisneros also attended the January 6, 2021 rally providing his friends with "collapsible batons and bear mace" before they traveled to the Capitol. Ex. 10; Ex. 11 at 32:16–33:3. Defendant Cisneros testified that he armed others in this way "in preparation for [dealing with] Antifa." *Id.* at 33:24. The Ceh Defendants were similarly concerned with "Antifa" who they blamed as the sole cause of property damage on January 6, 2021. Ex. 14 at 297:20–8; Ex. 8 at 268:23–269:25. The Ceh Defendants testified that those causing property damage on January 6, 2021 were identifiable as "Antifa" expressly because they wore black outfits and were seen breaking windows. Ex. 8 at 268:23–271:25; Ex. 14 at 297:6–25.

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY, <br><br>                Plaintiffs, <br><br>     v. <br><br> ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK, <br><br>                Defendants. | Civil Action No. 1:21-cv-00565-RP <br><br> Hon. Robert Pitman |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs respectfully alert the Court to a Northern District of Georgia opinion interpreting the support-or-advocacy clauses. *See Andrews v. D'Souza*, No. 1:22 Civ. 4259, slip op. at 16-26 (N.D. Ga. Sept. 30, 2023) (Ex. 1). The *Andrews* plaintiff alleged that defendants violated the clauses by falsely accusing him of illegally voting. *Id.* at 2, 16. The *Andrews* court denied the motions to dismiss in part and granted them in part, dismissing claims against a media company due to insufficient allegations that it had participated in a conspiracy, *id.* at 23-24, but allowing claims against other alleged conspirators to proceed, *id.* at 24-29. *Andrews* is relevant to the pending motions at Docket Nos. 210, 222-224, and 229-230 for four reasons:

    *First*, *Andrews* rejects a class-based animus element for support-or-advocacy claims. *Id.* at 18, 20.

    *Second*, *Andrews* endorses the "lengthy and reasoned analysis" of the Southern District of New York in *National Coalition on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457

**SUPP.APP.129**

(S.D.N.Y. 2020), interpreting the clauses. Ex. 1 at 19. *National Coalition* reaches the same conclusion as this Court in concluding that the clauses create an "independent substantive right," and therefore plaintiffs "need not identify a violation of a separate constitutional right." 498 F. Supp. 3d at 486 n.30 (citing *Paynes v. Lee*, 377 F.2d 61, 64 (5th Cir. 1967)); *see also* Ex. 1 at 21-22 (plaintiff need not demonstrate an "actual deprivation of constitutional rights").

*Third*, *Andrews* observes that the "plain language of the provisions prevents (among other things) conspiracies to prevent someone from advocating for a federal candidate for office or injuring someone for such advocacy." *Id.* at 21. So while *Andrews* concerns ballot drop boxes and not advocacy by surrogates, *Andrews*'s reasoning shows that the plain meaning of the clauses encompasses the federal election advocacy at issue here.

*Fourth*, Defendants' mandamus petitions cited the *Andrews* complaint as a supposed example of Plaintiffs' "bogus legal theory," Dkt. 207 at 41, and "abusive manipulation of federal law," Dkt. 208-1 at 43, at work. *Andrews*'s rejection of Defendants' arguments shows that Defendants' invective is misplaced and that it is Defendants who have the wrong interpretation of the support-or-advocacy clauses.

Respectfully submitted,

**DATED:** October 3, 2023.

By:  */s/ John Paredes*

**TEXAS CIVIL RIGHTS PROJECT**
Ashley Fernandez Dorsaneo (TX Bar No. 24127393)
Christina M. Beeler (TX Bar No. 24096124)
Sarah Xiyi Chen (CA Bar No. 325327) (*pro hac vice*)

**SUPP.APP.130**

Veronikah Rhea Warms (TX Bar No. 24132682) (*pro hac vice*)
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
Telephone: (512) 474-5073
Facsimile: (512) 474-0726
Email: ashley@texascivilrightsproject.org
christinab@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

**THE PROTECT DEMOCRACY PROJECT, INC.**
John Paredes (NY Bar No. 5225412) (*pro hac vice*)
Orion Danjuma (NY Bar No. 4942249) (*pro hac vice*)
The Protect Democracy Project, Inc.
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
john.paredes@protectdemocracy.org
orion.danjuma@protectdemocracy.org

Cameron O. Kistler (DC Bar No. 1008922) (*pro hac vice*)
Cerin Lindgrensavage (DC Bar No. 1741602) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro hac vice*)
Anne Harden Tindall (DC Bar No. 494607) (*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, D.C. 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
cameron.kistler@protectdemocracy.org
cerin.lindgrensavage@protectdemocracy.org
joanna.suriani@protectdemocracy.org
anne.tindall@protectdemocracy.org

Benjamin L. Berwick (MA Bar No. 679207) (*pro hac vice*)

SUPP.APP.131

The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
ben.berwick@protectdemocracy.org

Jared Fletcher Davidson (LA Bar No.
37093) (*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Meryl Conant Governski (DC Bar No. 1023549) (*pro hac vice*)
Jamielah Yancey (DC Bar No. 1619055) (*pro hac vice*)
Rebecca Heath (DC Bar No. 1644402) (*pro hac vice*)
Aaron E. Nathan (NY Bar No. 5478227) (*pro hac vice*)
Amy R. Orlov (DC Bar No. 1780213) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
mgovernski@willkie.com
jyancey@willkie.com
rheath@willkie.com
anathan@willkie.com
aorlov@willkie.com

SUPP.APP.132

Madeleine Tayer (NY Bar No. 5683545)
(*pro hac vice*)
John P. Catalanotto (NY Bar No. 5857750)
(*pro hac vice*)
Christina Adele Peck (NY Bar No.
5923545) (*pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mtayer@willkie.com
jcatalanotto@willkie.com
cpeck@willkie.com

*Attorneys for Plaintijfs*

- 5 -

SUPP.APP.133

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2023, a true and correct copy of the foregoing has been served on all counsel of record and Defendants Steve Ceh and Randi Ceh through the Electronic Case Filing System of the Western District of Texas in compliance with the Federal Rules of Civil Procedure and by email as agreed by the parties.

**DATED:** October 3, 2023.

By:  _/s/ John Paredes_____

SUPP.APP.134

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, TIMOTHY HOLLOWAY, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:21-CV-565-RP |
| ELIAZAR CISNEROS, HANNAH CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK, | § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court are Defendants Joeylynn Mesaros and Robert Mesaros's (together, "the Mesaros Defendants") Motion for Reconsideration and Renewed Request to Certify an Interlocutory Appeal, (Dkt. 210); Defendant Eliazar Cisneros's ("Cisneros") Motion for Reconsideration and Renewed Request to Certify an Interlocutory Appeal, (Dkts. 222, 223); and Defendant Dolores Park's ("Park") Motion for Reconsideration and Renewed Request to Certify an Interlocutory Appeal, (Dkt. 224). Plaintiffs filed a joint, consolidated response in opposition. (Dkt. 240). Also, before the Court are the Mesaros Defendants' Motion to Stay Case Pending Resolution of Reconsideration and Interlocutory Appeal, (Dkt. 229), Park's Motion to Stay, (Dkt. 230), and related briefing. Having considered the parties' briefs, the record, and the relevant law, the Court will deny Defendants' motions for reconsideration and requests to certify an interlocutory appeal, and moot Defendants' motions for a stay.

1

SUPP.APP.135

# I. BACKGROUND

This case arises out of an incident alleged to have occurred during the 2020 U.S. presidential election campaign period. Plaintiffs assert that on October 30, 2020, they were traveling on I-35 between San Antonio and Austin, Texas, in a Biden-Harris campaign tour bus. (Am. Compl., Dkt. 151, at 2–3). At that time, they allege, "dozens of individuals in at least forty vehicles" participated in a "Trump Train" to show support for presidential candidate Donald Trump by surrounding the campaign bus on the highway. (*Id.*). Plaintiffs state that for at least ninety minutes, the Trump Train forced the campaign bus to slow down to a crawl on the highway, that cars came within inches of the campaign bus, boxing it in, and that one Trump Train vehicle slammed into a Biden campaign staffer's car, causing Plaintiffs to fear for their lives and suffer emotional trauma. (*Id.* at 2–3). Plaintiffs state Cisneros, the Mesaros Defendants, and Park, along with other dismissed Defendants, coordinated to wait for and surround the campaign bus. (*Id.* at 3). Based on these allegations, Plaintiffs assert several causes of action: (1) that Defendants violated the Ku Klux Klan Act, 42 U.S.C. § 1985(3); (2) that Defendants engaged in a civil conspiracy; and (3) that Defendants engaged in a civil assault. (*Id.* at 58–62).

On March 23, 2022, this Court entered an order denying Defendants' Motions to Dismiss. (Dkt. 64). Shortly after, Defendants filed their first motions for certificate of appealability pursuant to 28 U.S.C. § 1292 and reconsideration on the Court's order denying the motions to dismiss. (Dkts. 66, 69, 70). In their motions, Defendants argued that the Court should certify an interlocutory appeal because the issue of whether § 1985(3) requires Plaintiffs to plead that the conspiracy against them stemmed from race-based animus is a novel, controlling issue of law, that there is substantial ground for difference of opinion about the question of law, and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. (*Id.*) On August 19, 2022,

2

this Court denied these motions. (Dkt. 100). This Court found that its order denying the motions to dismiss did not involve a "controlling question of law to which there is substantial ground for difference of opinion" because "a lack of binding cases addressing a specific legal issue does not constitute a substantial ground for difference of opinion." (*Id.* at 6). Further, the Court found that early appellate review would not "materially advance the ultimate termination of the litigation," as required by § 1292, because interlocutory appeal would slow the case, which was "problematic as the parties have begun to engage in discovery and another case in front of this Court, *Cervini v. Stapp*, 1:21-cv-568, is dependent on the continuing litigation in this case." (*Id.*).

On January 18, 2023, Plaintiffs filed their First Amended Complaint, (Dkt. 151), and on February 8, 2023, Defendants responded by filing renewed motions to dismiss and requests to authorize an interlocutory appeal, (Dkts. 163, 164, 165). Defendants argued that the Court should dismiss Plaintiffs' claims under § 1985(3) because these claims require racial animus and state action. (*Id.*). Defendants also argued that the Court should certify an interlocutory appeal to resolve the question of whether Plaintiffs were required to plead the elements of racial animus or state action for the § 1985(3) claim. (*Id.*). On August 3, 2023, the Court issued an order denying both the motions to dismiss and motions for interlocutory appeal. (Dkt. 204). The Court found that Defendants' assertions were a rehashing of arguments made in previous motions and denied the renewed motions for the reasons cited in its previous orders. (*Id.* at 5–6, 8).

The Mesaros Defendants and Park then filed petitions for writs of mandamus with the Fifth Circuit. (Dkts. 205-1, 208-1). They asked the Fifth Circuit to vacate this Court's denial of Defendant's motions to dismiss, or in the alternative vacate its denial to certify an interlocutory appeal, and direct this Court to certify an appeal under 28 U.S.C. § 1292(b). (*Id.*). On August 28 and September 13, 2023, the Fifth Circuit issued substantially identical orders denying the petitions, *In re*

3

*Jo.y'ynn Mesaros*, No. 23-50593 (5th Cir. Aug. 28, 2023); *In re Dolores Park*, No. 23-50585 (5th Cir. Sep. 13, 2023), stating that the court has never used the writ of mandamus to cure a district court's denial of certification under § 1292(b). *In re Jo.y'ynn Mesaros*, slip op. at 1.[1] The Fifth Circuit also stated that "there is *unquestionab'y* a 'substantial ground for difference of opinion' that necessitates certification of a 'controlling question of law' under 28 U.S.C. § 1292(b)." (*Id.* at 6) (emphasis in original). In the Fifth Circuit's opinion, Defendants have at least four grounds of substantial difference of opinion that would necessitate certification. (*Id.*). Thus, the Fifth Circuit concluded that this Court had "ample ground for reconsidering its decision in this case" and that this Court "should have granted the § 1292(b) motion." (*Id.* at 1–2, 10).

Based upon the Fifth Circuit's order, the Defendants filed their present motions, renewing their request to certify an interlocutory appeal and requesting reconsideration of the Court's order denying Defendants' previous motions to dismiss the First Amended Complaint and motions for certification of interlocutory appeal. (Dkts. 210, 222–224). All three motions incorporate the Fifth Circuit's discussion of the four grounds for substantial difference of opinion and argue that reconsideration and certification are necessary based upon the Fifth Circuit's order. (*Id.*). Park's motion argues that the Fifth Circuit has directed this Court to certify an interlocutory appeal. (Dkt. 224, at 2). Park also argues that the Fifth Circuit held that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." (*Id.* at 8). Last, the Mesaros Defendants and Park also filed motions to stay the case pending resolution of their motions for reconsideration and the interlocutory appeal. (Dkts. 229, 230).

---

[1] Because both orders are substantially the same, in all references to the Fifth Circuit's orders, the Court will cite to the order in *In re Jo.y'ynn Mesaros* for ease of citation.

4

Plaintiffs filed a consolidated response in opposition to Defendants' reconsideration motions. (Dkt. 240). Plaintiffs state that in light of the Court of Appeal's order, they will assume that the first two criteria of the test for certification are satisfied, though they note their disagreement with that decision and argue that there is no "substantial difference of opinion" on a "controlling question of law" for several reasons. (*See id.* at 1, 11–23). Plaintiffs rest their opposition, instead, on the argument that the third prong for certification, whether an interlocutory appeal would materially advance the termination of the litigation, is not met in this case and that the Fifth Circuit's order does not address the issue. (*Id.* at 2). Plaintiffs argue that this Court should exercise the discretion granted to it by § 1292(b) to continue to deny certification of an interlocutory appeal because the third requirement for certification is not met. (*Id.* at 2–3).

## II. LEGAL STANDARD

### 1. Motion for Reconsideration

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Defendants assert their motions under Rule 54(b). "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (cleaned up) (citing Fed. R. Civ. P. 54(b)).

5

SUPP.APP.139

"Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lave.pere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

## 2. Interlocutory Appeal

28 U.S.C. § 1292(b) permits a district judge to, in certain circumstances, certify an issue for interlocutory appeal. The statute reads in part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

Thus, Defendants must convince the Court that the Court's order involved (1) a controlling question of law, (2) that there is substantial ground for difference of opinion about the question of law, and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). "All three of these criteria must be met for an order to properly be certified for interlocutory appeal." *Crankshae v. Ci'y of E'gin*, 2020 WL 1866884, at *1 (W.D. Tex. Apr. 14, 2020) (citing *Clark–Dietz & Associates–Engineers, Inc. v. Basic Constr. Co.,* 702 F.2d 67, 69 (5th Cir. 1983)). "The burden of demonstrating the necessity of an interlocutory appeal is on the moving party." *In re L.L.P. & D. Marine, Inc.,* 1998 WL

6

66100, at *1 (E.D. La. Feb. 13, 1998) (citing *Orson, Inc. v. Miramax Film Corp.,* 867 F. Supp. 319, 320 (E.D. Pa. 1994)).

"Interlocutory appeals are generally disfavored, and statutes permitting them must be strictly construed." *Mae v. Hurst,* 613 F. App'x 314, 318 (5th Cir. 2015) (quoting *Allen v. Okam Holdings, Inc.,* 116 F.3d 153, 154 (5th Cir. 1997)). "The purpose of § 1292(b) is to provide for an interlocutory appeal in those exceptional cases" in which the statutory criteria are met. *United States v. Garner,* 749 F.2d 281, 286 (5th Cir. 1985); *accord Clark–Dietz,* 702 F.2d at 69 ("Section 1292(b) appeals are exceptional."). Typically, interlocutory review is reserved for "exceptional" cases, as the basic structure of appellate jurisdiction disfavors piecemeal appeals. *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 74 (1996); *Clark–Dietz,* 702 F.2d at 69.

Further, "[t]he decision to certify an interlocutory appeal pursuant to section 1292(b) is within the discretion of the trial court and unappealable." *In re Air Crash Disaster Near New Orleans, La. on Ju'y 9, 1982,* 821 F.2d 1147, 1167 (5th. Cir. 1987), *vacated on other grounds by Pan Am. World Airways, Inc. v. Lopez,* 490 U.S. 1032, 1033 (1989); *see Swint v. Chambers Cty. Comm'n,* 514 U.S. 35, 47 (1995) ("Congress . . . chose to confer on district courts first line discretion to allow interlocutory appeals."); *Cheney v. U.S. Dist. Ct. for Dist. of Columbia,* 542 U.S. 367, 405 n.9 (2004) (Ginsburg, J., dissenting) ("[T]he decision whether to allow an [interlocutory] appeal lies in the first instance in the District Court's sound discretion.").

### III. DISCUSSION

Defendants' motions for reconsideration are intertwined with their renewed requests to certify an interlocutory appeal under § 1292(b) in the sense that both motions require the Court to once again decide whether the issues identified in its previous orders meet the statutory criteria for certification. Defendants urge that this Court's decision is predetermined because of the Fifth

Circuit's orders denying their petitions for writs of mandamus. After careful reconsideration of the issues and review of the Fifth Circuit's orders, the Court respectfully disagrees. While this Court is bound to follow the direction of the Fifth Circuit, § 1292(b) is a unique statute in the federal scheme in that it "create[s] a dual gatekeeper system for interlocutory appeals: both the district court and the Fifth Circuit must agree . . . before the normal rule requiring a final judgment will be overridden." *In re Ford Motor Co.*, 344 F.3d 648, 654 (7th Cir. 2003). To this end, the Fifth Circuit has stated that even when a panel invites a district court to certify a case for appeal, as it did here, district courts still retain the "discretion to refuse to certify an appeal." *McClelland Eng'rs, Inc. v. Munusamy*, 784 F.2d 1313, 1316 n.1 (5th Cir. 1986), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987). The Court does not interpret the Fifth Circuit's orders in *In re Jocelyn Mesaros* and *In re Dolores Park* to be directing the Court to certify an appeal; rather, the Court understands the orders as an invitation to certify an interlocutory appeal in line with the discretion afforded under *McClelland Engineers.* 784 F.2d at 1316 n.1. However, for the reasons set out below, certifying an interlocutory appeal would not materially advance the ultimate termination of this litigation. Accordingly, because not all criteria for certification are met, this Court will exercise the discretion it retains under § 1292(b) and deny certification of an interlocutory appeal.

In its previous orders, the Court denied certification of appeal because it found that none of the three requirements were met. (*See* Dkt. 100 at 6; Dkt. 204 at 8). The Court stated that there was no "controlling question of law to which there is substantial ground for difference of opinion" because "a lack of binding cases addressing a specific legal issue does not constitute a substantial ground for difference of opinion." (Dkt. 100 at 6). In its recent orders, however, the Fifth Circuit stated that "there is *unquestionably* a 'substantial ground for difference of opinion' that necessitates certification of a 'controlling question of law' under 28 U.S.C. § 1292(b)." *In re Jocelyn Mesaros*, slip

8

op. at 6 (emphasis in original). The court recounted five grounds by its count that would necessitate this finding: (1) whether the support-or-advocacy clause creates an independent substantive right to engage in support or advocacy, or whether it merely supplies a remedy for violations of rights found elsewhere; (2) whether Plaintiffs' reading of the support-or-advocacy clauses "comports with the text" of the statute; (3) whether Plaintiffs' interpretation "comports with Article I of the Constitution"; (4) whether Plaintiffs' interpretation "comports with the First Amendment"; and (5) whether Plaintiffs need to allege class-based animus. *Id.* at 6–10. In light of the Fifth Circuit's order, the Court will reconsider its decisions as to the first two requirements for certification under the discretion provided by Rule 54(b). Accordingly, the Court now finds that its previous orders do involve a (1) "controlling question of law" and (2) that there is "substantial ground for difference of opinion" about the question of law in the orders.

However, the Fifth Circuit did not address the third factor: whether certification would materially advance the ultimate termination of this litigation. The Court finds that Defendants have failed to show why this Court erred by denying certification on this prong. Defendants do not devote much space in their motions to discussions about this third requirement. Cisneros and the Mesaros Defendants do not discuss this requirement at all, and Park's motion devotes only one paragraph to the issue, (*see* Dkt. 224, at 8). Park argues that an interlocutory appeal would materially advance the ultimate termination of the litigation because Plaintiffs' Klan Act claims are the "only basis for litigating in federal court"; therefore, if Plaintiffs have failed to plead a federal cause of action under § 1985(3), then their case "fails for want of federal court jurisdiction." (*Id.*). Park asserts that because the Fifth Circuit stated that the Klan Act claims are Plaintiffs' "only basis for litigating in federal court," it follows that the Fifth Circuit has held that the third requirement for certification has been met. (*Id.* (citing *In re Dolores Park*, slip op. at 7)). Plaintiffs respond that the third

9

requirement is not met in this case because Defendants' failure to properly address this third requirement amounts to a failure to carry their burden in proving that the requirement is met. (Dkt. 244, at 7–8). Plaintiffs also argue that the requirement is not met because an "interlocutory appeal would not avoid trial, shorten the litigation, or make discovery easier or less costly." (*Id.* at 8).

The Court agrees with Plaintiffs. This Court has previously recognized that an interlocutory appeal should not be certified if the movant did not convince the court that the appeal would materially advance the ultimate termination of the litigation. *See Gomez v. Niemann & Hyer, L.L.P.*, 2016 WL 8673848, at *2 (W.D. Tex. Aug. 8, 2016); *Doe 1 v. Baylor Univ.*, 2017 WL 1628914, at *2 (W.D. Tex. May 1, 2017); *see also Coates v. Brazoria Cn'y.*, 919 F. Supp. 2d 863, 866–67 (S.D. Tex. 2013) (stating that a movant's failure to demonstrate that an interlocutory appeal would materially advance the ultimate termination of the litigation was "fatal" to the movant's motion). Here, the Court finds it unlikely that Defendants could have met their burden for this requirement when two Defendants did not address the issue at all, while the third Defendant devoted only one paragraph to discussing the issue, especially given that movants carry the burden of proving that all three requirements for certification are met. *See L.L.P. & D. Marine, Inc.*, 1998 WL 66100, at *1.

Furthermore, the Court does not agree with Park that "the Fifth Circuit held an immediate appeal of the order will materially advance the ultimate termination of the litigation." (Dkt. 224, at 8). In its orders, the Fifth Circuit simply stated that, "Without the Support-or-Advocacy Clause, respondents' only federal claim (and hence their only basis for litigating in federal court) fails." *In re Dolores Park*, slip op. at 7. The Fifth Circuit did not indicate that this statement was holding that an interlocutory appeal would materially advance the ultimate outcome of the litigation. Nor did this single sentence, which only discusses supplemental jurisdiction, absolve Defendants of their obligation to establish the requisite third element for certification. This Court retains discretion

10

under § 1292(b) to deny certification if a party has not met all three elements and finds that Defendants have not done so.

The Court also agrees with Plaintiffs' substantive arguments about why an interlocutory appeal would not be judicially efficient in this case. In determining if an interlocutory appeal would materially advance the ultimate termination of the litigation, "a district court is to examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Casanova v. Gold's Texas Holdings Grp., Inc.*, 2016 WL 1446233, at *3 (W.D. Tex. Apr. 11, 2016) (quoting *Coates.*, 919 F. Supp. 2d at 867). The ultimate termination of litigation is materially advanced when the "resolution of a controlling question of law would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (citing 16 Charles Alan Wright, et al., *Federal Practice & Procedure* § 3930 at 432 (2d ed. 1996)). The Court finds that none of these considerations counsel in favor of an interlocutory appeal.

First, an interlocutory appeal would not eliminate the need for trial because even if an appeal led to the dismissal of Plaintiffs' Klan Act claims, Plaintiffs' state law claims for civil conspiracy and civil assault would remain. Although the Klan Act claims are the only federal claims in this case, Defendant Park is incorrect that without these claims, the Plaintiffs' case would "fail[] for want of federal court jurisdiction." (Dkt. 224, at 8). The supplemental jurisdiction statute gives district courts discretion whether to exercise supplemental jurisdiction over claims when it has dismissed "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation . . . that court has abused its discretion under 28 U.S.C. § 1367." *Brookshire Bros. Holding, Inc. v. Dayco*

11

*Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *see also Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (finding that the district court abused its discretion in remanding state law claims due to the district court's intimate familiarity with the case after it had been pending in the district court for almost three years, had resulted in numerous depositions and discovery disputes, and had required significant consideration by the district court of multiple motions to dismiss or grant summary judgment). Here, this case has been pending before this Court for over two years and has prompted two sets of motions to dismiss, three sets of motions for reconsideration, and several discovery disputes. Given the significant resources and time that this Court has devoted to this case, it would be reasonable for this Court to exercise supplemental jurisdiction under § 1367 over Plaintiffs' state law claims should the Klan Act claims be dismissed on appeal. In such a scenario, an interlocutory appeal would not eliminate the need for trial.

Second, an interlocutory appeal would not eliminate complex issues so as to simplify the trial because Plaintiffs' Klan Act claims are factually interrelated and involve the same underlying events as Plaintiffs' state law claims. Plaintiffs' Klan Act claims require Plaintiffs to prove that "two or more persons . . . conspire[d]" either to (i) "prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy" in a federal election, or to (ii) "injure any citizen in person or property on account of such support or advocacy." 42 U.S.C. § 1985(3). These elements overlap substantially with the elements Plaintiffs must show to succeed on their state law claim of civil conspiracy. The Klan Act claim elements also overlap with the showing that Plaintiffs must make to prove civil assault: Plaintiffs must prove that Defendants "intentionally or knowingly threaten[ed] [Plaintiffs] with imminent bodily injury" without the need to prove physical contact. Tex. Penal Code § 22.01(a)(2); *see also Sanchez v. Striever*, 614 S.W.3d 233, 239 (Tex. App. 2020) (noting that the elements of civil assault in Texas "mirror those of a criminal assault").

12

Therefore, Plaintiffs would require substantially the same evidence to prove their state law claims as they would need for their Klan Act claims. This Court has previously denied certification when claims remaining after interlocutory appeal would "likely require much of the same evidence, examination, and argument" as claims to be considered on interlocutory appeal because certification would "neither significantly narrow the scope of evidence nor substantially shorten future analysis or trial." *Doe 1*, 2017 WL 1628994, at *2; *see also Gomez*, 2016 WL 8673848, at *2 (denying certification where the claims to be considered on interlocutory appeal were "factually interrelated and all involve the same underlying" events as the claims that would remain after appeal). Because Plaintiffs' Klan Act claims and the state claims are so intertwined, an interlocutory appeal would not help to eliminate complex issues so as to simplify the trial.

Third, an interlocutory appeal at this stage in the litigation would also not eliminate issues to make discovery easier and less costly. Given the overlapping nature of the Plaintiffs' claims and the evidence needed to prove them, the scope of discovery would not significantly change should an interlocutory appeal dismiss the Klan Act claims. In addition, there has already been extensive discovery in this case since discovery began on December 21, 2021, almost two years ago. (*See* Dkt. 44). Defendants have collectively served 283 Requests for Production of Documents and responded to fifty Interrogatories, fifty-two Requests for Admissions, and 251 Requests for Production of Documents. (Dkt. 240, at 10). They have produced over 32,000 documents and participated in eight non-party depositions. (*Id.*). Remaining discovery includes the depositions of Defendant Park and Plaintiffs, and the parties' discovery deadline is December 12, 2023. (Dkt. 254). While Defendants argue that remaining discovery will be time-consuming and costly, (*see* Mesaros Mot. to Stay, Dkt. 229, at 2 n.1), Plaintiffs argue that the "bulk of discovery is over" and that any remaining discovery, such as Park and the Plaintiffs' depositions, would need to occur regardless of an appeal of the Klan

13

Act claims, (*see* Resp., Dkt. 240 at 10–11). The Court agrees with Plaintiffs. An interlocutory appeal would not make discovery easier or less costly given the limited nature of discovery left in this case and the need for that discovery to occur with or without Plaintiffs' Klan Act claims remaining as part of this case.

Accordingly, the Court is not convinced that an interlocutory appeal to the Fifth Circuit will materially advance the ultimate termination of this litigation. Even if the Fifth Circuit were to dismiss the Klan Act claims through an interlocutory appeal, such resolution would not "serve to avoid a trial or otherwise substantially shorten the litigation," *see McFarlin*, 381 F.3d at 1251. Nor would it "eliminate complex issues so as to simplify the trial" or make "discovery easier and less costly." *See Coates*, 919 F. Supp. 2d at 867. Because the Court finds that an interlocutory appeal would not materially advance the ultimate termination of this litigation, Defendants have not carried the required burden to succeed on a motion for certification of an interlocutory appeal under § 1292(b). *See Crankshaw*, 2020 WL 1866884, at *1 ("All three of [the certification] criteria must be met for an order to properly be certified for interlocutory appeal."). The Court therefore denies Defendants' motions for reconsideration and renewed requests for interlocutory appeal. Because an interlocutory appeal has not been certified at this time, Defendants' motions for a stay are moot.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that the Mesaros Defendants' Motion for Reconsideration and Renewed Request to Certify an Interlocutory Appeal, (Dkt. 210); Cisneros's Motion for Reconsideration and Renewed Request to Certify an Interlocutory Appeal, (Dkts. 222, 223); and Park's Motion for Reconsideration and Renewed Request to Certify an Interlocutory Appeal, (Dkt. 224), are **DENIED**.

14

IT IS FURTHER ORDERED that the Mesaros Defendants' Motion to Stay Case Pending Resolution of Reconsideration and Interlocutory Appeal, (Dkt. 229), and Park's Motion to Stay, (Dkt. 230), are **MOOT**.

    **SIGNED** on October 18, 2023.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

ERIC CERVINI, et al.,

                     *Plaintiffs,*

       v.

ELIAZAR CISNEROS, et al.,

                 *Defendants.*

Civil Action No. 1:21-cv-00565-RP

Hon. Robert Pitman

**<u>Response to Plaintiffs' Notice of Supplemental Authority</u>**

On October 3, 2023, Plaintiffs filed a Notice of Supplemental Authority alerting this Court of a decision out of the Northern District of Georgia in *Andrews v. D'Souza*, Case No. 1:22-cv-04259, 2023 U.S. Dist. LEXIS 176638 (N.D. Ga. Sept. 30, 2023). This opinion is not precedent before this Court, nor is it particularly instructive.

*Andrews* "raises the issue of whether Defendants are liable for demonstrably false statements they allegedly made about Plaintiff Mark Andrews, asserting that Andrews engaged in voter fraud in the 2020 election." *Id*. at *2. Defendants made numerous claims in books, TV appearances, and a movie that Andrews acted as a mule and delivered illegal ballots to a drop box in Georgia, when he actually "legally deposited his family's ballots." *Id*. at *8. The Northern District of Georgia recognized, "[t]o start, the First Amendment does not protect defamatory statements." *Id*. at *36. The court addressed whether it thought defamatory statements that led to Andrews no longer casting votes by depositing ballots into a drop box was intimidation under the Support-or-Advocacy Clause of the Ku Klux Klan Act. 42 U.S.C. § 1985(3). The court held that intimidation that resulted in Andrews and his family having "changed their voting patterns and that "made him fearful of voting in the future" made a sufficient showing of a deprivation of a right under the Support-or-Advocacy Clause. *Andrews*, 2023 U.S. Dist. LEXIS 176638, *20.

The court next examined if an agreement existed between the parties and whether certain defendants could be held liable as conspirators. *Id*. at *21. The court dismissed the Support-or-Advocacy claim against the defendants who published and distributed the defamatory statements. *Id*. The court determined that while the

**Supp.App.151**

parties had a business agreement and while they did publicize the statements, the "alleged facts" did not "plausibly suggest" that the defendants did so with the intent to intimidate or injure a person "to prevent advocacy." *Id.* The court, however, denied the defendants' motions to dismiss against all other defendants. *See id.* at *21-27. For several reasons, including those discussed below, the court's findings in *Andrews* are either irrelevant, non-precedential, or not persuasive.

## I. The Northern District of Georgia Misstates the Fifth Circuit's Holding in *Paynes v. Lee.*

Plaintiffs' notice states that *Andrews* rejects a class-based animus for all Support-or-Advocacy claims. Pls' Not. of Supp. Auth. at 1. This is a bridge too far.

*Andrews* on this point cites to *Paynes v. Lee. Andrews*, 2023 U.S. Dist. LEXIS 176638, *19. In *Paynes v. Lee*, however, Plaintiff Paynes and another man, both black, went to their parish seat and tried to register to vote. 377 F.2d 61, 63 (5th Cir. 1967). That night (October 17, 1963), three white men arrived at Plaintiff Paynes' home and threatened that if he registered to vote, they would "destroy" or "annihilate" Paynes and "his possessions and his family." *Id.* After Paynes' Support-or-Advocacy claim was dismissed in the district court, he appealed forwarding that the defendant "and 'the other two unknown white men' . . . deprive[d] him of his rights under the Thirteenth, Fourteenth and Fifteenth Amendments" by "intimidat[ing] him into surrendering his right to qualify as and become a registered voter." *Id.* The Fifth Circuit rightly agreed, holding that registration to vote "is a part of the election process and is within the protection of the Federal statutes," including the Support-

2

or-Advocacy Clause. *Id.* at 64-65. The Fifth Circuit in *Paynes v. Lee* did not hold that racial animus would never be a factor in *any* Support-or-Advocacy Clause claim.

Here, Plaintiffs' Support-or-Advocacy Clause claim asks whether the Clause provides a cause of action when Plaintiffs allegedly were prevented from engaging in "election related" speech. The loss of First Amendment freedoms is typically only actionable against the State. But here, Plaintiffs bring their claim against purely private individuals. As such, the question of whether the involvement of racial animus or state action is required to state a claim is highly relevant. This is likely why, the Fifth Circuit in its direct analysis of Plaintiffs' claim determined that the question of whether racial animus would be required in this case should have been certified. *See In re Dolores Park*, Case No. 23-50585, Op. at 11 (5th Cir. Sept. 2023) (stating that Defendants raised controlling questions of law regarding "whether the Support-or-Advocacy Clause requires allegations of racial animus or the presence of state action. Petitioners are correct that the district court should have granted the § 1292(b) motion on that basis.").

Furthermore, *Paynes v. Lee* never held that an alleged deprivation of campaign speech, not voting or an act intimately tied to voting like registering to vote or voting in a primary, provided a claim under the Support-or-Advocacy Clause and would be a proper constitutional interpretation of the Clause under Article I.[1] Plaintiffs' legal

---

[1] Plaintiffs assert that the Northern District of Georgia's analysis of the Southern District of New York's decision in *Nat'l Coal on Black Civic Participation v. Wohl* provides a reason for this Court to come to a different conclusion than the Fifth Circuit panel. 498 F. Supp. 3d 457 (S.D.N.Y. Oct. 28, 2020) (granting a temporary restraining order and finding a likely violation of the Voting Rights Act and the Ku Klux Klan Act). Plaintiffs, however, squarely presented these very arguments from *Wohl* before the Fifth Circuit, and the Fifth Circuit rejected them. *See* Pls' Resp. to Def. Park's Pet. for Writ of Mandamus, Case No. 23-50585, Dkt. 14 at 19-20 (Aug. 20, 2023). Instead of finding the reasoning

3

theory in this case is unique, as it alleges damages for an infringement on "election related" speech against private individuals. The claims in *Andrews*, as addressed above, were dissimilar.[2]

 *Andrews* never asked the questions that Plaintiffs now assert it answered. And to any extent *Andrews* might conflict with the Fifth Circuit Panel decision in this case, which directly analyzes Plaintiffs' claim and is the controlling authority on the holdings of the Fifth Circuit, including in *Paynes v. Lee*, the Fifth Circuit's opinion controls.

## II. The Controlling Questions of Law Posed by the Fifth Circuit Remain and Should be Certified for Interlocutory Appeal.

 The Northern District of Georgia leaves in place the controlling questions of law posed by the Fifth Circuit, which remain to be decided in this case. The Fifth Circuit identified "at least *four* grounds for substantial difference of opinion, any one

---

in *Wohl* persuasive in this case, the Fifth Circuit concluded that this matter should be certified for an interlocutory appeal for at least four reasons. *In re Dolores Park*, Case No. 23-50585, Op. at 1-5, 7-11 (Sept. 13, 2023).

[2] Plaintiffs claim that Defendants cited *Andrews* as an example of Plaintiffs' "bogus legal theory." Pls' Notice. of Suppl. Authority at 2. Defendant Park's Petition for Writ of Mandamus only mentions *Andrews* once and states, "[r]ecently, several other complaints have been filed which test the scope and application of 42 U.S.C. § 1985(3) throughout the country. *See, e.g., Andrews v. D'Souza*, Case No. 1:22-cv-04259-SDG (N.D. Ga) (alleging violation of 42 U.S.C. § 1985(3) because defendants unlawfully intimidated, defamed, and invaded the privacy of plaintiff by engaging in speech that promoted a movie called *2000 Mules*)." Def Parks' Pet. for Writ of Mandamus at 41. The case was cited to inform the Fifth Circuit that other cases are testing the scope of the Ku Klux Klan Act. *Id*. The case was never cited to argue that Plaintiffs' theory under the Support-or-Advocacy Clause here is the same as that in *Andrews*. The two cases seek damages for very different infringements of rights. In *Andrews*, the Plaintiffs claim to have been intimidated from voting via drop box. Here, Plaintiffs claim their "election related" speech was infringed upon. Given the precedent available for this alleged deprivation, yes, it does appear to Defendant Park that Plaintiffs' theory as applied the allegations against her is bogus. This is not meant as "invective," but only as a synonym for "lacking legal merit" due to the failure to state a claim upon which relief may be granted as a matter of law. And it appears that at least the one Panel who reviewed this case in the Fifth Circuit is inclined to agree. *See, e.g., In re Dolores Park*, Op at 9 (noting "[t]here are myriad reasons for preferring" Dolores Park's "reading of statutory text" over the Plaintiffs).

**Supp.App.154**

of which necessitates certification under § 1292(b)." *In re Dolores Park*, Op. at 7. First, the Fifth Circuit asked whether Plaintiffs' theory of the case, seeking damages for an alleged infringement of "election related speech" under the Support-or-Advocacy Clause presents a new cause of action. *Id*. at 7. Second, the Fifth Circuit asked if participation in a "Trump Train" equated a "conspiracy" within the meaning of the Support-or-Advocacy Clause. *Id*. at 8-9. Third, the Fifth Circuit asked whether Plaintiffs' reading of the Support-or-Advocacy Clause violates Article I of the U.S. Constitution because Plaintiffs' claim fails to "intimately relate[ ] to ballot-casting." *Id*. at 9-10. Fourth, the Fifth Circuit asked whether any intimidation associated with the Trump Train could create a private cause of action under the Support-or-Advocacy Clause without running afoul of the First Amendment. *Id*. at 10.

These questions all still remain. The Northern District of Georgia's decision in *Andrews* answers none of the Fifth Circuit's questions. This Court should certify its orders denying Defendants' motions to dismiss for the reasons stated by the Fifth Circuit. *Id*. at 1, 11 (stating this "court should have certified its order for interlocutory appeal under 28 U.S.C. § 1292(b)," but "we are confident that the district court will reach the correct certification decision if given another opportunity.").

Date: October 10, 2023

Respectfully,

THOMAS MORE LAW CENTER

/s/ Erin Elizabeth Mersino
Erin Elizabeth Mersino
Richard Thompson, President and Chief Counsel
24 Frank Lloyd Wright Drive
Suite J-3200
Ann Arbor, MI 48106

Tel: (734) 827-2001
Fax: (734) 930-7160
Email: rthompson@thomasmore.org
emersino@thomasmore.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case. I sent via email per agreement of the parties a copy of the foregoing to Defendants Steve Ceh and Randi Ceh at the following addresses provided by the parties:

Steve Ceh
18501 FM 306
Canyon Lake, Texas 78133
Email: steveceh33@gmail.com

Randi Ceh
18501 FM 306
Canyon Lake, Texas 78133
Email: randiceh716@gmail.com

/s/ Erin Elizabeth Mersino
Erin Elizabeth Mersino

Supp.App.156